# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| UNITED STATES OF AMERICA, | |
|---|---|
| v. | CRIMINAL NO. 22-342 (SCC) |
| JULIO HERRERA [2] | |
| Defendant. | |

## DEFENDANT JULIO HERRERA'S REPLY TO THE GOVERNMENT'S RESPONSE TO MOTION TO COMPEL DISCOVERY

Julio Herrera ("Mr. Herrera" or "Defendant") respectfully submits this Reply in further support of his Motion to Compel Discovery from the United States of America ("the Government").

### I.  Introduction

Mr. Herrera was forced to file the Motion to Compel because even after the passage of over 18 months since the filing of an Indictment and the provision of 11 rounds of discovery, Mr. Herrera lacks critical information necessary to evaluate the full basis for the charges against him and to defend against them. Core Rule 16 discovery has yet to be produced, including the full set of communications involving the Government's informants and witnesses that are selectively excerpted in the Indictment. Moreover, the Government has refused to assume responsibility for its discovery obligations associated with the charges it chose to bring: claims that Mr. Herrera sought to undermine the regulatory functions of the Government's investigative partners, OCIF and FinCEN, in exchange for purported bribes, and that Mr. Herrera conspired with others to violate provisions of the Bank Secrecy Act ("BSA") that FinCEN and OCIF interpret and enforce.

The Government's response to the motion is replete with misstatements and omissions. It ignores the relevance of Mr. Herrera's longstanding discovery requests to the charges and allegations in its own Indictment; it fails to acknowledge that delays associated with the filter

review process now are occasioned by the Government's lack of proper filter review procedures during the years-long investigation that preceded the filing of the Indictment; and it disingenuously asserts that the Government has aided Mr. Herrera's preparation for trial.

Ignoring the fact that it has not come close to producing the full discovery it is obligated to produce, the Government claims that it has nonetheless worked with the defense and aided in trial preparations by "cull[ing] and produc[ing] a tranche of 'hot documents' that will likely be trial exhibits." The "tranche of hot documents" that the Government references are described in the discovery log as "Timeline Exhibits" but no timeline or other document explaining the sources of the excerpts, their context, or their relevance has been provided. Instead, they are among the numerous productions Mr. Herrera has received from the Government in recent weeks that reflect the FBI's repeated searches of discovery material in 2021 and 2022 prior to the existence of a filter team. These files include the following:

- In Production 9 (dated 10/20/23), the Government produced documents described as "In-Scope Search Warrant Material (Serial 67, 1A-25)" drawn from accounts belonging to Mr. Herrera and other defendants. A search of the discovery for the term "Serial 67" identified it as "[i]n-scope results for multiple warrants" that were obtained by the Government on March 29, 2021 – i.e., before a filter team existed and more than 2.5 years before it was produced.[1]

- Also in Production 9, the Government produced documents described as "In-Scope Search Warrant Material (Serial 456, 1A-254)" drawn from accounts belonging to Mr. Herrera and other defendants and witnesses. A search of the discovery for the term "Serial 456" identified it as "a copy of all in-scope evidence for email and iCloud accounts in 56F-SJ-332492 (Operation Saltwater Breeze) and 56D-SJ-3318542 (Operation Rusty Pipeline)" that was sent on August 8, 2022 – i.e., before a filter team existed and over a year before it was produced.[2]

- In Production 11 (dated 12/19/23 but still not fully viewable due to its size), the Government produced documents described as "In-Scope Search Warrant Material (Serial 437, 1A-236)." A search of "Serial 437" revealed that it was a "USB Drive containing in-scope derivative evidence of" certain search warrant evidence, and is dated June 16, 2022 – i.e., before a filter team existed and more than 1.5 years before it was produced.[3]

---

[1] DOJ-0000065871.
[2] DOJ-0000065871.
[3] DOJ-0000072820.

It is unknown how many other times the Government reviewed potentially privileged evidence without the involvement of the filter team, or how many other sets of potentially relevant documents that the Government has in its possession and that it has not yet produced.

The Government bears the sole responsibility for timely reviewing discovery for privilege, which should have been done but was not at the investigation phase, prior to Indictment. Shifting blame to Defendant is wholly inappropriate. This Court has also been properly apprised of the materiality of the discovery requests described in the Motion to Compel and accompanying exhibits, and as Defendant further elucidates in this Reply.[4] The Government also has failed to address its obligation to produce documents relevant to its factually-unsupported claim that Mr. Herrera conspired to violate the BSA, including by disclosing communications between the Government and regulatory agencies regarding the Bank's and Mr. Herrera's purported BSA violations. There is no excuse for the lack of production, and an order to compel is merited.

## II. Arguments

### A. The Government improperly limits its discovery obligations.

The Government muddles Defendant's arguments about the scope of the Defendant's discovery obligations concerning OCIF and FinCEN, which are premised on a threshold issue – Defendant has presented significant case law and the DOJ's own guidance to show that the Government has a duty to search and provide discovery in possession of other agencies, in this case the regulators OCIF and FinCEN, when they are extensively involved in the investigation.

As the Government's response concedes, in 2016, OCIF requested assistance from the Government in an ongoing investigation into Bancrédito's possible BSA violations. FinCEN is the enforcer of the BSA and OCIF also asserts a role in interpreting and enforcing the BSA in Puerto

---

[4] The Government's restrictive interpretation of its duties has resulted in an insufficient disclosure of evidentiary and exculpatory material from key investigative agencies – OCIF and FinCEN. Information pertaining to a pivotal witness – whose involvement and testimony could be crucial – has also been inexcusably withheld. Other materials such as search warrant returns and the informants' case file are material to the defense, and there is no reason to delay disclosure.

Rico. Since then, the Government has been working with both OCIF and FinCEN on its investigation into the Bank and Mr. Herrera. According to the Government, the BSA investigation proved unfruitful and merged into a bribery investigation. Yet, as set forth in Mr. Herrera's motion, the Government made the decision to charge Mr. Herrera with bribery in order to subvert OCIF's and FinCEN's regulatory functions, and with conspiring to violate the BSA. Thus, it is the Government that chose to make OCIF's and FinCEN's actions and communications relevant to the charges.

Further evidence of the joint investigation includes the Government's repeated use of OCIF's Commissioners, other members of OCIF leadership, and FinCEN to further its investigation in ways that have not yet been fully disclosed to the defense. In March 2020, George Joyner, who shortly before had been the OCIF Commissioner, allegedly provided to the Government a hard disk containing an unknown number of documents and which supposedly supported his allegations of an ongoing bribery scheme. Inexcusably, the Government has not produced this hard disk. The next Commissioner was a longtime FBI confidential informant, and the next Commissioner recorded conversations at the FBI's behest. The Commissioner did so while OCIF was purportedly evaluating the latest audit of Bancredito, and the proper disposition of the dispute among the agency and the Bank. Yet, the call was not to resolve the dispute but an attempt to obtain incriminatory evidence. Other OCIF employees were also similarly involved in the investigation as official or unofficial Government informants. *See* Docket 438-1 at 3. OCIF employees were not merely cooperating with the Government's investigation. OCIF, a regulator, through its Commissioners and other employees, was actively participating in the investigation, including employing an arbitrary and overreaching audit to further the Government's interest in obtaining evidence against the Bank and Mr. Herrera.

Moreover, the Government disregards – without explanation – the fact that it charged

Defendant with conspiring to violate the BSA during his role at the Bank. The Bank and Mr. Herrera were in regular communication with FinCEN at the time of the charged conduct and had no knowledge that FinCEN, the agency ultimately charged with implementing the BSA, understood that Mr. Herrera or anyone else was conspiring to violate the statute. After OCIF closed the Bank and replaced the Board with its chosen representative, the OCIF's representative and FinCEN colluded to impose a fine on the Bank for the same BSA violations in detriment of the Defendant who was the Bank's sole shareholder. To claim that OCIF and FinCEN are not participants in the investigation when the charged conduct alleged a conspiracy to undermine the functions of agencies that were working with the Government to actively investigate Defendant and his bank is not credible.

The Government also incorrectly states that Defendant has not cited any case law dealing with a state agency in support of its arguments.[5] Defendant has cited to case law and other guidance discussing the Government's duty to produce and search for documents from state or federal agencies, including exculpatory materials. As the Court knows, many cases involve joint investigations with the state police. FinCEN is not a state agency at all; rather, it is a regulatory agency that often works with the FBI and federal prosecutors where BSA violations are alleged. In any event, both OCIF and FinCEN have enforcement power over their regulated parties, and in this case, they exercised it against the Bank at the same time the Government is alleging that they were not involved in the investigation against Mr. Herrera and the Bank.

Here, Defendant has asserted that the investigative efforts by these agencies intertwined with those of the Government sufficiently to render them part of the prosecution team and has provided sufficient specificity as to the level of that involvement. Instead of casting doubt on that

---

[5] *See* Docket 438 citing to *United States v. Ramos-Cartagena*, 9 F. Supp. 2d 88, 91 (D.P.R. 1998) (concerning the PR DOJ); *U.S. v. Castro*, 502 F. Supp. 2d 218, 220 (D.P.R. 2007)(concerning a PR Police and municipal police investigation); *United States v. Velez*, No. 3:19-CR-30059-MGM, 2020 WL 4040730, at *8 n.5 (D. Mass. July 17, 2020)(concerning local police); United States v. DeNunzio, 123 F. Supp. 3d 135, 138 (D. Mass. 2015)(local police and Attorney's General Office).

conclusion, the MOUs show that this joint collaboration has been institutionalized in the context of this case and there is a concerted effort that allows for joint investigations. An MOU for information sharing also exists between OCIF and FinCEN.

The Government argues that Defendant has not met its burden to compel production of specific documents because it has not sufficiently described what it needs and why it is needed.

Detailed information about the materiality of the requested evidence is set forth in the Motion to Compel, Docket 438 at p.3-10, the discovery requests, Docket 438-1, and the additional correspondence attached to said motion, Docket 438-2,3,4. The Government thus has clear reason to know the relevance of the requested materials. To further clarify this point:

- As to **Defendant's written or recorded statements**, under F.R.Crim.P.16 (b), the Government's obligation is straightforward – it **must** produce any statement that is within "the government's possession, custody, and control, and who the Government "knows – or through due diligence could know – that the statement exists." The materiality of the Defendant's statements is presumptively discoverable; there is no reason to limit the Government's obligation. The Government should produce any responsive information from OCIF and FinCEN and any other agency participating in the investigation. *See* 438 at p.4, 438-1 at p. 2, 438-2 at p. 2, 438-3 at p.3, and 438-4 at p. 2.

- **Exculpatory evidence, Docket 438-1, Requests 1-35 (p. 8-12)** – The Government has largely agreed to produce materials responsive to these requests except for documents that could be in the possession of FinCEN or OCIF. Indeed, the DOJ has no impediment in searching and producing the potentially exculpatory materials that have been requested and has "selectively" subpoenaed information from OCIF in connection with this case while refusing to request evidence that it could obtain easily under its MOU or request it in furtherance of its obligation to obtain

exculpatory information. These agencies have collaboration agreements with the DOJ, and thus the DOJ just can simply ask. Conveniently, the Government declines to do so.

Requests 1-3 target information showing the discriminatory nature of the OCIF audit against Bancredito and its close collaboration between OCIF and the Government in the conduct of the investigation. Defendant expects that this evidence will further support his claims that he was improperly targeted for enforcement and investigation, and that the current Indictment is the product of that targeting.

Requests 4, 5, 7, 8, 9, 10, 11, 12, relate to evidence of complaints and investigations regarding George Joyner, his performance records, and the later selection of the next Commissioner. This evidence would provide an alternate reason for his resignation and undermine the bribery allegations, and thus is material. Any objection is capricious and superfluous.

Requests 14 and 15 pertain to relevant communications held by agencies, including FinCEN and OCIF, concerning Mr. Herrera and/or Bancrédito. These communications are relevant to the BSA charges that were a primary object of the OCIF audits. FinCEN, not the FBI, is the enforcer of the BSA. OCIF and FinCEN's changing assessment of the BSA and the BSA violations against the Bank, throughout the years, is crucial to Mr. Herrera's defenses.

Requests 16 and 35 seek information relating to the interactions between OCIF and federal law enforcement agencies, and instructions or directions in its investigation of Defendant and his Bank, which is again crucial to Defendant's claims. Requests 17, 18, and 19 concern the appointment of the next commissioner and will demonstrate that he exercised no influence over the OCIF audits and did nothing to favor Mr. Herrera in his role. Requests 20, 21, 22, 23, 24 concern records showing OCIF officials destroyed evidence concerning the OCIF audit of Bancredito and engaged in other misconduct in connection with its investigation of Mr. Herrera and the Bank.

Request 32 requests documents showing discussions between Governor Pierluisi, another alleged target of the bribery scheme, and Defendant related to OCIF or the banking sector. The requested communications would show that Mr. Herrera, as a large employer and significant member of the business community, had access to Governor Pierluisi without the need for the use of intermediaries, much less an intermediary who had no role in the Government and who was a Government informant yet was the purported object of Mr. Herrera's attempts at bribery, as the Government contends.

The Government is fully aware of the materiality of the evidence requested both as to potential defenses, including those described above, entrapment, and the absence of any explicit *quid pro quo* as is required in pure campaign finance-related bribery schemes, among others. Yet it has made a blanket objection that it will not search for exculpatory materials within OCIF or FinCEN. Without looking at this information of which the Government is aware exists, it cannot make any *Brady* determination; thereby, violating its constitutional duties.

Moreover, Defendant has requested communications between the Government and FinCEN or OCIF concerning the bribery and BSA investigations. These communications should be in the Government's possession. The materiality of these communications is self-evident – they may show that the agencies were working together and making strategic decisions, including in the case of OCIF to delay the audit, to exert undue pressure on the Bank and force it to lawfully seek other recourse such as from the Governor's office.

**B.    The Government has caused the inexcusable delay, thereby severely prejudicing the Defendant.**

The Government attempts to shift its constitutional obligations to avoid violating Defendant's rights. Yet, the Government seized the materials in 2020-2021 and searched them multiple times, months, and years before indicting this case. It used the searched materials to gather other evidence, confront witnesses, and indict this case. It had an obligation to review the

information after taking all measures required by the law. It cannot shift blame to the Defendant for the inexcusable delay in completing production.

Here, the Government investigated a regulated banking entity that was the subject of multiple ongoing investigations and elected officials with the aid of state and federal regulators. From the inception of the investigation in 2016 onwards, the Government knew there was a high probability it would seize privileged materials. Yet, it engaged in an unfettered fishing expedition, rummaging through the defendants and others privileged communications and materials. Even when charging decisions were about to be made or thereafter, **the Government failed to contact defendants' lawyers.**

When Defendant became aware of the highly inadequate treatment of his privileged information, he alerted this Court, which imposed additional measures to correct the Government's flawed procedures. Defendant has not caused any delays. The Government had an obligation to have their case ready, including protecting the privileged information it seized and timely producing documents. In past motions, the Government has also represented to the Court that it had not reviewed the content of some of the warrants because they could contain privileged communications, but as noted above, it appears this was not the case, and the Government had in fact reviewed the contents multiple times without the use of any filter team many years before the results of these searches were belatedly produced to the defense. Only now, upon receipt of these long-delayed productions, is the scope of the Government's unfiltered review being revealed.

The piece-meal and fractured discovery that has unfolded has severely prejudiced Defendant, who must sift through millions of documents that have been produced in a disorderly fashion to find the unfiltered communications that are at the core of the Government's case and Mr. Herrera's defenses. At this point, rather than causing delays an "abundance of caution," the haphazard productions and long-delayed filter review appear to be a strategy to bog down

Defendant, depleting his resources, and preventing him from effectively defending his case. The Government has effectively dumped millions of documents on Defendant of information it had in its possession for years in some cases. The Government has stated that it has marked some "hot documents" that it may use at trial, but as noted above, that assertion is misleading.

As stated in the Motion to Compel, given the equities that must be balanced in a criminal case, the Government should be ordered a clear deadline on when to complete its discovery. The Defendant's right to a speedy trial should not be impinged upon. Further, the deadline of January 16, 2024 to complete production is not arbitrary. The Government proffered an even earlier date, Docket No. 435, but it is now requesting "additional weeks" without again committing to a specific date. Meanwhile, trial dates have been set for February and March of this year. Prompt production by this week is a fair remedy for the Government's delay. At minimum, the Court must impose a clear deadline for the Government to finish its production.

Defendant has also suffered irreparable prejudice due to the Government's eleventh-hour production of a voluminous array of documents and the additional documents it has yet to produce. This tardy disclosure has infringed upon the Defendant's ability to adequately review and incorporate said material in his defense, comporting a clear disadvantage. For this reason, documents produced after December 18 should be excluded at trial and the Government should be given a clear deadline by which production must be complete.

**D. The Government has withheld voluntarily provided information by a key witness who is central to the charged conduct for more than a year.**

According to the Government's response, on or around **March 2020**, Joyner was fired as an OCIF Commissioner. Shortly thereafter, Joyner *allegedly* contacted the FBI, made allegations against Mr. Herrera, and provided information that supposedly supported his claims. For two years, **the Government used this information in furtherance of its investigation**. More than a year

has passed since the Indictment. At the eleventh hour, the Government now claims, in an attempt to justify its crass non-disclosure violations, that OCIF may be able to raise an *attorney-client privilege*, and this merits the continued withholding of critical information.

The Joyner hard-disk's non-disclosure is another indication of the grave prosecutorial misconduct that has plagued this case and is another example of the joint investigation between OCIF and the FBI. Joyner, the highest ranked OCIF official at the time and a highly sophisticated individual, voluntarily shared OCIF material with the FBI with the purpose of aiding the Government's investigation. There was no inadvertent disclosure, but rather an express waiver. He obtained the information by virtue of his position while at OCIF, and disclosed it to a third-party, the FBI, which used it in its investigation of Mr. Herrera, thereby waiving any privilege that might attach. In re *Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003)(explaining that "when otherwise privileged communications are disclosed to a third party, the disclosure destroys the confidentiality upon which the privilege is premised").

More importantly, the Government cannot raise any privilege claim on OCIF's behalf, as the Government itself has argued in prior motions. Thus, its reasons for the continued withholding hold no water. OCIF employees admitted **to deleting information concerning their audit investigation into Bancredito**, even when OCIF is a public agency, and it was working with federal authorities such as FinCEN and the FBI. The hard disk Joyner provided may be the only intact record that remains, urging its immediate and "uncorrupted" disclosure.

To the extent any documents are withheld, Mr. Herrera requests full disclosure of, and if necessary an evidentiary hearing concerning, the measures taken by OCIF to protect its privilege, when the information was taken from OCIF, when Joyner handed it to the FBI, what the FBI reviewed and the efforts it took to protect the privilege; all which is needed to determine whether a waiver occurred and which has not been established. *See In re Keeper of Records*, 348 F.3d 16,

22 (1st Cir. 2003) (explaining that "the party who *invokes* the privilege bears the burden of establishing that it applies to the communications at issue and that it has not been waived").

**E. The Government should be ordered to produce confidential informants' entire case file.**

The Government's position is that what remains from the confidential informants' case file is merely "administrative" paperwork, and that Defendant has only made "speculative statements" regarding misconduct of confidential informants. This is a disingenuous response. In its initial request, attached as Exhibit 1 to the Motion to Compel, Defendant made very specific requests and explained exhaustively the misconduct of at least six out of the 27 confidential informants, and who are likely to be key witnesses. *See* Docket 438-1 at p. 3-8.

Given the extensive misconduct of a significant portion of the Government's confidential informants, which casts doubt on their motivation for assisting the Government, Defendant has more than met its burden in asking for a neutral party to review the entire file and produce any material information. The requested remedy, an in-camera review, is more than merited especially given the lack of transparency and allegations of prosecutorial misconduct in this case.

The Court should also consider that the Government has not proffered any risk or prejudice in disclosing the requested information and has repeatedly stated that it has taken a liberal approach to discovery in this case. Its position as to the case files of the confidential informants is clearly inconsistent with its self-professed "liberal" stance.

WHEREFORE, for the foregoing reasons, Defendant Julio Herrera respectfully requests that this honorable Court: a) Grant the Motion to Compel Discovery in its entirety; b) Exclude any evidence not disclosed in a timely fashion, including that of Production 10; c) Mandate the production of a complete and detailed privilege log by the Government on or before January 16, 2024; d) Award such other and further relief as the Court deems just and proper.

In San Juan, Puerto Rico, this 15th day of January, 2024.

**ATTORNEYS FOR JULIO HERRERA VELUTINI**

**DLA Piper (Puerto Rico) LLC**

*/s/ Sonia I. Torres-Pabon*
Sonia I. Torres-Pabon (USDC-PR No. 209310)
sonia.torres@us.dlapiper.com
500 Calle de la Tanca, Ste. 401
San Juan, PR 00901-1969
Tel: 787-281-8100

**The LS Law Firm**

*/s/ Lilly Ann Sanchez*
Lilly Ann Sanchez, Esq.
Fla. Bar No. 195677
Email: lsanchez@thelsfirm.com

One Biscayne Tower, Suite 2530
2 South Biscayne Blvd.
Miami, Florida 33131
Telephone: (305) 503-5503
Facsimile: (305) 503-6801

## **CERTIFICATION**

**IT IS HEREBY CERTIFIED** that on this same date I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Sonia I. Torres-Pabon*
Sonia I. Torres-Pabon