**Exhibit A**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JULIO HERRERA [2]<br><br>Defendant. | CRIMINAL NO. 22-342 (SCC) |

**DEFENDANT JULIO HERRERA'S MOTION TO COMPEL DISCOVERY FROM THE UNITED STATES OF AMERICA AND TO EXCLUDE EVIDENCE AT TRIAL**

Defendant Julio Herrera ("Mr. Herrera" or "Defendant") respectfully submits this Motion to Compel Discovery from the United States of America ("the Government").

## I. Introduction

This Motion is necessitated by the Government's persistent failure to fulfill its fundamental discovery obligations in a criminal case. Despite the passage of over a year since filing this case, the Government has belatedly presented fragmented discovery, the latest on December 19, 2023 with more than a million pages of documents (380 GB) that alone more than doubles the volume of all discovery produced in the prior 16 months since the case was filed. And has consistently omitted production of crucial materials that appear to serve as the primary basis for the charges in the Indictment, as well as potentially exculpatory information about the conduct of the defendants and key cooperating witnesses. Thus, Mr. Herrera's motion is two-fold – to exclude evidence produced after December 18, including Production 11; and to compel discovery requested long ago, including communications with regulatory agencies and search warrant returns.

In particular, the Government has selectively refused to provide material and potential exculpatory information from the Office of the Commissioner of Financial Institutions ("OCIF") and the Financial Crimes Enforcement Network ("FinCEN") by claiming these agencies were not

part of the "prosecution team." As argued in the Motion to Dismiss the Indictment for Outrageous Government Conduct (Dkt No. 262), the Government exceeded its constitutional limits when investigating and charging this case. Since 2015, the Federal Bureau of Investigation ("FBI") improperly used OCIF to build a criminal case against Mr. Herrera and Bancrédito International Bank & Trust ("Bancrédito" or "Bank"). OCIF, in turn, closely worked with FinCEN to further the FBI's illegitimate agenda.

Aggravating these constitutional violations, the Government has stalled discovery for more than a year since the filing of the Indictment and has failed to comply with its Rule 16 obligations. Years after the investigation commenced and more than a year since Mr. Herrera was accused, the Government has not produced all material documents, including search warrant returns and results of consent searches, thereby jeopardizing Mr. Herrera's defense.

The Government claims that a filter review has delayed discovery. However, such a review should have been completed long ago – during the investigative phase – and prior to any charging decisions. Now, when constitutional and statutory protections for a speedy trial are implicated, the Government continues to delay discovery, further injuring Mr. Herrera who cannot prepare his defense without having the opportunity to review the evidence that underlies the charges or identify and investigate the exculpatory information contained within these non-produced materials. Due to the closeness of the trial, which the court set aside as possible dates for February 20 and March 11, 2024, *see* Minute Entry at Dkt. No. 329, Mr. Herrera requests that the Government be ordered to produce all remaining documents by **January 16** (when the Government expects the remaining documents**)**. Dkt No. 435 at p. 4, ¶7.

To prevent further injury, the Government should be foreclosed from using at trial all documents thus far not produced to Defendant. Mr. Herrera also requests the exclusion of documents related to Production 11 – which was belatedly produced, on December 19, 2023, and

contains more than a million pages (380 GB) that more than doubles the burden on Mr. Herrera to prepare for trial. The time and resources needed to review this discovery is unconscionable and will undoubtedly affect Mr. Herrera's right to a fair trial.

## II.    Arguments

### A.  The Court Should Compel Production of the Following Documents

Mr. Herrera has spent considerable time and resources analyzing the materials that the Government has provided in this case. On February 7, 2023 (about six months after the Indictment), Mr. Herrera sent a letter to the Government requesting to meet and confer regarding discrete categories of documents that were missing from the Government's production, including (1) documents relating to OCIF and FinCEN; (2) documents that the Government should have in its possession or control that were either not obtained during the investigation or, if obtained, have not been produced; and (3) search warrants returns issued in connection with this case. **Exhibit 1.**

On April 28, 2022, the Government responded stating it would produce additional documents, and raising objections to certain requests, especially those pertaining to FinCEN and OCIF. **Exhibit 2.** On July 12, 2023, Mr. Herrera replied seeking clarification and requesting the Government to reconsider its objections. **Exhibit 3.** The Government replied on August 1, 2023, maintaining its objections, but stating that it would produce additional documents but without specifying a date. **Exhibit 4.**[1] On December 22, 2023, the Government informed of the status of the production. According to the Government, it expects the filter review to end before January 16 and documents to be produced shortly thereafter. *See* Docket No. 435 p. 4 at ¶7.

The documents requested are directly relevant and material to Mr. Herrera's defenses. For most materials requested, the Government does not contest their relevance or materiality. Instead,

---

[1] Additional documents concerning the search warrants were to be produced on December 19, but we have been unable to complete the review of the same.

the Government's primary response to these discovery requests is that the Government is not required to search for or produce documents outside the prosecution team's possession, which the Government asserts does not include OCIF or FinCEN. But the Federal Rules of Criminal Procedure require the Government to produce not only those documents within its possession, but also those within its "custody or control." The Government extensively engaged with other agencies to further its investigation and charged Mr. Herrera with interfering with these agencies' regulatory missions. The law dictates that those agencies are within the Government's "control."

**B. Documents from Government Agencies Participating in the Investigation**

The Government stated in its responses that it will only produce documents in "possession" of the "prosecution team." In other requests, it qualified its responses by stating it has no obligation to provide documents and information pertaining to investigative and regulatory agencies in Puerto Rico, nor those "collected by other federal agencies that are not part of the prosecution team." *See e.g.*, Exhibit 2, Gov't Response at ¶2, p. 2 and fn. 2 dated 04/28/2023; and responses to Section II (Exculpatory Evidence) at pp. 8-12, *see also* Exhibit 4, Gov't Response at p. 5 ("The Federal Bureau of investigation is the investigative agency in this matter. The United States discovery obligations do not extend to 'any federal agency,' much less non-federal agencies.").

Yet, the Government cannot rely on such a narrow and restrictive definition to limit its discovery obligations.[2] Fed. R. Crim. P. 16 requires the Government, upon a defendant's request, to produce documents within the government's "possession, custody, or control" that (1) are material to preparing the defense, (2) the government intends to use in its case-in-chief, or (3) were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). If these conditions are met,

[2] In another letter (dated August 1, 2023), while still objecting the production of documents from OCIF and FinCEN, the Government stated that it had subpoenaed OCIF for all correspondence related to Bancredito and would "request from the FBI any additional communications with OCIF related to defendants and Bancredito." This piecemeal approach of selectively asking OCIF for certain information is not consistent with the Government's discovery obligations under *Brady*, it must produce all exculpatory information in OCIF's possession, including evidence of any spoliation of evidence conducted by OCIF or its employees.

a defendant is entitled to discovery as "a matter of right." 2 Charles Alan Wright & Peter J. Henning, Federal Practice and Procedure § 254 (4th ed. 2009).

First, the OCIF and FinCEN discovery is relevant and material to defend against the allegations in the Indictment. *See* Indictment at ¶¶1, 2, 4, 5, 7, 10, 11, 25, 26 and 30. As alleged, OCIF's Commissioner led a years-long examination campaign against Bancrédito concerning the Bank Secrecy Act ("BSA") and the filing of Suspicious Activity Reports (SARs). FinCEN, not OCIF, had authority for BSA enforcement and the filing of SARs, as per the Indictment. Indictment at ¶2. Examination information OCIF and FinCEN retained, especially involving the propriety of the same and communications sustained with the FBI pertaining to those examinations, is relevant to defend against the Government's allegations. After all, the conspiracies center on alleged "interference with the functions of OCIF and FinCEN by paying bribes to public officials they believed had the power to intervene on the bank's behalf." *See* Indictment at ¶4.

Moreover, Mr. Herrera is charged with participating in a conspiracy, in violation of Title 18, United States Code, Section 371, to avoid filing suspicious activity reports ("SARs") with FinCEN, in alleged violation of the BSA and implementing regulations, which FinCEN is charged with enforcing (Indictment at ¶137).

Second, courts have taken an expansive view when considering what constitutes the "prosecution team" to include closely connected agencies. Thus, prosecutors have an affirmative duty to search the files maintained by agencies "closely aligned with the prosecution." *United States v. Brooks*, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992); *see also United States v. Alvarez*, 317 F. Supp. 2d 1163, 1166, (C.D. Cal. 2004) (explaining that "Government's obligation to produce discovery extends not just to information in its possession, but to discoverable information in the possession of all involved agencies"). The prosecution, as has been defined by the courts, includes federal agents and other personnel, including from state or local agencies, who participated in the

investigation and prosecution. *United States v. Ramos-Cartagena*, 9 F. Supp. 2d 88, 91 (D.P.R. 1998) (citing *Carey v. Duckworth*, 738 F.2d 875, 878–79 (7th Cir. 1984)).[3]

Under *Brady*, the prosecution has a duty to search and find evidence favorable to the defendant that was known to those acting on the government's behalf. *United States v. Bender*, 304 F.3d 161, 164 (1st Cir. 2002) (citing *Strickler v. Greene*, 527 U.S. 263, 280 (1999)).[4] "The inquiry is not whether the United States Attorney's Office physically possesses the discovery material; the inquiry is the extent to which there was a 'joint investigation' with another agency." *United States v. Ramos-Cartagena*, 9 F. Supp. 2d 88, 91 (D.P.R. 1998). A prosecutor may not sandbag a defendant by "the simple expedient of leaving relevant evidence to repose in the hands of another agency while utilizing his access to it in preparing his case for trial." *United States v. Marshall*, 132 F.3d 63, 69 (D.C. Cir. 1998). The evidence is "plainly within [the prosecutor's] Rule 16 control." *Id*.

The Government's *Brady* obligations further extend to information that tends to establish an articulated and legally cognizable defense theory or recognized affirmative defense to the offense charged. *Martinez v. United States*, 793 F.3d 533, 555 (6th Cir. 2015) (*Brady* "extends to evidence material to an affirmative defense or the ability of a defendant to assert his constitutional rights."), *reh'g en banc granted on different grounds*, *opinions vacated* (Oct. 14, 2015). They also apply regardless of whether the information would constitute admissible evidence. *Wood v. Bartholomew*, 516 U.S. 1, 6 (1995); *Ellsworth v. Warden*, 333 F.3d 1 (1st Cir. 2003) (prosecution withheld double hearsay note that complainant had made false allegations in the past and, even

---

[3] *See also* Justice Manual 9-5001 (B) (recognizing that "[m]embers of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant.").

[4] *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984) (explaining that "a prosecutor's office cannot get around *U.S. v. Risha*, 445 F.3d 298, 306 (3d Cir. 2006) ("In sum, a Brady violation may be found despite a prosecutor's ignorance of impeachment evidence. This may be especially true when the withheld evidence is under the control of a state instrumentality closely aligned with the prosecution." (Internal Citations Omitted).

though inadmissible, it might have led to admissible evidence).

Further, an agency is considered part of a federal prosecution team where it participates in the investigation or prosecution of the case. *Ramos-Cartagena*, 9 F. Supp. 2d 88, 91 (D.P.R. 1998); *United States v. Galan-Olavarria*, No. 07-0547-ADC, 2009 WL 4016058 (D.P.R. Nov. 12, 2009) ("Nevertheless, if for any reason these documents are in the possession of the prosecution, which would include the F.B.I. or anyone else who participated in the investigation and prosecution of this case, they are to be produced."); *United States v. Castro*, 502 F. Supp. 2d 218, 224 (D.P.R. 2007) ("Evidence 'within [the government's] possession' includes exculpatory information in the possession of any agency that participated in the investigation of the crime charged."); *see also United States v. Velez*, No. 3:19-CR-30059-MGM, 2020 WL 4040730, at *8 n.5 (D. Mass. July 17, 2020) (ordering production of defendant's requested documents after finding that local police department is "closely aligned" with the government where confidential informant began working with police department, and then police officer began working with federal agency); *United States v. Denunzio*, 123 F. Supp. 3d 135, 144 (D. Mass. 2015) (finding that the government had *Brady* obligation to disclose exculpatory information acquired by member of prosecution team, even if information was acquired in the course of his involvement in a separate state investigation). "For Brady purposes, it is enough that the agencies are engaged in joint fact-gathering, even if they are making separate investigatory or charging decisions, because the purpose of Brady is to apprise the defendant of exculpatory evidence obtained during the fact-gathering …." *United States v. Gupta*, 848 F. Supp. 2d 491, 494 (S.D.N.Y. 2012).[5]

Here, state and federal government agencies participated in the investigation phase of this

[5] Similarly, the Justice Manual, on its section § 9-5.002 counsels for an expansive view on the Government's obligation, advising that it may arise when: (1) the state or local agents are working on behalf of the prosecutor or are under the prosecutor's control; (2) when state and federal governments are part of a team, are participating in a joint investigation, or are sharing resources; and (3) when the prosecutor has ready access to the evidence. The Justice Manual further guides prosecutors "to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes." *Id.*

case, including OCIF and FinCEN. In its response to Mr. Herrera's discovery requests, the Government has tried to distance itself from OCIF and other agencies by simply making a bald and unsupported assertion that these agencies were not part of the prosecution team. Yet, OCIF, in particular, acted on the Government's behalf, driving the investigation, gathering evidence, sharing resources, and even acting as informants and recording confidential conversations between the regulator and employees of Bancrédito to gather evidence furthering the investigation. The Government's extensive reliance on OCIF officials as witnesses and confidential human sources belies its attempt to distance itself from the agency. At least [REDACTED] current and former OCIF officials, including several leaders and supervisors of the agency, aided the government's investigations of Mr. Herrera – in an agency that had only [REDACTED] examiners on its staff. Said participation included:

- Registering OCIF's management and auditors as registered or unofficial confidential informants so they could act at the FBI's direction and report directly to the Government concerning Mr. Herrera and the bank (*see, e.g.*, [REDACTED]);
- Collecting documents in response to FBI requests for information and seeking FBI input into and potential approval of OCIF findings concerning the bank (*see, e.g.*, [REDACTED], [REDACTED]);
- Directing official and unofficial informants to secretly record confidential meetings between involving the bank or its agents (*see, e.g.*, [REDACTED]).

In fact, the Government has produced MOUs evidencing the sharing of information with OCIF. The Government cannot refuse to search for and produce documents involving OCIF, as it was brought under the Government's "control" as part of the investigation.

As to FinCEN, the discovery also shows communications between OCIF, the FBI, and FinCEN throughout the investigation period and directly pertaining to the ongoing examinations, which are at the forefront of the allegations in the Indictment:

- [REDACTED] (OCIF) told the FBI and DOJ that [REDACTED] spoke with FinCEN about Bancrédito. On July 19, 2021, [REDACTED] said that Bancrédito believed it was not subject to the Bank Secrecy Act ("BSA"), but that FinCEN did not agree. ([REDACTED].) On August 13, 2021, [REDACTED] recommended that the FBI contact FinCEN for more information on

Bancrédito. (DOJ-0000068783.)

- In February 2022, [redacted] OCIF [redacted], told the Government that OCIF had access to FinCEN's database under its MOU with the agency. The Form 302 for [redacted] interview also reported: "There were informal communications between FinCEN and OCIF in relation to suspicious transactions of Bancrédito before the beginning of the 2019 OCIF examination. These communications were with [redacted] from FinCEN. After starting the 2019 examination, there were meetings with [redacted] related to Bancrédito and several other banks." ([redacted].)

- [redacted] also commented on OCIF's relationship with FinCEN, according to the Form 302 from his May 2022 interview: "OCIF has a great relationship with the Financial Crimes Enforcement Network (FinCEN). [redacted] has no idea if FinCEN opened an investigation. OCIF had a policy of sharing absolutely everything with FinCEN, the Federal Deposit Insurance Corporation (FDIC), and other similar entities. OCIF had Memorandums of Understanding (MOU) in place for that sharing of information. However, information only flowed in one direction, so [redacted] had no idea what FinCEN, the FDIC, and other agencies used the information provided by OCIF for. The FDIC was under no obligation to share information with OCIF, but they did anyway. FinCEN nor the FBI shared information with OCIF." ([redacted].)

- [redacted] elaborated on the relationship between OCIF and FinCEN in his June 2022 interview: "OCIF collaborates with the FDIC as well as numerous other entities, including the Federal Reserve, the Financial Crimes Enforcement Network (FinCEN), the Financial Industry Regulatory Authority (FINRA), and the FBI (mainly within the BSA area). Examiners often take training with those agencies. OCIF has Memorandums of Understanding (MOU) with those agencies. Sometimes those agencies have expertise that OCIF does not have. OCIF has constant communication with the Internal Revenue Service (IRS). FinCEN will notify OCIF of suspicious activity, but OCIF also has access to their database which gives OCIF full access to all SARs. [redacted] is the primary point of contact for OCIF with FinCEN. [redacted] is from Puerto Rico and speaks both Spanish and English." ([redacted].)

The FBI did not act alone when conducting the investigation at issue. Instead, it led an inter-agency investigative effort and recruited OCIF and FinCEN to build a case against Mr. Herrera and the other defendants. A former OCIF Commissioner even handed the FBI a database of OCIF documents, which the FBI has yet to produce despite having it in its possession since March 2020. *See* Exhibit 5 (Gov't Response to Mark Rossini, dated November 20, 2023) at p. 4.

The Government cannot avoid its discovery and disclosure obligations when the charges against Mr. Herrera arise out of the joint investigation of Mr. Herrera and the Bank, which was ongoing throughout the period covered by the charges. The charges all relate to purported efforts

to interfere with OCIF and FinCEN and official action that allegedly was sought to address the various aspects of the investigation. The Government employed the same OCIF informants and witnesses in furtherance of the pending charges as it has done in the allegedly "unrelated" investigation of Mr. Herrera and the Bank. Moreover, the investigation of Mr. Herrera and the Bank for alleged conduct in connection with the Bank's operation was *merged* by the FBI with the corruption allegations in 2021, well before the pending charges were filed. ([REDACTED]).

The Government has authority to obtain whatever information it needs for its investigation from the relevant agencies, especially when they have participated so extensively in investigations and even have MOUs with the Government authorizing information-sharing. Having made document requests of OCIF and FinCEN and charged Mr. Herrera with interfering with the two agencies' functions, the Government cannot claim that they fall outside the Government's control, even where the Government is not in possession of the requested documents. Fed. R. Crim. P. 16; *Castro*, 502 F. Supp. 2d at 225. In this way, the Government is "leaving relevant evidence to repose in the hands of another agency while utilizing [their] access to it in preparing [their] case for trial." *Marshall*, 132 F.3d at 69.

There is no indication that FinCEN or OCIF ever refused the Government anything it requested in connection with this action, which is predicated on the Government's unsustainable allegation that both agencies were the target of Mr. Hererra's unlawful interference. The Defense is not asking the Government to go on a fishing expedition. Mr. Herrera has made specific requests for exculpatory and material information held by these agencies that participated in the investigation and have cooperated with the prosecution without exception.

**C. Privilege Log**

The Government is conducting a filter review. To the extent a document was not produced due to privilege or for any other reason, we have requested the Government to provide a privilege

log detailing the communication withheld and the reasons for not producing the same. The Government has agreed to produce "filter logs" but it has not yet done so. The Government should be compelled to produce any privilege log by January 16, 2024, to allow Mr. Herrera and other defendants sufficient time to object to the same and to contest any privilege designation.

**D. CHSes DELTA Case Files**

Mr. Herrera requested the entire informant (Delta) case file for █ Confidential Human Sources (CHSes) that were involved in this case in view of the established record of violations of FBI informant-handling procedures that appear to have been tolerated by the Government. The Government has refused to provide this information, claiming most of the material is administrative in nature or otherwise not relevant. *See* Exhibit 4 Gov't Response dated 08/01/2023 at p.4. This could very well be the case, but Mr. Herrera cannot rest on the Government's representations. For this reason, Mr. Herrera's request that the entire delta files be submitted for in camera inspection and for the court to determine if any additional exculpatory and otherwise relevant materials should be produced. In this manner, Mr. Herrera's interests can be safeguarded by a neutral party, instead of Mr. Herrera being forced to rely on mere representations from an adversary.

**E. Documents yet to be produced.**

Below are categories of documents for which the Government has not raised objections but has yet to produce in their entirety. Because of the pendency of the trial (three months way), Mr. Herrera requests **for all remaining documents to be produced by January 16, 2024.** The discovery in this case is complex and voluminous, the Government's delay in producing the remaining discovery will continue to hinder Mr. Herrera's ability to prepare for trial.

**1. Communications between OCIF, Bancrédito, and FinCEN with the FBI**

The Government has stated that it had subpoenaed OCIF for correspondence related to Bancrédito and would "request from the FBI any additional communications with OCIF related to

defendants and Bancrédito." *See* Exhibit 4 at p. 5-6. The Government did not state when it would/had produced said information and thus far Mr. Herrera has not been able to locate this information in the documents produced. To be clear, there is no excuse for the Government to have not produce all relevant communications stored in the FBI's communication devices – it has already been more than a year since the Indictment. Mr. Herrera requests that any pending information be produced forthwith by January 16, 2024.

**2. Returns from Search Warrants and Consent Searches**

Mr. Herrera has identified 31 search warrants executed in furtherance of three intertwined investigations related to this case – called Operations "Saltwater Breeze" and "Rusty Pipeline", and an unnamed one of Bancrédito. In addition, the Government obtained consent to search at least six electronic devices or accounts belonging to cooperating witnesses and Government sources, [REDACTED], [REDACTED] [REDACTED] [REDACTED] From the Government's responses, Mr. Herrera understands that a substantial part of the returns have not been produced pending a "filter review," while other items have not even been referenced in communications from the Government about the status of discovery. A trial has been set aside for February or March 2024. The delay in being able to review this information to prepare its defenses, including identifying potential exculpatory material, severely prejudices Mr. Herrera. Below is a list of search warrant returns that have not been produced in their entirety to this date:

| Warrant | Date | Subject | Owner |
|---|---|---|---|
| [REDACTED] | 6/17/2020 | Black WD hard drive S/N: WX41AA9JDP4X, located at 140 Carlos Chardon San Juan, Puerto Rico containing information from OCIF re: Bancrédito | [REDACTED] |
| | 11/3/2020 | Information associated with an email account([REDACTED] stored at premises controlled by Google LLC | |

| | | | |
|---|---|---|---|
| [redacted] | 11/3/2020 | Information associated with an email account ([redacted]) stored at premises controlled by Google LLC | [redacted] |
| [redacted] | 11/20/2020 | Information associated with Apple ID [redacted] [sic], with login alias [redacted], stored at premises of Apple Inc. *[Only limited documents have been produced.]* | [redacted] |
| [redacted] | 11/20/2020 | Information associated with Apple ID [redacted] with login alias [redacted] stored at premises of Apple Inc. *[Only a partial production has been made.]* | [redacted] |
| [redacted] | 12/4/2020 | Information associated with Apple ID [redacted] that is stored at premises controlled by Apple | [redacted] |
| [redacted] | 12/4/2020 | Information associated with apple ID [redacted] that is stored at premises controlled by Apple *[The Government has stated that responsive documents were or will be produced on December 19,2023 but we have not been able to verify the production.]* | [redacted] |
| [redacted] | 12/4/2020 | Information associated with apple ID [redacted] that is stored at premises controlled by Apple *[The Government has stated that responsive documents were or will be produced but we have not been able to verify the production.]* | [redacted] |
| [redacted] | 12/4/2020 | Information associated with apple ID [redacted] that is stored at premises controlled by Apple | [redacted] |
| [redacted] | 12/4/2020 | Information associated with account [redacted] that is stored at premises controlled by Microsoft Corporation | [redacted] |
| [redacted] | 1/13/2021 | Information associated with email accounts w.vazquezg@live.com; [redacted]; w.vazquezg@icloud.com stored at premises controlled by Apple Inc. *[The Government has stated that responsive documents were or will be produced but we have not been able to verify the production.]* | [redacted] |
| [redacted] | 1/27/2021 | One Apple iPhone SE (IMEI 356596082532083) located on the person of Joseph Fuentes-Fernandez | [redacted] |
| [redacted] | 1/27/2021 | [redacted] | [redacted] |
| [redacted] | 3/16/2021 | Information associated with Apple ID roberto@grupocacho.com | [redacted] |
| [redacted] | 3/16/2021 | Information associated with Google LLC "apilar@gmail.com" | [redacted] |
| [redacted] | 3/25/2021 | iCloud backup for account associated with IDs [redacted] and [redacted] stored at premises controlled by Apple Inc. [The Government has stated that responsive documents were or will be produced but we have not been able to verify the production.] | [redacted] |
| [redacted] | 6/11/2021 | Information associated with email [redacted] stored at premises controlled by Google LLC. [The Government has stated that responsive documents were or | [redacted] |

| | | | |
|---|---|---|---|
| | | will be produced but we have not been able to verify the production.] | [redacted] |
| [redacted] | 7/30/2021 | Information associated with Apple ID [redacted] with alias [redacted] controlled by Apple Inc. [Letter to Production #8 states that items pertaining to this account were produced, but it is unclear if the documents produced were responsive to this warrant or an earlier warrant]. | |
| | 9/2/2021 | [redacted] *[It is unclear if the search warrant was executed.]* | |
| | 9/2/2021 | [redacted] person & cellular device, [redacted] *[Partial Production may have been included on the December 19, 2023 production.]* | |
| | 10/14/2021 | Information associated with the Yahoo! [redacted] account identified by [redacted] and which is stored at premises owned, maintained, controlled, or operated by [redacted] (for Yahoo!) [*Documents have been produced concerning this account but unclear if the data is pursuant to a warrant or consent order*.] | |
| | 10/14/2021 | Information associated with the Apple ID [redacted] ("the account") that is stored at premises owned, maintained, controlled, or operated by Apple Inc. [*Additional documents were produced on 12/19/2023 but it is unclear if they were pursuant to this consent warrant*] | |
| | 10/15/2021 | iPhone Model: [redacted] [*Additional documents were produced on 12/19/2023 but it is unclear if they were pursuant to this consent warrant*] | |
| | 1/12/2022 | [redacted] person and cellular device, [redacted] [*Additional documents were produced on 12/19/2023 but it is unclear if they were pursuant to this warrant*] | |
| | 2/22/2022 | "Limited search of Apple iPhone 13 Mini, IMEI 351671398932098 for communications with: [redacted] | |
| | 2/24/2022 | Cellular telephone assigned number [redacted], in the possession of [redacted] | |
| | 2/25/2022 | "Limited search of Apple iPhone, IMEI 356853113986634 for communications with: [redacted]i | |

| | | | |
|---|---|---|---|
| | | [redacted] | |
| DOJ-0000072621 | 5/17/2022 | iPhone 13 Serial No. [redacted] *[Additional documents were produced on 12/19/2023 but it is unclear if they were pursuant to this consent search]* | [redacted] |

**3. [redacted] Hard Drive Provided to the FBI in March 2020**

The Government has admitted to receiving a hard drive in March 2020 from [redacted], [redacted]

The Government objected to producing the same because it alleges that OCIF may claim privilege as to some of these materials. Yet, said privilege was waived when the hard drive was voluntarily produced to a third-party, the Government, and the Government has used said information to further its investigation. *United States v. Mass. Inst. Of Tech.*, 129 F.3d 681, 684 (1st Cir. 1997). In *MIT*, the First Circuit held that by disclosing privileged information to a government audit agency, MIT had waived its privilege claims. In *US v. Billmyer*, 57 F.3d 31, 37 (1st Cir. 1995), the court again concluded that disclosure of information or facts to the Government resulted in waiver of privilege. *Id.* (the First Circuit explaining that "a risk of unfairness is evident where information is provided to one side in a case (here, the United States) and then an inquiry into its origin is shielded by a claim of privilege. In a variety of contexts, the affirmative use of privileged information has been held to be a waiver of privilege."). As such, the Government should be ordered to produce the complete hard drive by January 16, 2024.

**4. Co-conspirator's statements**

Search warrants and consent searches in this case were, in most cases, obtained more than two or three years ago. The Government has been in possession of these materials throughout the investigation and through the filing of the Indictment but has failed to produce all returns, claiming it has not completed its filter review. The Government has further proffered that it may use "statements contained in text messages, messaging apps, or emails" as co-conspirators' statements

at trial. *See* Exhibit 4 (Gov't Response at p. 1-2, dated 08/01/2023).

Mr. Herrera understands that among the communications that have not been produced are those of key witnesses and events, including those from [redacted] The Government has advised that has produced some of [redacted] data, but we have not been able to review it since it contains more than a million pages.

**F. Exclusion of discovery produced after December 18**

Rule 16 places a continuing duty to promptly disclose information when it is discovered before or during trial. Fed. R. Crim. P. 16(c). When a party fails to comply with Rule 16, the Court may: (1) order the discovery or inspection to occur; (2) grant a trial continuance; (3) exclude the undisclosed evidence; or (4) enter any other order that is just under the circumstances. Fed. R. Crim. P. 16(d)(2). Here, the trial date is quickly approaching. The returns of the outstanding search warrants will likely be substantial, preventing Mr. Herrera from having sufficient time to review the same and prepare for trial. The returns from Production 11 alone are more than a million pages and more than double the volume of all discovery produced prior to that date. The time and resources needed to be expended to comb through this data are immense.

For this reason, the Government should not be allowed to use any evidence resulting from withheld discovery or Production 11 at trial. Permitting the Government to use materials that was produce so late and that, which it has not even produced, will render any trial fundamentally unfair.

**III. Conclusion**

Mr. Herrera respectfully requests an order compelling the Government to produce the categories of documents described in this Motion; and to issue an order prohibiting the Government from introducing at trial all information from Production 11 and that not disclosed as of the filing of this motion.

In San Juan, Puerto Rico, this 27th day of December, 2023.

**ATTORNEYS FOR JULIO HERRERA
VELUTINI**

**DLA Piper (Puerto Rico) LLC**

*/s/ Sonia I. Torres-Pabon*
Sonia I. Torres-Pabon (USDC-PR No. 209310)
sonia.torres@us.dlapiper.com
500 Calle de la Tanca, Ste. 401
San Juan, PR 00901-1969
Tel: 787-281-8100

**The LS Law Firm**

*/s/ Lilly Ann Sanchez*
Lilly Ann Sanchez, Esq.
Fla. Bar No. 195677
Email: lsanchez@thelsfirm.com

One Biscayne Tower, Suite 2530
2 South Biscayne Blvd.
Miami, Florida 33131
Telephone:  (305) 503-5503
Facsimile:  (305) 503-6801

## CERTIFICATION

**IT IS HEREBY CERTIFIED** that on this same date I electronically filed the foregoing

motion with the Clerk of the Court using the CM/ECF system which will send notification of such

filing to all counsel of record.

*/s/ Sonia I. Torres-Pabon*
Sonia I. Torres-Pabon

## CONFERENCE

**IT IS HEREBY CERTIFIED** that counsel for the Government and counsel for Mr. Herrera

have sent letters concerning these discovery matters, and the parties have been unable to resolve the

relief requested in this Motion.

*/s/ Sonia I. Torres-Pabon*
Sonia I. Torres-Pabon

Lilly Ann Sanchez
Shareholder

305-503-5503
lsanchez@thelsfirm.com

One Biscayne Tower
2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131

www.thelslawfirm.com

**Exhibit 1**

February 7, 2023

**Via Electronic Mail**
Ryan R. Crosswell, Esq.
Nicholas W. Cannon, Esq.
United States Department of Justice
Criminal Division, Public Integrity Section
1301 New York Ave., NW
Washington, DC 20005
Email: ryan.r.crosswell@usdoj.gov
nicholas.cannon2@usdoj.gov

**Re: *United States v. Herrera-Velutini, et al.*, 22-342 (RAM)**

Dear Messrs. Crosswell and Cannon:

As you are aware, we represent Mr. Julio Herrera-Velutini ("Mr. Herrera-Velutini"). Pursuant to Local Rule 116.1(b)(1), the Federal Rules of Criminal Procedure, and *Brady v. Maryland*, 373 U.S. 83 (1963), we request the production of the following documents, reports, examinations, and/or information. We reserve the right to supplement this letter.

## I. Rule 16 of the Federal Rules of Criminal Procedure

We request that the United States (the "Government" or "you") produce any and all responsive information subject to disclosure under Rule 16. Moreover, and upon satisfaction of the foregoing, please confirm in writing that you have complied with your obligations under Rule 16. For the avoidance of doubt, such responsive information includes, but is not necessarily limited to, the following:

1. **Defendant's Oral Statement**. The substance of any relevant oral statement(s) made by Mr. Herrera-Velutini, before or after arrest, in response to interrogation by a person he knew was a government agent if the Government intends to use the statement at trial. If the Government intends to use any statement (oral or written) by a witness as an admission by Mr. Herrera-Velutini, we request the Government produce those statements, including any recordings and corresponding written records. This request includes any oral statement(s) made by alleged co-conspirator(s) in the above-referenced matter, as well as any oral statement(s) made by Mr. Herrera-Velutini as a representative of an organization, that are intended to be used against Mr. Herrera-Velutini.



    2. **Defendant's Written or Recorded Statement.** All relevant written or recorded statement(s) made by Mr. Herrera-Velutini in the possession, custody, or control of the Government, and which the Government knows or through due diligence could know such statement(s) exist.[1]

3. **Documents and Objects.** All books, papers, documents, data, photographs, tangible objects, or copies or portions of any of these items, if the item(s) are within the Government's possession, custody, or control and (i) *which are material to the preparation of Mr. Herrera-Velutini's defense*; (ii) are intended to be used by the Government in its case-in-chief at trial; or (iii) were obtained from or belong to Mr. Herrera-Velutini.

Thus, we request all information that must be provided pursuant to the above criteria including:

A. *Information obtained through search warrants.* This request includes all cellular phone and electronic data and information obtained pursuant to the search warrants executed by the Government. As you know, certain communications seized through the search warrants may be privileged. To the extent any communication is not produced due to an assertion of privilege, work product, and/or any other reason, please provide a privilege log detailing the communication withheld and the stated basis for not producing the same.

B. *Recordings.* A number of recordings referenced in the documents produced thus far by the Government have not provided. Since the recordings are material to our client's defense, we request their immediate production. For ease of reference, see the following table:

| Date | CHS Number | CHS Identity | Subject | Source |
|---|---|---|---|---|
| 6/15/2018 | | | | |
| 5/26/2020 | | | | |
| 10/3/2020 | | | | |
| 10/13/2020 | | | | |
| 10/22/2020 | | | | |
| 11/6/2020 | | | | |
| 11/9/2020 | | | | |
| 12/4/2020 | | | | |

[1] This includes information in possession of any local and/or regulatory agencies of Puerto Rico, such as OCIF and the PR Department of Justice, as well as any investigatory or intelligence agencies, such as the FBI.



| | | | | | |
|---|---|---|---|---|---|
| 12/14/2020 | | | | | |
| 7/20/2021 | | | | | |
| 9/30/2021 | | | | | |
| 10/3/2021 | | | | | |
| 11/16/2021 | | | | | |
| 12/13/2021 | | | | | |
| 2/15/2022 | | | | | |
| 3/8/2022 | | | | | |
| 3/8/2022 | | | | | |
| 3/8/2022 | | | | | |
| 7/13/2022 | | | | | |

Confirmed.

C. *Other information material for the defense*. Our review of the discovery provided to date by the Government reveals that the FBI and DOJ used at least confidential informants ("CHS"), not including other parties who agreed to provide information and/or make recordings in furtherance of the investigation (*e.g.*,

For all such confidential informants, we request the entirety of the FBI's Delta case file and all other case files, including but not limited to any and all evidence detailing (i) the manner in which they were approached to serve as confidential informants, (ii) the purpose of approaching these individuals to serve as confidential informants, (iii) the timing and duration of each of their service(s) as confidential informants, (iv) what information and/or directions were provided by the FBI and/or any other federal agencies to these confidential informants, (v) all information provided by or in the possession of the confidential informants, including information they possess relating to other informants or witnesses, (vi) what compensation and/or other benefits were provided to these confidential informants, and (vii) all validation documents, to include any polygraph or operational tests and/or validation reports.

The above request includes but is not limited to the following individuals:

i.



ii.

[2] *See* DOJ-0000184272.

[3] *See* DOJ-0000068149; DOJ-0000068184.



iii.

5

DOJ_JHVel0000000020

iv.

v.

[4] *See* DOJ-0000070051.

6

DOJ_JHVel0000000021



vi.

7

DOJ_JHVel0000000022



4. **Reports of Examinations and Tests.** Any results or reports of any physical or mental examination, of any scientific tests or experiments made and which are material to the preparation of Mr. Herrera-Velutini's defense or are intended to be used by the Government as evidence in its case in chief.

5. **Expert Witnesses.** A written summary of any testimony that the Government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. The summary provided must describe the witnesses' opinions, the bases and reasons for those opinions, and the witnesses' qualifications.

II. Exculpatory Evidence [5]

Please provide all information and materials known to the Government which may be favorable to Mr. Herrera-Velutini on the *issues of guilt or punishment* within the scope of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyle v. Whitley*, 115 S. Ct. 1555 (1995). This includes any statement provided by any person to the Government which may be considered exculpatory *in any way or degree* or limits Mr. Herrera-Velutini' s punishment exposure, and any statement made by people who have stated to have knowledge of the alleged schemes during interviews in which they fail to implicate Mr. Herrera-Velutini, or otherwise deny his participation in the alleged schemes, or minimize his alleged participation in the scheme.

This request includes, but is not limited to:

1. Any information or materials reflecting policies or guidelines utilized by the Office of the Commissioner of Financial Institutions ("OCIF") with respect to undertaking audits of financial entities, as well as any information or materials reflecting misconduct or discriminatory practices by OCIF or its employees against international banking or financial entities from 2016-2023. For example, any instruction (written or verbal) specifying that OCIF should focus on auditing Internal Banking or Financial Entities related to Venezuela or targeting for audits those entities at the request of the federal law enforcement agencies.

[5] The information below detailed is both exculpatory and material to Mr. Herrera-Velutini's defense.

2. Any information or materials concerning the actions by OCIF and or its personnel, including [REDACTED] in relation to the investigation of the Banco de San Juan (the "Bank of San Juan") including whether any of the OCIF representatives supervising or otherwise involved in the investigation were also involved in the audit and/or investigation of Bancrédito.

3. All correspondence between or otherwise involving federal and local law enforcement agencies, OCIF, the PR DOJ, the Governor's Office, the USAO-PR, and USDOJ concerning OCIF's role (including its auditors) in the Bank of San Juan matter that led to the case being settled and funds being returned to the Bank of San Juan.

4. Any information or materials supporting or otherwise reflecting that a change in OCIF's management was evaluated, [REDACTED]

5. Any information or materials related to statements made by other financial institutions concerning the lack of leadership at OCIF and/or the lack of knowledge of its auditors on BSA matters for the period of 2016-2022, including any related to entities that issued complaints, and the nature of those complaints.

6. Any information or materials of entities or persons that provided or otherwise offered to provide personal benefits and/or political contributions to Governor Vázquez and who were members of the banking or financial industries.

7. Any information or materials reflecting [REDACTED] performance while at OCIF, including but not limited to his record of absences, general timekeeping, personnel records, compensation records, and evaluations of his performance by OCIF employees.

8. Any information or materials reflecting the names of other candidates suggested to and considered by Governor Vázquez and her team to [REDACTED] (*e.g.*, [REDACTED]).

9. Any information or materials showing the reasons the other candidates considered were not selected.

10. Any information or materials reflecting the existence, nature, and/or outcome of a criminal investigation of [REDACTED] This includes [REDACTED] association and/or advisement of [REDACTED] of the Economic Development Bank.

11. Any information or materials showing actions or undertakings by other individual members of the international banking community, including [redacted], with respect to advocating in support of changes to the operations and/or leadership of OCIF.

12. Any information or materials reflecting personal and/or campaign financing benefits independently provided by individuals to Governor Vazquez and/or other officials, in further support of their effort(s) to change the leadership of OCIF, including the timing, nature, value, and alleged rationale for any such personal benefits provided to Governor Vazquez.

13. All information or materials showing that [redacted] provided personal and/or campaign financing benefits to Governor Vazquez such as personal access to a private villa,[6] including the timing, nature, value, and alleged rationale for any such personal benefits provided to Governor Vazquez.

14. Any information or materials reflecting the exchange of information and/or communications between OCIF and any federal agency concerning Bancrédito and/or Mr. Herrera-Velutini from 2016 through February 2023.

15. Any communication between OCIF and its employees, the Governor's Office, heads of government agencies, the PR legislature, [redacted] concerning Julio Herrera-Velutini and Bancrédito. This includes any communication among themselves or with law enforcement agencies including the USAO-PR for the period of 2016- February 2023. This request includes communications made by the above-named individuals through their respective counsels to others on their behalf.

16. Any information or materials reflecting the provision of allegations, directions, instructions, and/or purported legal guidance to OCIF by federal law enforcement agencies and the Governor's Office or those associated with the Governor's office concerning investigatory tactics, banking regulations, federal reporting requirements, etc. to be utilized in relation to Bancrédito and/or Mr. Herrera-Velutini.

17. Any information or materials reflecting changes or lack of changes of OCIF's audit of Bancrédito with the replacement of [redacted]

18. Any information or materials supporting or otherwise reflecting the absence of any improper influence from [redacted] over the OCIF audit of Bancrédito.

---

[6] *See, e.g.*, DOJ-0000190778.

19. The Oficina de Ética Gubernamental ethics investigation file related to [REDACTED] purported interference in the Bancrédito audit, and the resulting investigation which cleared [REDACTED] of any such wrongdoing.

20. Any information or materials showing that OCIF employees associated with the audit of Bancrédito, or another international financial entity destroyed emails and potentially other information upon Bonilla's appointment.[7] This includes any evidence reflecting the destruction and/or attempted destruction of historic records by OCIF employees.

21. The identity (names and positions) of any OCIF employee that participated in the destruction of records.

22. Any information or materials showing whether DOJ, the FBI, and/or any other federal agency was aware of such evidentiary destruction, when they became aware, what – if any – efforts were undertaken to recover such records.

23. Any information or materials showing whether such destroyed records contained exculpatory information.

24. Any information or materials showing whether any OCIF employees were investigated and/or were subject to disciplinary action for seeking to destroy such records.

25. Any information or materials reflecting Bonilla's status as an active Confidential Source ("CS") for the FBI, and any statements or communications exchanged with [REDACTED] in that capacity.

26. All information or materials related to recordings, including copies of the recordings and any transcripts of such recordings, made by Bonilla, including those made at the direction of the FBI or others.[8]

27. Any information or materials indicating which individuals and/or entities contributed campaign donations to Governor Vazquez and/or related Super PAC(s).

28. Any information or materials showing that individuals that contributed to Governor Vazquez and/or related Super PAC(s) had interests relating to the leadership and/or operations of OCIF.

---

[7] *See, e.g.*, DOJ-0000075183.

[8] *See, e.g.*, DOJ-0000098595.

29. Any information or materials related to the [redacted], including all productions from the [redacted] to other parties.

30. Any information or materials indicating how – if at all – Governor Vazquez utilized or otherwise relied upon the [redacted] survey, along with any documents or other information indicating that the [redacted] was designed or used for other purposes, including all productions from the [redacted] to other parties.

31. Any information or materials reflecting the [redacted]s knowledge of the purported scheme.

32. Any information or materials relating to communications between or otherwise involving [redacted] and Mr. Herrera-Velutini, as well as any communications or correspondence concerning [redacted]s discussions with Mr. Velutini relating to OCIF and the banking sector.

33. Any communications or correspondence concerning [redacted] discussions with any other third-party relating to OCIF and the banking sector.

34. Any information or materials providing or otherwise detailing (i) when [redacted] or any other individual acting under the direction of the FBI was approached by the FBI and/or any other federal agency to act on the Government's behalf, (ii) what instructions such individuals received from the FBI and/or any other federal agency, (iii) what reports such individuals generated while acting as facilitators, including any issues or concerns they raised with the FBI, (iv) what guidance such individuals received from the FBI in determining targets to surreptitiously record, and (v) copies and transcripts of any and all recordings made by such individuals in furtherance of the above conduct.

35. Any information or materials demonstrating the FBI's communications, involvement in the leadership and operations of OCIF, including but not necessarily limited to (i) all correspondence between the FBI and OCIF and/or its representatives, including communications concerning Mr. Herrera-Velutini, Bancrédito, and/or the allegations raised in the Indictment, (ii) all information, instructions, and directions provided by the FBI to OCIF and/or its representatives, including with respect to the handling of OCIF's audit of Bancrédito, and (iii) any and all information or records demonstrating OCIF's use to further parallel investigation(s) undertaken by the FBI and/or DOJ.

III. Impeachment Information

The existence and substance of any payments, promises of immunity, leniency preferential treatment, or other inducements made to prospective government witnesses within the scope of

*Giglio v. United States*, 405 U.S. 150 (1972) and *Napue v. Illinois*, 360 U.S. 264 (1959). The *Giglio* Materials requested include but are not limited to the following:

1. Any written plea agreement with prospective government witnesses;

2. Any written or oral agreement or representation made by the government to a prospective witness that in exchange for his/her cooperation;

i. That the Government will make a sentence recommendation to the Court;

ii. That the Defendant will be allowed to self-surrender and not be arrested at his/her residence/office;

iii. That the Government will make or not oppose a bail recommendation, *e.g.*, the prospective Government witness be allowed to be on his/her own recognizance while pending trial;

iv. That the Government will not pursue charges against the prospective *government witness, his/her family members, spouses, relatives, or significant others;*

v. A recommendation of the dismissal of charges after the prospective witness testifies and/or a recommendation for a Pre-Trial Diversion Program before or after the witness testifies.

vi. Any payments to prospective witness or family members, spouses, and significant others;

vii. Any promises to aid a prospective government witness to *remain in the United States*;

viii. That the Government would recommend a plea agreement with a deduction of points for "minimal" or "minor" participation under the United States Sentencing Guidelines; and/or

ix. That the Government will not forfeit individual property or waive any forfeiture right or interest.

3. Any information that will undermine the credibility of Government witnesses, including law enforcement officers. This includes disciplinary actions against OCIF personnel.

IV. 404(b) Evidence

Any evidence the Government intends to use as to Mr. Herrera-Velutini under Rule 404(b) of the Federal Rules of Evidence.

V. Summaries to Prove Content

Federal Rule of Evidence 1006 states that a party may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent of a summary must make the originals or duplicates available for examination, copying, or both. Summary charts offered pursuant to Rule 1006 must be grounded in admissible evidence *United States v. Nivica*, 887 F.2d 1110, 1459 (1st Cir. 1984). Please advise if the Government intends to use summaries or charts in the Government's case-in-chief so Mr. Herrera-Velutini can review the underlying information.

VI. Federal Rule of Evidence 807

Federal Rule of Evidence 807 requires the Government to disclose hearsay exceptions it plans to submit under said rule, including the statement, and the name and address of the declarant. Please provide the corresponding information if the Government intends to use a hearsay exception under Rule 807.

VII. Designation of Evidence

Pursuant to Rule 12 we request the Government designate the evidence it intends to introduce at trial to determine if Mr. Herrera-Velutini needs to move to suppress any of the evidence designated.

VIII. Continuing Duty to Disclose

Federal Rule of Criminal Procedure 16 recognizes a "continuing duty to disclose." Should the Government receive additional information covered by this Discovery Letter or is aware of any material change in any statement produced, we request it be disclosed and notified to Mr. Herrera-Velutini as soon as practicable.

IX. Duty to Preserve All Agent Notes

We request that all agent notes are preserved. Please confirm that you have advised your agents that they are obligated to retain their interview notes.

Thank you in advance for your anticipated cooperation. If the Government has an objection to producing the documents and information requested above, please advise in writing by February 21, 2023. We are available to discuss any issues you may have about our request.

Sincerely,

Lilly Ann Sanchez

cc: Robin Rathmell
Kasowitz Benson Torres LLP

Sonia I. Torres, Esq.
DLA Piper (Puerto Rico)

Seth Erbe, Esq
Assistant U. S. Attorney
District of Puerto Rico



U.S. Department of Justice

Exhibit 2

Criminal Division

*Public Integrity Section*

*Washington, D.C. 20530*

April 28, 2023

VIA EMAIL
Lilly Ann Sanchez, Esq.
LS Law Firm
2 South Biscayne Blvd.
Miami, FL 33131
Counsel for Mr. Herrera-Velutini

**Re: United States v. Wanda Vazquez Garced, et al.**
**Case No. 22-342 (RAM)**

Dear Counsel:

We write in response to your discovery request, dated February 7, 2023.[1] The numbering of our responses below reflects that of your letter. This letter contains sensitive information and is Bates labeled to reinforce that it's part of the Government's discovery production, and therefore subject to the Court's protective order.

## I. RULE 16 MATERIAL

1. **Defendant's Oral Statement -** The United States is not aware of Mr. Herrera-Velutini making any oral or written statements in response to an interrogation. Mr. Rossini did give an interview to the FBI which was clandestinely recorded. That recording will be provided in discovery in Production #5. Additionally, Mr. Herrera-Velutini was clandestinely recorded three times in a separate investigation in 2018. Those recordings will be produced in Production #5. Finally, the FBI clandestinely recorded a portion of an interview of Ms. Vazquez on February 15, 2022. These recordings will be produced in Production #5.

2. **Defendant's Written or Recorded Statement** – The United States is not aware of any relevant recorded statements of Mr. Herrera-Velutini in its possession; as noted, it is producing recordings from a separate investigation. The United States is in possession of relevant messages sent by Mr. Herrera-Velutini; specifically, electronic messages. Hard drives containing the

[1] The Government believes that what it has produced and will be producing in discovery extends beyond its Fed. Rule Crim. Pro. 16 obligations, including its pending productions in response to several of your requests. These productions do not constitute the Government's waiver of objections to any discovery motions that may be filed in this case.

contents of two electronic accounts (including a second collection of evidence from one such account) seized from Mr. Herrera-Velutini have been provided in discovery. The United States has no obligation to provide statements made by Mr. Herrera-Velutini to investigative and regulatory agencies in Puerto Rico, including the Office of the Commissioner for Financial Institutions and the Puerto Rico Department of Justice, as they are not part of the investigative team. The Government is also not required to provide evidence not in its possession that was collected by other federal agencies that are not part of the prosecution team.[2]

3. **Documents and Objects -** The United States has and will continue to meet its Federal Rule of Criminal Procedure Rule 16 discovery requirements.

**A. Information Obtained Through Search Warrants** - Regarding your request for the Government to produce "all cellular phone and electronic data and information obtained pursuant to the search warrants executed by the Government," as you're aware, the Government has produced to Defendants only the full contents of the returns from search warrants obtained from their own devices and accounts. The Government has produced hard drives containing full copies of the raw data obtained from three search warrants executed on accounts belonging to Mr. Herrera-Velutini (two Apple accounts and one Yahoo account). Additionally, as you're aware, the United States is preparing to provide search warrant returns from the other accounts seized in this investigation, subject to the filter review which is now being conducted by the Department of Justice's Fraud Section. After the Fraud Section conducts its filter review, you will receive search warrant evidence that is not segregated by other parties' filter terms. The Filter Team will not be producing search warrant material that is segregated by other parties' filter teams, absent the privilege holding party's consent or a court order.

---

[2] "The imposition of an unlimited duty on a prosecutor to inquire of other offices not working with the prosecutor's office on the case in question would inappropriately require us to adopt a monolithic view of government that would condemn the prosecution of criminal cases to a state of paralysis." *United States v. Avellino*, 136 F.3d 249, 255 (2d Cir. 1998) (internal quotations omitted); *see also United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996) (Government not required to seek out allegedly exculpatory evidence in possession of Office of Thrift Supervision , the SEC, or the IRS when it had been unaware of the existence of that information because none of those agencies were part of the team that investigated the case); *United States v. Pelullo*, 399 F.3d 197 (3rd Cir 2005) (In case in which Department of Labor investigative agents were part of the prosecution team, documents generated by the Pension and Welfare Benefits Administration of DOL in civil suit were not attributable to the prosecution team); *United States v. Trevino*, 556 F.2d 1265, 1271 (5th Cir. 1977) (concluding that a statement in the sole possession of the probation officer was not in the possession of the prosecution); *United States v. Norris*, 753 F. Supp. 2d 492, 529 (E.D. Pa. 2010) (Antitrust Division did not violate Rule 16 or Brady violations by failing to turn over materials in the possession of three of the foreign corporations with whom the Antitrust Division had plea agreements); and *United States v. Bonds*, No. 14-cr-0074-JCC, 2014 U.S. Dist. Lexis 136469, at *16-19 (W.D. Wash. September 26, 2014) (records in the possession of Child Protective Services and records from juvenile victims' schools not in possession of Government because they were not federal agencies participating in the same investigation of the defendant).

**B. Recordings** - In Production #5, the Government will be producing all of the recordings listed on pp. 3-4 of your discovery letter, as well as copies of all other recordings that are contained within the file for this public corruption investigation (Operation Saltwater Breeze), as well as the two other investigations: one into money laundering at Bancredito,[3] and the other into conduit campaign contribution scheme involving a cooperating witness who consensually recorded conversations in this case."[4]

**C. Other Information Material for the Defense** – Your request for the entirety of the FBI's Delta case file is denied. Your letter correctly points out that source reports for [REDACTED] different CHSes are included in one of the three FBI Sentinel files provided in discovery, but the majority of these individuals were merely interviewed at one point and never utilized to further the public corruption investigation (Operation Saltwater Breeze) leading to charges in this case. For those CHSes who were utilized, much of the material in the Delta files is administrative, immaterial, and non-discoverable.

We have or are producing all source reports (FD-1023s) related to Operation Saltwater Breeze, and two other investigations. Additionally, we are providing the following from the Delta file (to the extent they exist) for any individuals who provided information relevant to, or who are even tangentially related to, the public corruption investigation, which covers the information you request in paragraph 3C, (i) to (vii), on p. 3:

- the memorandums opening them as a CHSes;
- the memorandums closing them as CHSes (for those who been closed);
- paperwork detailing any payments or benefits that they received from the FBI;
- the CHSes' quarterly reports; and
- report detailing any Otherwise Illegal Activity the witnesses were permitted to engage in, or any unauthorized illegal activity they engaged in.

(hereafter, "relevant Delta file material"). We are providing this relevant Delta file material for the following CHSes:

- [REDACTED] – a businessman in the real estate industry who was a close associate with Mr. Herrera-Velutini and Ms. Vazquez;

[3] The Sentinel file for this investigation is from Bates # [REDACTED] to [REDACTED] (itemized on discovery log as "FBI Sentinel Production for Related Bancredito Investigation - Money Laundering and Asset Recovery Section (MLARS)").

[4] The Sentinel file for this investigation is from Bates # [REDACTED] to [REDACTED] (itemized on discovery log as "FBI Sentinel Production for Rusty Pipeline Investigation").

- [redacted] – an OCIF employee;
- [redacted] – a former Commissioner of OCIF;
- [redacted] – a former Bancredito employee;
- [redacted] – an owner of an insurance company;
- [redacted] – an OCIF employee;
- [redacted] – a lawyer and CPA who is a cooperating witness against a public official charged in a different matter;
- [redacted] – former acting Commissioner of OCIF;
- [redacted] – identified as "Witness 1" in the indictment in this case; convicted of violating 18 U.S.C. 1001; and
- [redacted] – identified as "Political Consultant A" in the indictment in this case, who entered into a "pocket plea agreement" with the United States.

Regarding your requests related to specific individuals:

3C(i). [redacted]

a. [redacted]

b. Your request for "the entirety of [redacted] informant/confidential source ("CS") file" is denied. The Government is producing relevant Delta file material for [redacted] To the Government's knowledge, [redacted] To the extent that this has changed, it is publicly available information. [redacted] has not been paid by the Government, though he has been reimbursed for expenses related to his cooperation. Records of compensation/reimbursement to [redacted] during cooperation are being provided to you in Production #5 as part of his relevant Delta file material. As reflected in records from his Delta file being provided in discovery, he continues to work as an FBI source on a matter unrelated to this investigation. In recognition of his cooperation, and based on this continuing agreement to cooperate, [redacted] was allowed to enter into a "pocket plea" agreement. This paperwork has been provided to you in discovery. [redacted]. The FBI is not aware of [redacted] violating any terms of this pocket plea agreement.

3C(ii). [redacted]

a. Foundation for Progress was a non-profit operated by [redacted] A witness alleged that [redacted] embezzled funds from Foundation for Progress to Dawn Holding Company, as noted in one report provided in discovery. [[redacted]]. The FBI has not substantiated this allegation.[5]

b. The FBI is not in possession of any further evidence other than what has been provided in discovery regarding potential bribe payments in relation to the Puerto Rico Department of Education.

c. The request for [redacted] entire CHS file is denied. The Government is producing relevant Delta file material for its CHSes. In addition, the Government has provided a copy of his plea agreement paperwork. [[redacted] to [redacted]]. There may be additional derogatory information contained in [redacted] Pre-Sentence Report, but that cannot be released without an order of the Court. If the defense wants a copy of the Pre-Sentence Report, the Government will not oppose a motion by the defense for its release by the United States Probation Office. The Government has further provided the Sentinel case file from the investigation that led to [redacted] criminal conviction (Operation Rusty Pipeline). [redacted] obstructed a portion of the Government's investigation by revealing to the subject of a pending investigation that [redacted] was wearing a wire, as described in his plea agreement paperwork [redacted] to [redacted]], and as described in [redacted] CHS closing paperwork, which the Government is producing in Production #5. Additionally, the Government will produce an FBI-302 documenting [redacted] own admissions about [redacted] obstructive behavior.

3C(iii). [redacted]

a. The Government has produced its discovery related to [redacted] Additionally, the Government will be producing non-privileged material from search warrants executed on two electronic accounts belonging to [redacted] The Government will continue to produce any relevant evidence it obtains related to [redacted]

b. The Government will produce the records in the FBI's possession related to this allegation.

c. The FBI has no information about this, other than what was provided in discovery. [*See* [redacted].

d. Your request for "the entirety [redacted] file" is denied. The Government is producing relevant Delta file material for its CHSes. In addition, the Government has produced relevant source reports.

---

5 [redacted]

3C(iv). [redacted]

a. The Government's Operation Saltwater Breeze investigation incorporates its investigation of [redacted]. There is not a separate investigation of [redacted] The Government has no further information related to Perfect Cleaning, other than what's been provided in discovery. If the Government obtains more information on this issue, it will produce it.

b. [redacted] maintains that he was not compensated by Bancredito or the Vazquez administration. The Government is not in possession of any evidence to refute this. The Government is also not in possession of any other evidence that [redacted] received benefits for actions he undertook during the Vazquez administration, other than what's been provided in discovery.[6] If the Government obtains more information on this issue, it will produce it.

c. The FBI has no further information related to the investigation of [redacted] other than that which has been and will be provided in discovery, as the investigation of [redacted] is encompassed in the investigative file for Operation Saltwater Breeze. The evidence already provided in discovery related to [redacted] includes multiple FBI 302s documenting interviews with [redacted]. The Government will also be producing his plea paperwork. There may be derogatory information contained with a Pre-Sentence Report for [redacted] No presentence report has been prepared for [redacted] by the U.S. Probation Office. The Government also provided a transcript of [redacted]s grand jury testimony in its first production. Additionally, the government seized evidence from a personal phone belonging to [redacted] as well as two electronic accounts (Yahoo and Apple). Non-privileged material from this device and these accounts will be provided to you in discovery. The Government will continue to produce any relevant evidence it obtains related to [redacted].

3C(v). [redacted]

a. [redacted]

b. [redacted] has stated in interviews that [redacted] and Bancredito's Board of Directors believed that they were not allowed to inform Mr. Herrera-Velutini about Suspicious Activity reports that they received related to Mr. Herrera's personal transactions. The Government has no further information on how [redacted] may have discussed or not discussed the subject of Suspicious Activity Reports with Mr. Herrera-Velutini, other than what has been and will be produced in discovery.

[6] As noted in his interviews, [redacted]

c. With regard to [redacted] representation of Bancredito, it's the Government's understanding, based on representations from [redacted] that she had provided legal representation to Bancredito in the past, but at the time the Government began discussions with [redacted], [redacted] was no longer providing legal representation to Bancredito, and that her representation of [redacted] did not present a conflict of interest. The Government further understood from [redacted] that not only was Bancredito aware of her representation of [redacted], but that Bancredito was paying for [redacted] legal representation of [redacted]. Additionally, after the Government served Bancredito with a subpoena for documents, Bancredito asserted privilege over two emails between [redacted] after [redacted] Government counsel then contacted outside counsel for Bancredito, inquiring into whether the privilege was asserted on behalf of Bancredito in error, given Ms. Dominguez represented [redacted], and not Bancredito. Bancredito's outside counsel responded in agreement with the Government. This email exchange will be provided to you. Finally, it is the Government's understanding from discussing this matter with [redacted] that she never had an attorney-client relationship with Mr. Herrera-Velutini in his personal capacity.

d. [redacted] voluntarily provided the Government with evidence. [redacted] also signed consents to search two of [redacted] cellular phones, and two of [redacted] electronic accounts (one Apple account and one Yahoo account). Non-privileged material from these devices and these accounts will be provided to you in discovery.

e. The FBI has no further information related to the investigation of [redacted] other than that which has been and will be provided in discovery, as the investigation of [redacted] is encompassed in the investigative file for Operation Saltwater Breeze. The evidence already provided in discovery related to [redacted] includes multiple FBI 302s documenting interviews with [redacted] The Government will be producing [redacted] plea paperwork. [redacted] [[redacted]]. There may be derogatory information contained with a Pre-Sentence Report for Ms. Diaz. No Pre-Sentence Report has been prepared for [redacted] by the U.S. Probation Office. The Government also provided a transcript of [redacted] grand jury testimony in its first production. Finally, the Government has produced a subpoena returns with [redacted] financial records. [[redacted]].

3C(vi). [redacted]

a. [redacted]

b. Your request for "the entirety of [redacted] CS file" is denied. The Government is producing relevant Delta file material for its CHSes. In addition, the Government will be producing his relevant Delta file material in Production #5. Additionally, [redacted] The FBI has no further information related to [redacted] other than what is being provided in discovery.

4. **Reports of Examinations and Tests -** The Government has not conducted any "physical or mental examination[s]," nor any "scientific tests or experiments."

5. **Expert Witnesses -** The Government has no intent to introduce expert testimony at this time. If that changes, the Government will comply with its legal obligations related to expert testimony, including Federal Rules of Evidence 702, 704, and 705.

## II. EXCULPATORY EVIDENCE

The Government is aware of, and will comply with, its *Brady* obligations. With regard to your specific requests:

1. OCIF is not agency of the federal government, nor part of the investigative team in this matter. Therefore, the Government is in possession of only material provided to it by OCIF. OCIF's subpoena return will be produced by the Government in Production #5. Additionally, FBI 302s from the Government's interviews of OCIF employees have been provided in discovery. As is common between federal law enforcement and regulatory agencies, the FBI and OCIF entered a Memorandums of Understanding in April of 2008 and January of 2023. The Government is producing these MOUs.

2. Although this request seeks information that is beyond the scope of the Government's discovery obligations, the Government is producing FBI 302s for the only OCIF employees interviewed as part of the interview into the Bank of San Juan in Production #5.

3. The Government is producing FBI 302s for the only OCIF employees interviewed as part of the interview into the Bank of San Juan. To the extent you seek correspondence related to the settlement of that matter, including communications of "local law enforcement" and OCIF, your request is denied as overbroad, immaterial, and potentially seeking communications covered by the attorney-work product and deliberative process privilege.

4. [redacted]

5. The Government has and will produce evidence in its possession related to the change in leadership in OCIF in 2020. To the extent that OCIF or the Governor's office received complaints of the OCIF leadership, such material is not in the possession of the Government. If you believe there may be more evidence outside of the Government's, you may issue a trial subpoena to the Governor's office or OCIF.

6. The Government has and will produce evidence in its possession related to political contributions to Governor Vazquez. There may be additional information in the possession of Puerto Rico's Office of the Election Comptroller, which is publicly available.

7. The Government will be producing OCIF's subpoena return in Production #5. If you believe there to be more personnel records in the possession of OCIF, you may issue a trial subpoena to OCIF.

8. All information in the Government's possession reflecting the names of other candidates suggested to and eschewed by Governor Vazquez in favor of [REDACTED] has been or will be provided in discovery, including non-privileged search warrant returns.

9. All information in the Government's possession related to Vazquez's decision to [REDACTED] has been or will be provided in discovery, including non-privileged search warrant returns.

10. The Government submitted a request to the Puerto Rico Department of Justice for all files related to any investigation of [REDACTED] and received a negative result. The Government will be producing its response. The FBI conducted a search of its database for any records related to [REDACTED] and found no results.

11. All information in the Government's possession related to Vazquez's decision to [REDACTED] has been or will be provided in discovery, including non-privileged search warrant returns.

12. All information in the Government's possession related to Vazquez's decision to [REDACTED] has been or will be provided in discovery, including non-privileged search warrant returns. Information related to "campaign financing benefits provided by individuals to Governor Vazquez" is in the possession of Puerto Rico's Office of the Election Comptroller, which is publicly available.

13. The Government received information related to [REDACTED] providing Governor Vazquez with access to a private villa located at St. Regis, Bahia Beach in Rio Grande Puerto Rico to Governor Vazquez through an email sent to the Government by a private citizen. The Government interviewed that individual on April 12, 2023. When completed, the FBI 302 documenting that interview will be produced in discovery.

14. As noted above, the Government is producing two MOUs between the FBI and OCIF. To the extent you're seeking any communications between "any federal agency" other than the FBI related to Bancredito and/or Mr. Herrera-Velutini from 2016 to 2023, your request is denied as overbroad and seeking information outside the possession of the prosecution team.

15. The Government has produced the Sentinel file for this public corruption investigation, as well as the Sentinel files for a separate investigation into money laundering at Bancredito and a dark money scheme. To the extent your request seeks any communication from any of the persons named in your request with any "law enforcement agencies," your request is denied as overbroad and outside the possession of the prosecution team.

16. The Government is producing two MOUs between the FBI and OCIF in Production #5. To the extent that OCIF was given direction by the Governor's Office, that evidence is not in the position of the prosecution team.

17. The Government has provided reports of interviews of individuals familiar with the inner workings of OCIF during the relevant time periods, including [redacted] and a transcript of the grand jury testimony of [redacted] Additionally, the Government will be producing OCIF's subpoena response in Production #5.

18. The Government has provided reports of interviews of individuals familiar with the inner workings of OCIF during the relevant time periods, including [redacted] and a transcript of the grand jury testimony of [redacted] Additionally, the Government will be producing OCIF's subpoena response in Production #5.

19. The Government has no information and is not in possession of any documents related to this investigation. If you seek additional internal records in the possession of Oficina de Ética Gubernamental, you may issue it a trial subpoena.

20. [redacted] mentioned this to the Government on June 1, 2022. [redacted]. The Government has no further information as to whether OCIF employees destroyed any emails.

21. The Government's information is limited to that which was provided in interviews of OCIF employees, which have been provided in discovery.

22. Government first learned of this during an interview of [redacted] on June 1, 2022. Assuming the veracity of this information, the documents were in the possession of OCIF, not the Government.

23. The Government has not confirmed that documents were destroyed, or if they were, the nature of their content. The Government has no information that they contained exculpatory material.

24. The Government has provided reports of interviews of individuals familiar with the inner workings of OCIF during the relevant time periods, including [REDACTED] and a transcript of the grand jury testimony of [REDACTED] If you seek additional internal records in the possession of OCIF, you may issue it a trial subpoena.

25. The Government has provided source reports from [REDACTED] time as a CHS. Additionally, the Government is producing in Production #5 relevant material from his Delta file, which reflects that he was deactivated as a CHS on June 24, 2020, because he "failed to adequately communicate with handling agents and may be party to criminal activity."

26. The Government is providing all recordings in its possession made by [REDACTED] in Production #5.

27. The Government has no further information related to campaign donations to Governor Vazquez and/or related SuperPACS, other than what's been provided in discovery. Contributions made to political action committees in Puerto Rico, and reported by the committees, are publicly available through Puerto Rico's Office of the Election Comptroller.

28. The Government is not in possession of any information demonstrating that persons other than those listed in the indictment offered to contribute money to Governor Vazquez's campaign in exchange for a change in the leadership of or the operations of OCIF.

29. The Government has produced documents provided by CT Group in response to a Government subpoena, as well as FBI 302s of interviews of CT Group employees.

30. The Government has produced documents provided by CT Group in response to a Government subpoena, as well as FBI 302s of interviews of CT Group employees.

31. Your request does not specify whether you're inquiring about [REDACTED] knowledge of the first or second bribery scheme. Assuming you're referring to the second, the FBI has substantiated that [REDACTED] notified at least one close associate of [REDACTED] of the investigation: [REDACTED]. The Government has and will continue to provide all relevant evidence related to the second bribery scheme.

32. The Government has provided hard drives with the contents of the only three accounts seized from Mr. Herrera-Velutini. The Government will also be producing non-privileged

search warrant material seized from other accounts. The Government is aware of at least one occasion of Mr. Herrera-Velutini communicating with [REDACTED], which was captured in a screenshot that he sent to [REDACTED] The defense will be receiving a copy of [REDACTED] non-privileged communications, which will include this screenshot. The Government has not seized any communications from [REDACTED]

33. The Government is producing non-privileged materials from the accounts it seized in this investigation. The government did not execute search warrants on any accounts or devices in the possession of Governor Pierluisi.

34. The only federal agency within the prosecution team in this matter is the FBI. The Government has produced the full Sentinel file for the investigation that led to the conviction of [REDACTED] ("Operation Rusty Pipeline"). The Government is also providing the FBI 302 of its interview of [REDACTED], as well as the recording that she made at the FBI's direction on June 11, 2021. The Government is also providing any FBI 302s accompanying surreptitious recordings. The Government is also producing all recordings made in this or the other two investigations, irrespective of their materiality.

35. Your request for "all correspondence between the FBI and OCIF" is denied as overbroad. It is commonplace for the FBI to maintain relationships with federal, state, and local financial regulators. As noted above, the FBI entered into MOUs with OCIF. The Government is confirming if there were others. With regard to your request for evidence related to directions provided by the FBI to OCIF in relation to OCIF's audit of Bancredito, the Government is not aware of such direction. The Government will further inquire into this with the case agents who led the money laundering investigation, and will produce any substantiating information. With regard to the FBI's use of OCIF to further its investigation, the FBI has interviewed OCIF witnesses multiple times. The FBI 302s of those interviews have been produced in discovery. In addition, on June 11, 2021, the FBI asked the Commissioner of OCIF to make a consensually recorded call to [REDACTED] [REDACTED], which she did. A copy of this recording will be produced in Production #5. Finally, several members of OCIF were CHSes for the FBI. Relevant material from their Delta files will be produced in Production #5.

## III. IMPEACHMENT INFORMATION

1. The Government will provide the plea agreements for all prospective Government witnesses. Additionally, Pre-Sentence Reports may contain impeachment material. The only potential witness in this matter for whom a Pre-Sentence Report has been completed is Mr. Fuentes.

2. The Government has made no promises to the witnesses other than those in the written plea agreements. Out of an abundance of caution, the Government notes that



a) Before their testimony before the grand jury, [redacted] and Gary Rodriguez were notified through counsel that the Government did not intend to charge them[7];

b) In plea negotiations with [redacted], the Government agreed to not charge [redacted] with conspiring to engage in the bribery scheme of Governor Vazquez;

c) In plea negotiations with [redacted], the Government agreed to not include violating the Bank Secrecy Act as an object of the conspiracy; and

d) In the case of [redacted] as in the case of any cooperating defendant, the Government explained that through the process of 5K cooperation, their sentence could be significantly reduced.

e) In response to your specific inquiries,

   i. No promises have been made by the Government in cases pending sentencing, other that as stated in the plea agreements.

   ii. [redacted] were allowed to turn themselves in. Additionally, shortly before the indictment was unsealed, [redacted] and [redacted] were notified of the pending unsealing.

   iii. The Government recommended standard conditions of release for both [redacted] were released on their own recognizance upon recommendation by the government.

   iv. The Government has notified [redacted] that it does not intend to bring charges against them.[8] To the extent any other witnesses had concerns about criminal culpability, the Government would have indicated to them they were not suspected of committing any criminal offense.

   v. No prospective witness has been promised a recommendation of dismissal of charges.

---

[7] Although the Government did not and does not intend to charge these individuals, none have been immunized and all are still subject to prosecution should new evidence or circumstances necessitating charges emerge.

[8] Although the Government did not and does not intend to charge these individuals, none have been immunized and all are still subject to prosecution should new evidence or circumstances necessitating charges emerge.

     vi. No prospective witness has been compensated, other than reimbursements for some confidential human sources, as noted in the documentation the Government is producing in Production #5.

vii. No prospective witness is a non-U.S. citizen at risk of deportation from the United States.

viii. No promises have been made to any prospective witness regarding a potential prison sentence, other than as stated in their plea agreements.

ix. No promises have been made to any prospective witness regarding forfeiture, other than as stated in their plea agreements.

3. The Government will comply with its *Giglio* obligations, to include checking the personnel files of prospective federal employees and agents prior to trial. The personnel files of employees of OCIF are not in the Government's possession.

**IV. 404(b) Evidence** – The Government will provide notice of any 404(b) evidence it intends to introduce after a trial date is set.

**V. Summary Exhibits** – The Government has not yet decided on whether it intends to introduce summary charts pursuant to Federal Rule of Evidence 1006. If it does, it will make underlying evidence available to the defense.

**VI. F.R.E. 807 Evidence** – The Government has not yet decided whether it intends to introduce hearsay evidence through the residual exception. The Government will provide notice of intent to use any such evidence prior to trial.

**VII. Designation of Evidence -** The Government will provide an exhibit list in accordance with any court deadlines. The Government could potentially use any evidence produced in discovery by the prosecution team, unless otherwise noted. The defense should assume, at the very least, evidence supporting every allegation of the indictment will be admitted at trial.

**VIII. Continuing Duty to Disclose -** The Government understands its continuing discovery obligations.

**IX. Duty to Preserve All Agent Notes** - The case agents have been instructed to preserve their notes.

In addition to above noted discovery, the Government is producing relevant documents filed with the Court under seal as part of its grand jury investigation.

We understand our continuing duties of disclosure and discovery. We will continue to produce discoverable information in subsequent productions and will produce any new discoverable information as it comes into our possession.

  To the extent you have further discovery requests or can provide further information in relation to the requests made in your February 7, 2023 letter, the Government will make itself available to meet and confer.

If you desire any additional information, please contact the undersigned.

Sincerely,

COREY R. AMUNDSON
Chief
Public Integrity Section
Department of Justice

By: */s/ Ryan Crosswell*
Ryan R. Crosswell
Nicholas W. Cannon
Trial Attorneys
(202) 514-1412

CC:
Counsel for Ms. Wanda Vazquez
Counsel for Mr. Mark Rossini

Lilly Ann Sanchez
Shareholder

305-503-5503
lsanchez@thelsfirm.com

One Biscayne Tower
2 South Biscayne Blvd., Suite 2530
Miami, Florida 33131

www.thelslawfirm.com

**Exhibit 3**

July 12, 2023

**<u>Via Electronic Mail</u>**
Ryan R. Crosswell, Esq.
Nicholas W. Cannon, Esq.
United States Department of Justice
Criminal Division, Public Integrity Section
1301 New York Ave., NW
Washington, DC 20005
Email: ryan.r.crosswell@usdoj.gov
nicholas.cannon2@usdoj.gov

**Re: *United States v. Herrera-Velutini, et al.*, 22-342 (RAM)**

Dear Messrs. Crosswell and Cannon:

We write in response to your letter dated April 28, 2023, regarding the discovery pending in the case of reference and your objections to some discovery requests. As further detailed below, we seek clarification to some of your responses and ask you to reconsider your objections to our requests.

In addition, please produce all documents referenced in your response by July 28,2023. The Government filed its indictment more than eleven months ago, and our client still does not have all the necessary discovery to prepare for trial. Such a lengthy delay unduly prejudices our client.

**I. Rule 16 Material**

**1. Defendant's Oral Statements**

In response to this request, you stated you would produce clandestine recordings of interviews by FBI agents of Mr. Rossini and Ms. Vazquez, and an interview by a government source of Mr. Herrera. Our review of production 5 to date has not identified any clandestine recording of Mr. Rossini's interview by the FBI. Please advise if you possess this recording and if so, why it has not been produced.



Please clarify as well if the recordings you have produced are all the recordings you refer to in your response, and if the production responsive to this request is complete. In addition, the request asked for co-conspirators' statements that will be used against the defendant. Please advised if responsive documents to this request will be produced as well.

**2. Defendant's Written or Recorded Statement**

In response to this request, you object to producing statements made by Mr. Herrera to OCIF or the Puerto Rico Department of Justice, as well as any federal agency "not part of the prosecution team." As you know, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Government has an obligation to produce information in its custody, possession, and control. This obligation extends to information in possession of government agents. *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (explaining that "In order to comply with *Brady*, therefore, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police."). Moreover, prosecutors have an affirmative duty to search the files "maintained by branches of government "closely aligned with the prosecution" *U.S. v. Brooks*, 966 F.2d 1500, 1503-04 (D.C. Cir. 1992).[1]

Similarly, the Justice Manual, on its section § 9-5.002, advises that an obligation to produce may arise when: (1) the state or local agents are working on behalf of the prosecutor or are under the prosecutor's control; (2) when state and federal governments are part of a team, are participating in a joint investigation, or are sharing resources; and (3) when the prosecutor has ready access to the evidence. The Justice Manual further guides prosecutors "to err on the side of inclusiveness when identifying the members of the prosecution team for discovery purposes."

Here, the government continues to attempt to distance itself from OCIF, claiming it was not part of the prosecution team. Yet, OCIF and other state agencies, such as the PR Department of Justice, have acted on the Government's behalf, driving the investigation, stonewalling the defendant at the insistence of the Government (both the investigating and prosecution teams), gathering evidence, sharing resources, and even acting as informants and recording confidential conversations between the regulator and employees of Bancredito (BIBTC) in an attempt to gather evidence furthering the investigation.

[1] See also, *Carey v. Duckworth*, 738 F.2d 875, 878 (7th Cir. 1984)(explaining that "a prosecutor's office cannot get around *Brady* by keeping itself in ignorance, or by compartmentalizing information about different aspects of a case..); *U.S. v. Risha*, 445 F.3d 298, 306 (3d Cir. 2006) (" In sum, a *Brady* violation may be found despite a prosecutor's ignorance of impeachment evidence. This may be especially true when the withheld evidence is under the control of a state instrumentality closely aligned with the prosecution." (Internal Citations Omitted).

[redacted] The Government's extensive use of OCIF in furtherance of the investigation include:

- Registering OCIF's management and auditors as registered or unofficial confidential informants so they could act at the FBI's direction and report directly to the Government concerning Mr. Herrera and BIBTC (*see, e.g.*, [redacted], [redacted], [redacted]);

- Collecting documents in response to FBI requests for information and seeking FBI input into and potential approval of OCIF findings concerning BIBTC (*see, e.g.*, [redacted], [redacted], [redacted], [redacted]);

- Directing official and unofficial informants to secretly record confidential meetings between involving BIBTC or its agents (*see, e.g.*, [redacted], [redacted], [redacted]).

The Government even sought the Commissioner's help to deceive [redacted] into believing that its informant [redacted] did have the access to the Governor and could purportedly recommend the review of OCIF's arbitrary actions.

The Government cannot avoid its discovery and disclosure obligations by asserting that the investigation of Mr. Herrera and BIBTC, in which OCIF, its leadership, and its employees as an agent was a "separate investigation" from the investigation leading to the current charges against Mr. Herrera. The charges against Mr. Herrera arise directly out of the joint FBI-OCIF investigation of Mr. Herrera and BIBTC, which was ongoing throughout the period covered by the charges. The charges all relate to purported official action that allegedly was sought to address the various aspects of the FBI-OCIF investigation that you assert is "unrelated," and the Government employed the same OCIF informants and witnesses in furtherance of the pending charges as it has done in the allegedly "unrelated" investigation of Mr. Herrera and BIBTC. Moreover, the investigation of Mr. Herrera and BIBTC for alleged conduct in connection with the operation of the bank was *officially merged* by the FBI with the corruption allegations in 2021, well before the pending charges were filed. ([redacted]).

Because Puerto Rico agencies, especially OCIF, worked closely with the Government to develop the case against Mr. Herrera and BIBTC, the Government has an obligation to search and produce the documents requested under Rule 16, *Brady*, and *Giglio*, despite its meritless attempt to avoid its obligations by characterizing portions of its investigation as "separate." *United States v. Diaz-Lopez, CRIMINAL 21-157 (RAM), at *12* (D.P.R. Apr. 5, 2022) (finding that substantial early assistance in an investigation from a state agency raises *Brady* and *Giglio* obligations). Thus, the Government must reconsider its objections and search the records of OCIF related to BIBTC and Mr. Herrera for discoverable material.

In addition, you argue that the Government is not required to provide evidence collected by other federal agencies because they are not part of the prosecution team. The Justice Manual, on its section § 9-5.002, explains that members of the prosecution team may include members of parallel criminal and civil proceedings, and, as in the case here, regulatory agencies with which prosecutor is working or has worked close enough.[2] As you know, the Government has worked and is working closely with federal agencies such as FinCEN, in connection with the investigation of Mr. Herrera and BIBTC, which for the reasons set forth above is inextricably intertwined with the pending charges. Accordingly, the Government has an affirmative duty to search and disclose information gathered by other federal agencies participating in the investigation of Mr. Herrera and BIBTC under Rule 16, *Giglio*, and *Brady*.

### 3. Documents and Objects

#### a. Information Obtained through search warrants

You have agreed to produce additional documents in response to this request but have not indicated a specific date when such discovery will be available. As stated, we request that all responsive discovery be produced by July 28, 2023.

We also reiterate our request that to the extent a communication is not produced due to privilege or for any other reason, please provide **a privilege log detailing the communication withheld and the reasons for not producing the same.** You indicate that production of all search warrant returns other than those associated with Mr. Herrera's own accounts must await review by the Government' filter team, but we see no reason why many search warrant returns or other items of electronic evidence should be subject to filter team review at all, including the hard drive containing materials received from OCIF in March of 2020 that was searched via warrant dated June 17, 2020 ([redacted]) and material belonging to [redacted] that was searched pursuant to [redacted] consent.

In addition, after eleven months since the charges were filed, we are still waiting for numerous search warrant applications referenced in the discovery, but which have not been produced. For ease of reference see below:

---

[2] Among the factors to consider are (1) whether the prosecutor and the agency **conducted a joint investigation or shared resources related to investigating the case**; (2) whether the agency played an active role in the prosecution, including conducting arrests or searches, interviewing witnesses, developing prosecutorial strategy, participating in targeting discussions, or otherwise acting as part of the prosecution team; (3**) whether the prosecutor knows of and has access to discoverable information held by the agency**; (4) **whether the prosecutor has obtained other information and/or evidence from the agency**; (5) **the degree to which information gathered by the prosecutor has been shared with the agency;** (6) whether a member of an agency has been made a Special Assistant United States Attorney; (7) the degree to which decisions have been made jointly regarding civil, criminal, or administrative charges; and (8) the degree to which the interests of the parties in parallel proceedings diverge such that information gathered by one party is not relevant to the other party.

| **Application** | **Warrant** | **Date** | **Subject** | **Owner** |
|---|---|---|---|---|
| NOT IDENTIFIED | [redacted] | 11/20/2020 | Information associated with Apple ID [redacted] with login alias [redacted] stored at premises of Apple Inc. | [redacted] |
| NOT IDENTIFIED | [redacted] | 11/20/2020 | Information associated with the email [redacted] stored at premises controlled by Oath Holdings, Inc. (for Yahoo!) | [redacted] |
| NOT IDENTIFIED | [redacted] | 11/20/2020 | Information associated with Apple ID [redacted] [sic], with login alias [redacted], stored at premises of Apple Inc. | [redacted] |
| NOT IDENTIFIED | [redacted] | 11/20/2020 | Information associated with the email account [redacted] stored at premises of Google LLC. | [redacted] |
| NOT IDENTIFIED | [redacted] | 11/20/2020 | Information associated with [redacted] stored at premises controlled by Oath Holdings, Inc. (Yahoo Inc.) | [redacted] |
| NOT IDENTIFIED | [redacted] | 3/25/2021 | iCloud backup for account associated with IDs [redacted] and [redacted] stored at premises controlled by Apple Inc. | [redacted] |
| NOT IDENTIFIED | [redacted] | 3/26/2021 | Information associated with email [redacted] stored at premises controlled by Google LLC | Owner information not disclosed. The court order asks Google to disclose records including names and addresses associated with this account. |
| NOT IDENTIFIED | [redacted] | 7/30/2021 | Information associated with email [redacted] controlled by Google LLC. | [redacted] |
| NOT IDENTIFIED | [redacted] | 7/30/2021 | Information associated with Apple ID [redacted] with alias | [redacted] |

| **Application** | **Warrant** | **Date** | **Subject** | **Owner** |
|---|---|---|---|---|
| | | | [REDACTED] controlled by Apple Inc. | |

**b. Recordings**

We did not locate in the production the recording of [REDACTED] dated November 5 or 6 that is referenced in [REDACTED]. In addition, as noted above, we see no record of a surreptitious recording of Mr. Rossini by the Government in November 2021. Please confirm that these recordings have been produced and that all other recordings in relation to all of the related/"unrelated" investigations referenced in your discovery letter -- Operation Saltwater Breeze, Rusty Pipeline, and related Bancredito Investigation, as well as any other investigation concerning Mr. Herrera -- have been produced.

**c. Other Information Material for the Defense**

You have refused to produce the entirety of the FBI's Delta case file, including for individuals who you alleged were not used to advance the corruption investigation, and for even those who participated you have refused to provide the entirety of the materials on the basis that they are "administrative, immaterial, or non-discoverable." Without providing additional information, we cannot assess whether such objections are valid. As you know, unless accompanied by specific facts, a boilerplate objection to a discovery request is improper. In addition, for reasons stated above, it is improper for the Government to decline to produce Delta files and other records on the grounds that the Government's investigation of Mr. Herrera and BIBTC for alleged money laundering violations was "unrelated" to the current charges.

As a compromise, we suggest that the information you argue is administrative, immaterial, or non-discoverable be submitted to the court for its review. This request is particularly significant as to Delta case files of [REDACTED] confidential informant which have been identified as government informants/cooperating witnesses and potential witnesses in this case.

Moreover, with respect to the individuals named in our letter you have stated that you will produce additional information but have not provided a date. As stated, eleven months have passed since the indictment, as such this information should have been produced long ago.

For ease of reference below is a list of information that is pending production.

1. [REDACTED] Non-privileged material from search warrants executed on two electronic accounts belonging to [REDACTED]

2. – According to your response, voluntarily provided the Government with evidence, signed consents to search two of cellular phones, and two of electronic accounts (one Apple account and one Yahoo account). Moreover, you stated that you will provide her plea paperwork.

After nearly **10 months,** the government has still not provided data contained in phone and of relevance are ALL text messages between and Ms. Herrera. Again, we are requesting the information as it may contain exculpatory information. As advised previously, the text messages between and Herrera are non-existent from June through August 2021. It is unconceivable that messages between Herrera and are privileged, and thus there no reason to not immediately provide this information to Mr. Herrera.

Again, for any information that is not disclosed asserting attorney-client privilege, we request that a privilege log be provided- as to who are the parties, dates, and subject.

3. –

In addition, we have not identified any search warrant returns or grand jury transcripts in which the Government disclosed to reviewing courts or to grand juries that the purported object of the scheme charged in Counts One through Four of the Indictment was the appointment of a Government informant to the position of OCIF Commissioner. If you have made any such disclosures to reviewing courts or the grand jury considering the charges, please provide them. Also, please clarify if you will produce all grand jury transcripts including but not limited to Michael Waters and that of any FBI agent that testified in the GJ, and exhibits (we have received some but not all exhibits provided to the grand jury). For example, we have grand jury transcript and exhibits numbered 2, 3, 8, 11, 12, 13, 16, 17, 18, and 19. Yet, evidently, we are missing exhibits 4-7, 9,10, and 14-15.

## II. Exculpatory Information

### a. Specific Requests

You objected to producing communications regarding the settlement with Bank of San Juan, including those between law enforcement and OCIF on the basis that the request is overbroad, immaterial, and potentially seeking communications covered by the attorney-work product and deliberative process privilege. We ask that you reconsider your boiler-plate objections. As previously stated, the requested information is highly relevant to the defendant's

defenses and as evidence of OCIF's and the Government's pattern of discriminatory behavior against certain regulated parties, including abuses of process. To the extent you claim that any communications are protected by a privilege, please provide a privilege log so that we may evaluate the basis of the objection.

You have also objected to producing "communications between "any federal agency" other than the FBI related to Bancredito and/or Mr. Herrera-Velutini from 2016 to 2023," and "communication from any of the persons named in your request with any "law enforcement agencies."[3] As previously stated, the Government's discovery obligation extends to federal and state agencies that have been closely aligned with the prosecution during the investigation. Thus, we request that you reconsider your objections.

We also object to the government's assertion that conversations between OCIF, the FBI and the USAO could be categorized as privileged. We welcome your reference to case law that supports that argument. Nevertheless, be mindful that the government has the obligation to provide all *Brady* information and all *Giglio* information as to its witness, hence if those conversations relate to information that can be used to impeach witnesses or exculpatory it must be provided.

You have also objected to producing "all correspondence between the FBI and OCIF." To clarify, this information request asks for information relating to the defendants and Bancredito. Please confirm if you have produced all responsive information concerning communications between OCIF and the FBI.

**b. Giglio /Non-Compliance of Federal Agents**

In the discovery provided, [REDACTED] and [REDACTED], there are references to the removal of SA Ronald Daniels from the investigation for alleged non-compliance. Please confirm that all records concerning the non-compliance of SA Daniels, or any other federal agent or person acting under the Government's behalf, have been produced.

**c. Pending Information**

We understand that the following information is still pending, please produce the information by no later than July 28, 2023. There is no reason for this information to have taken over 11 months to produce. To the extent any of this information relates to Herrera and Bancredito, the same should be immediately provided.

1. Evidence relating to the removal of Mr. Joyner, including non-privileged search warrant returns.

---

[3] See Responses at p. 10, Requests 14 and 15.

2. Evidence related to the change in leadership in OCIF in 2020.

3. Information reflecting the names of other candidates suggested to and eschewed by Governor Vazquez in favor of [redacted]

4. All information related to Vazquez's decision [redacted]

5. Information related to [redacted] providing Governor Vazquez with access to a private villa located at St. Regis, Bahia Beach in Rio Grande Puerto Rico to Governor Vazquez, and the interview of the individual that sent an email regarding this matter, including the FBI 302 documenting the interview.

6. Further inquiries into directions provided by the FBI to OCIF in relation to OCIF's audit of Bancredito into this, with the case agents who led the money laundering investigation.

7. Any agreements (plea agreements, immunity orders, proffer agreements, "pocket plea" agreements, non-prosecution agreements, etc.) for all prospective Government witnesses.

We would like to resolve as many controversies as possible without the court's intervention. Please let us know if you need any clarification or would like to discuss further.

Sincerely,

Lilly Sanchez, Esq.
cc:

Robin Rathmell
Jason M. Short
Kasowitz Benson Torres LLP

Sonia I. Torres, Esq.
DLA Piper (Puerto Rico)



U.S. Department of Justice

Exhibit 4

Public Integrity Section

*Washington, D.C. 20530*

August 1, 2023

VIA EMAIL
Lilly Ann Sanchez, Esq.
LS Law Firm
2 South Biscayne Blvd.
Miami, FL 33131
Counsel for Mr. Herrera-Velutini

**Re: United States v. Wanda Vazquez Garced, et al.
Case No. 22-342 (RAM)**

Dear Counsel:

We write in response to your letter dated July 12, 2023. The numbering of our responses below reflects that of your letter, and within each section, we address the issues your letter raises. This letter contains sensitive information and is Bates labeled to reinforce that it's part of the Government's discovery production, and therefore subject to the Court's protective order.

## I. Rule 16 Material

### 1. Defendant's Oral Statements

- **Recordings of Mr. Rossini -** The FBI interviewed Mr. Rossini on November 18, 2021 as reflected in the FBI 302 produced at Bates [redacted]. The Government's letter dated April 28, 2023 incorrectly stated that this this interview was recorded; the interview was not recorded. A cooperating witness did clandestinely record three conversations of Mr. Rossini on September 30, October 3, and November 16 of 2021, all of which have been produced.

- **Co-conspirator statements -** The Government has not decided on what co-conspirator statements it may introduce at trial, but at a minimum, the Government expects to use those quoted or referenced in the Indictment. Those statements contained in text messages, messaging apps, or emails will be produced as part of the search warrant discovery. Any co-

conspirator statements that the Government will use at trial will be produced to the defendants.

2. **Defendant's Written or Recorded Statements -** The Government understands its obligations to provide *Brady* material within the prosecution team's possession to the defense.  OCIF is not part of the prosecution team.  To date, the Government has:

- provided you with OCIF's response to a grand jury subpoena dated April 14, 2021, in which the Government made a broad request for "all records and account information within the control and custody of [OCIF] that were obtained by OCIF pursuant to any audit or examination of Bancredito (including account opening documents, applications, signature cards, bank statements, correspondence, wire transfers, canceled checks, deposits, and withdrawals)";

- its report of interviews with OCIF employees;

- its CHS reports for OCIF employees who were confidential sources;

- any recordings done by OCIF employees.

To the extent that the defense believes that OCIF's response to the Government's subpoena is incomplete, it may obtain more evidence, if it exists, through Fed. R. Crim. Pro. 17 subpoenas.  The defense can also move for a court order requiring action on the part of OCIF.

FinCEN is also not part of the prosecution team.

3. **Documents and Objects**

   a. **Information Obtained Through Search Warrants -** Per the Court's Order, as your letter notes, the Fraud Section of the Department of Justice's Criminal Division has taken over the filter review of the search warrants seized in this investigation.   To date, you should have received a copy of the full forensic download of your client's Apple accounts and Yahoo account.  You should have also received a decrypted copy of the Apple accounts, to ensure you were able to fully access all the material. The Fraud Section Filter Team is currently conducting a filter review using the filter terms provided by your client's co-defendants on their own accounts.   We will be producing a copy of the material that is not potentially privileged to you.  Your letter notes that eleven months have passed since charges were filed, but as you're aware, the Court did not rule on the motions related to the filter review until February 28, 2023.  It

then took several weeks to work with all three defendants to finalize filter terms; the last of your co-defendants to finally confirm final filter terms for his accounts did not do so until May 24, 2023. The transmitting of all the search warrant returns to the Fraud Section, the running of the filter terms, and the processing of them through litigation support is time and effort intensive. The Government is working as expeditiously as possible.

Your letter requests privilege logs for all withheld material. Filter logs will be provided by the Filter Team.

Your letter notes that "we see no reason why many search warrant returns or other electronic evidence should be subject to the filter review at all, including the hard drive material received from OCIF . . . and material belonging to [redacted] that was searched pursuant to [redacted] consent." In the case of third parties' accounts, including the information received from OCIF and [redacted], out of an abundance of caution, the Filter Team is running the material against filter terms to protect against the disclosure of potentially privileged information.[1] To the extent that material is segregated as potentially privileged, the Filter Team intends to produce the filtered material to the parties so that they may assert attorney-client privilege, where necessary. To the extent the Government or defendants dispute any assertion of privilege by a third party to this litigation, this will be a matter for the Court.

Finally, in response to your request regarding the search warrant applications in this matter, they were filed on a separate court docket. We have collected them and sent them to litigation support for processing. We expect that they will be ready for production to you in approximately two to three weeks.

b. **Recordings -** The recording of [redacted] was produced at [redacted] and [redacted]. The inventory of the recordings inadvertently listed the recording as done by [redacted], but it was actually made by [redacted]. All recordings referenced in the discovery letter in relation to Operation Saltwater Breeze, as well as the Rusty Pipeline investigation and the money laundering investigation, have been produced. If you cannot locate the recording of [redacted] or any other recordings listed, please let us know and we will send you another copy.

---

[1] Your letter objects to "material belonging to [redacted]" being "subject to the filter team review at all." Of note, the terms that the Filter Team is running against [redacted] account include the filter terms provided by both Mr. Herrera and Bancredito, as an extra precaution, in case her personal accounts include any privileged communications between Herrera or Bancredito and their attorneys which included [redacted]

    c. **Other Information Material to the Defense** – With regard to the Delta material that is administrative in nature, much of the paperwork generated when the FBI signs up new confidential sources has no evidentiary value whatsoever. That said, we appreciate your willingness to reach a compromise. In the alternative to asking the court to review this material, we propose that we produce such administrative paperwork as to one or two of the CHSes for your review, and then we meet and confer over whether you still feel production of all administrative paperwork is necessary. The material already provided to you includes when the source was signed up, what, if any, compensation the source received, when they were closed as sources (if they were closed), and their CHS reports. We believe that we can come to a resolution on this without court involvement.

With regard to your specific requests:

1. [REDACTED] search warrant accounts are being run through the filter review, and non-privileged material will be produced to you.

2. [REDACTED] plea paperwork was produced at [REDACTED], [REDACTED], [REDACTED], [REDACTED], [REDACTED], and [REDACTED]. The contents of Ms. Diaz's phones and email accounts are being processed through the filter review out of an abundance of caution. All non-privileged material will be produced to you.

3. [REDACTED] non-administrative Delta material has been produced to you.

With regard to [REDACTED], he was an FBI source who provided information on international banking, international banking entities, and international financial entities in general, until he was contacted by Mr. Herrera about becoming the next OCIF Commissioner. At that point, during the same time period that Mr. Herrera and his co-conspirators allegedly worked to get him appointed, [REDACTED] ceased communication with the FBI, until he had to be closed as a CHS for "serious control problems." Specifically, after initially reporting to the FBI that Herrera called him and reported that he (Herrera) convinced the Governor to appoint [REDACTED] "failed to update the handling agents and remained difficult to contact for several months." As you're also aware, during the same time period that he cut off contact with the FBI, multiple OCIF employees then reported to the FBI that they felt his appointment was a result of corruption and that they felt apprehensive about continuing their work on the Bancredito investigation. This led to one OCIF employee recording a conversation with

[redacted] in which – after finally recusing himself from the Bancredito matter – he acknowledged that "the Venezuelans put me here to help but I'm not going to help them." We will be producing copies of the remaining search warrant affidavits. To the extent any of this information, which corroborates the Government's allegations, is or is not in the search warrants, they speak for themselves.

Finally, we have ordered the transcripts of the grand jury testimony of the FBI Special Agent Andrew Waltz and [redacted] We will be providing both transcripts, along with their exhibits. We expect to produce both by the end of this week.

Regarding your question about missing grand jury exhibits, as we have previously advised, we marked more grand jury exhibits than we actually utilized in the grand jury. Other than the grand jury exhibits of SA Waltz, all grand jury exhibits have been previously provided to you in discovery.

## II. Exculpatory Information

### a. Specific Requests

- **Evidence related to Bank of San Juan –** Your request for evidence from a separate investigation into a separate banking entity – specifically, the Bank of San Juan – is, itself, boilerplate, except in its accusatory tenor. The Government has not engaged in a "pattern of discriminatory behavior against certain regulated parties." The Government has already produced FBI 302s for the only OCIF employees interviewed as part of the investigation into the Bank of San Juan, which went well beyond what is required under Fed. R. Crim. Pro. 16. The Government has responded to all defendants' discovery requests with diligence and will continue to do so. And the Government is willing to meet and confer to discuss this request further. But until you can provide more specificity as to why records related to an investigation into a separate banking editing are "highly relevant to the defendant's defenses," your request is denied.

- **Communications with "any federal agency"** – The Federal Bureau of investigation is the investigative agency in this matter. The United States discovery obligations do not extend to "any federal agency," much less non-federal agencies. The United States will provide all discoverable information within the FBI's possession. The Government further understands its *Brady* and *Giglio* responsibilities, and will provide any such information in the prosecution team's possession.

  Your letter requests "all correspondence between the FBI and OCIF," and clarifies that your request is communications "relating to the defendants and

Bancredito." As noted above, the Government already subpoenaed OCIF for all correspondence related to Bancredito. We will request from the FBI any additional communications with OCIF related to defendants and Bancredito other than what is contained in the case files.

b. ***Giglio*/Non-Compliance of Federal Agents** – The Government will produce all *Giglio* information pertaining to any testifying witnesses. Per standard Department practice, Government counsel intends to make requests that the FBI provide any adverse personnel material for any potential testifying agents closer to trial.

c. **Pending Information** – The Government has provided a copy of the FBI's case file in three separate investigations, as well as grand jury testimony for all but two witnesses, which, as noted above, has been submitted for processing and will be produced. As additional evidence is generated, it will be produced as well. Additionally, the Government will be producing all non-privileged search warrant returns, including any related to [REDACTED] The Fraud Section's Filter Team is still in the process of conducting the filter review. All non-privileged material released to the Prosecution Team will be produced to you.

We share in your desire to resolve as many discovery disputes as possible without court intervention. To that end, even in the requests that we have denied, we welcome further clarification and discussion so that we can reduce the number of disputes that must be resolved by the Court.

If you desire any additional information, please contact the undersigned.

Sincerely,

COREY R. AMUNDSON
Chief
Public Integrity Section
Department of Justice

By: */s/ Ryan Crosswell*
Ryan R. Crosswell
Nicholas W. Cannon
Trial Attorneys
(202) 514-1412

CC:
Counsel for Ms. Wanda Vazquez
Counsel for Mr. Mark Rossini



**U.S. Department of Justice** **Exhibit 5**

Public Integrity Section

*Washington, D.C. 20530*

November 20, 2023

VIA EMAIL
Juan J. Michelen
Stumphauzer Kolaya Nadler & Sloman, PLLC
One Biscayne Tower
2 South Biscayne Boulevard, Suite 1600
Miami, FL 33131
Counsel for Mr. Mark Rossini

**Re: United States v. Wanda Vazquez Garced, et al.**
**Case No. 22-342 (RAM)**

Dear Counsel:

We write in response to your email dated November 10, 2023. For ease of reference, we have copied your requests into this letter. This letter contains sensitive information and is Bates labeled to reinforce that it's part of the Government's discovery production and therefore subject to the Court's protective order.

*1.* 

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts.*** – The Filter Team has not yet produced a full copy of [redacted] full phone dump; it's our understanding from talking with Joanna Bowman, the filter attorney, that they will get it to us soon. But the Filter Team has released a substantial amount of content from pertinent search warrant returns. The Government produced this content in Production #9. This content contains communications that the FBI identified and collected as relevant or potentially relevant during its review of the following search warrant returns:

1. Julio Herrera's Apple account;
2. Julio Herrera's Yahoo account;
3. Mark Rossini's Apple account;
4. Mark Rossini's Google account;
5. Wanda Vazquez's Apple account;



6. [redacted] Yahoo account;
7. [redacted] Google account;
8. [redacted] Yahoo account;
9. [redacted] Google account; and
10. [redacted] phone

This content is located at [redacted] to [redacted] and [redacted] to [redacted]. You'll find much of communication between the defendants and pertinent witnesses there. Additionally, content from [redacted] phone is located at [redacted] to [redacted].

b. ***FBI 302s*** - The discovery log (attached to transmitting email) notes interviews conducted of [redacted] Please let us know if you have any additional difficulty in locating them.

2. ***Julio Herrera***:

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts.*** – The Government never seized a phone from Julio Herrera. The Government has produced copies to you of Mr. Herrera's non-privileged communications[1] from this Apple and Yahoo accounts, with the exception of his WhatsApp communications, which the Filter Team is still reviewing for potentially privileged material. Much of the pertinent communications from Mr. Herrera were contained in other persons' accounts. As noted above, you'll find much of communication between the defendants and pertinent witnesses in Production #9.

3. [redacted]

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts.*** – The filter team has released the non-privileged material from his search warrant return to us. It will be provided in Production #10.

b. ***FBI 302s?*** His interviews were recorded as CHS reports, not FBI 302s. His CHS number is [redacted]. Additionally, the discovery log lists interviews of [redacted]

[1] As directed by the Court's order, potentially privileged information will be produced to the defendants, who will then assert privilege. All communications for which privilege is not asserted will be released by the Filter Team to the Prosecution Team. Any disputes over privilege between defendants and the Filter Team will be raised with the Court.

4. [REDACTED]

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts.*** - We never searched his phones, so emails or text messages referenced in discovery are from other persons' accounts. You'll find much of the relevant text messages from the defendants' and witnesses' phones/email accounts in Production #9. Additionally, the discovery log lists CT Group's subpoena responses, which includes pertinent emails. Please let us know if you have any additional difficulty in locating them.

b. ***FBI 302s?*** The FBI 302 for the Fullbrook interview is at [REDACTED] to [REDACTED].

5. ***Wanda Vazquez:***

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts.*** - The Filter Team has not yet produced a copy of her phone dump; it's our understanding they will be releasing the non-privileged material to us soon. In the meantime, you can find much of the relevant text messages from the defendants' and witnesses' phones in Production #9.

b. ***FBI 302s?*** - The discovery log lists the interviews of Vazquez. Please let us know if you have any additional difficulty in locating them.

6. [REDACTED]:

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts.*** - The Filter Team has not yet produced a copy of her phone dump; it's our understanding the Filter Team will be releasing the non-privileged material to us soon. In the meantime, you can find much of the relevant text messages from the defendants' and witnesses' phones in Production #9.

b. ***FBI 302s?*** The discovery log lists interviews of [REDACTED]. Please let us know if you have any additional difficulty in locating them.

7. [REDACTED]:

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts.*** – The Government never searched [REDACTED] phones. Text messages to or from [REDACTED] referenced in discovery are

from other persons' phones. You'll find much of the relevant text messages from the defendants' and witnesses' phones in Production #9.

b. ***FBI 302s?*** [REDACTED] never sat for an interview.

8. [REDACTED]:

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts. In her grand jury testimony, she mentioned the FBI took her phone.*** – A full copy of her phone dump will be produced in Production #10.

b. ***FBI 302s?*** The discovery log lists interviews of [REDACTED]. Please let us know if you have any additional difficulty in locating them.

9. [REDACTED]

a. ***Text/WhatsApp messages and phone dump? I know they are referenced throughout the discovery, including some of the grand jury transcripts, but I have yet to find actual texts.*** - The Government never searched [REDACTED] phones, so text messages referenced in discovery are from other persons' phones. You'll find much of the relevant text messages from the defendants' and witnesses' phones in Production #9.

b. ***Cellebrite extraction?*** [REDACTED] phone was never searched.

c. ***Extraction of the hard drive he provided agents?*** The hard drive containing documents provided from OCIF was provided by [REDACTED] We have provided a copy of the hard drive to OCIF's counsel and are waiting to see if OCIF makes any assertions regarding privilege. OCIF's counsel will be making any such assertions by December 1, 2023. We will produce the contents of the hard drive for which he does not make assertions of privilege after that date.

10. ***Re Grand Jury Transcripts/Exhibits. I have found the following:***

***a.*** [REDACTED]

i. ***I believe we are missing his grand jury exhibits. Can you clarify or provide?*** These exhibits are located at [REDACTED] to [REDACTED].

***b.*** [REDACTED]

***c.*** [REDACTED]

***d.*** [REDACTED]

***e.*** [REDACTED]

***f.*** [REDACTED]

i. ***I believe we are missing his grand jury exhibits. Can you clarify or provide?*** These exhibits are located at [REDACTED] to [REDACTED].



*g.* [REDACTED]
*h.* [REDACTED]
*i.* [REDACTED]

i. ***I believe we are missing his grand jury exhibits. Can you clarify or provide?*** These exhibits are located at [REDACTED] to [REDACTED].

j. ***Can you confirm that these are all of the grand jury transcripts? Am I missing any?*** There are no other grand jury transcripts.

We endeavor to resolve as many discovery disputes as possible without court intervention. To that end, please let us know if you would like to discuss any of our responses above.

If you desire any additional information, please contact the undersigned.

Sincerely,

COREY R. AMUNDSON
Chief
Public Integrity Section
Department of Justice

By: *<u>/s/ Ryan Crosswell</u>*
Ryan R. Crosswell
Nicholas W. Cannon
Trial Attorneys
(202) 514-1412

CC:
Counsel for Ms. Wanda Vazquez
Counsel for Mr. Julio Herrera