**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

UNITED STATES OF AMERICA

      Plaintiff,

v.

JULIO M. HERRERA VELUTINI,

      Defendant.

Case No. 3:22-cr-00342 (RAM)

**JULIO M. HERRERA VELUTINI'S OPPOSITION TO THE
GOVERNMENT'S MOTION FOR PROTECTIVE ORDER PURSUANT TO
SECTION 3 OF THE CLASSIFIED INFORMATION PROCEDURES ACT**

Defendant, Julio M. Herrera Velutini ("Defendant" or "Mr. Herrera"), through his undersigned attorney, respectfully opposes certain portions of the proposed Protective Order Pertaining to Classified Information (Doc. No. 583-1) attached to the Government's Motion for Protective Order Pursuant to Section 3 of the Classified Information Procedures Act.

## INTRODUCTION

Mr. Herrera recognizes and respects the Government's legitimate interest in protecting classified information and intends to prepare for and defend this case in compliance with the federal law that furthers that interest. The Government's proposed Protective Order, however, seeks requirements beyond those permitted by the Constitution and authorized by the Classified Information Procedures Act, 18 U.S.C. App. III ("CIPA"), related to practice before this Court in this case. The Government also lacks standing to impose certain requirements in its proposed Protective Order. Mr. Herrera objects to those provisions, as detailed below.

Mr. Herrera also objects to the Government requiring Defendant and his counsel to travel to Puerto Rico to review, discuss, or prepare pleadings that might contain classified information.

The Government may not impose such a burden on the preparation of the defense without a valid purpose, especially when the Government is under no such burden.

## ARGUMENT

The Government Motion for Protective Order should be denied because it is unnecessary at this juncture, and none of the authorities it relies on provide a basis for this Court to include the language to which the Defense objects. This Court should decline to enter the Government's proposed Protective Order at this stage of the proceedings.

**I.    The Court is Without Authority to Issue a Protective Order to Protect Against the Disclosure of Classified Information Other Than in Connection with Trial or Pretrial Proceeding in the Criminal Case Before It.**

***A. Classified Information Procedures Act Section 3 does not apply when the Government does not plan to divulge classified information.***

CIPA does not grant this Court authority to issue the Government's proposed Protective Order. The Government's Motion seeks a CIPA protective order because "one or more defendants may seek to raise defenses that implicate classified national security information." (Doc. No. 583 at 1). The Government never indicates that it intends to produce classified information.  To be clear, Mr. Herrera has requested the production of certain classified information in discovery but the Government has yet to provide same.  Mr. Herrera  therefore plans to file a motion to compel such production.

However, at this juncture, the assertion alone that a defendant may raise defenses relating to classified national security information is insufficient to implicate CIPA. CIPA defines "classified information" in relevant part to mean "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security."  CIPA § 1(a).  CIPA § 3 then states: "[u]pon motion of the United States, the court shall issue an order to

protect against the disclosure of any classified information disclosed <u>by the United States</u> to any defendant in any criminal case in a district court of the United States." (Emphasis added).

CIPA, however, does not provide a court authority to issue a protective order over all classified information that may be known to a defendant or the defense in a criminal case. As the United States Court of Appeals for Second Circuit has held:

> [T]he scope of CIPA prohibitions on a defendant's disclosure of classified information may be summarized as follows: information conveyed <u>by the Government</u> to the defendant in the course of pretrial discovery or the presentation of the Government's case may be prohibited from disclosure, including public disclosure outside the courtroom, <u>but information acquired by the defendant prior to the criminal prosecution may be prohibited from disclosure only "in connection with the trial" and not outside the trial</u>. Since Pappas acquired the information at issue before the trial, CIPA does not authorize the District Court's order to the extent that the order prohibits public disclosure outside the court proceedings. Whatever protection the Government is entitled to obtain against such disclosure must be found in sources of law other than CIPA.

*United States v. Pappas*, 94 F.3d 795, 801 (2d Cir. 1996) (emphasis added).

In *Pappas*, the Second Circuit considered an interlocutory appeal challenging provisions in a supplemental CIPA protective order issued after the defendant met with reporters and a newspaper published two stories describing what was alleged to be Pappas's activities with the Government. The defense objected that the provision in the supplemental protective order that required the defense and defendant to maintain the confidentiality of classified material "received or obtained by the defense whether before or after this order from any agent of the United States in connection with Dennis J. Pappas' alleged participation with any agency in question herein," prohibited the defendant from making a public disclosure of any classified information covered by the order. *Id*. at 797–98.

The Second Circuit noted that CIPA "contemplates three circumstances in which a defendant may be prohibited from disclosing classified information": (1) during the pendency of the government's application for a CIPA § 6 hearing; (2) following court rulings the government

may not use alternatives to the disclosure of classified information and must decide whether to accept dismissal or permit disclosure; and (3) following the issuance of a CIPA § 3 protective order. *Id*. at 799–800. CIPA § 3, however, expressly limits the protective order to classified information "disclosed by the United States to any defendant in any criminal case." *Id*. at 798. Therefore, Section 3 of CIPA did not authorize the court to issue a protective order regarding classified information that was not disclosed to a defendant in a criminal case. *Id*. at 800. S*ee also United States v. Chalmers*, No. S5 05 Cr. 59 (DC), 2007 U.S. Dist. LEXIS 13640, at *5, 2007 WL 591948 (S.D.N.Y. Feb. 27, 2007) ("*Pappas* makes clear that § 3 of CIPA does not apply to public disclosure of classified information that Wyatt may have obtained independently of this case."); *United States v. Oakley*, No. 3:07-CR-88, 2008 U.S. Dist. LEXIS 78721, at *6 (E.D. Tenn. Oct. 8, 2008) ("Given that the information [] which the government seeks to regulate stems from knowledge the defendant possessed prior to the instant litigation, the Court finds that Section 3 of CIPA cannot serve as a basis for the government's request."); *United States v. Lustyik*, No. 2:12-CR-645-TC, 2013 U.S. Dist. LEXIS 195175, at *4 (D. Utah June 27, 2013) (directing proposed CIPA § 3 protective order be modified to be consistent with *Pappas* holding that :CIPA prohibitions on a defendant's disclosure of classified information" do not include "information acquired by the defendant prior to the criminal prosecution" and "may be prohibited from disclosure only 'in connection with the trial' and not outside the trial.").

To reach this ruling, the *Pappas* court relied not only on § 3's specific language, but also on CIPA's legislative history. The Senate Report stated that "[i]f the defendant already had classified materials in his possession, such a protective order can prevent disclosure in connection with the trial but *it cannot be expected to reach disclosure outside the trials*. Federal criminal statutes apply to such disclosures." *Pappas*, 94 F.3d at 800 (quoting Senate Rep. 96-823, 2d

session 2d (1980) at 6, *reprinted in* 1980 U.S.C.C.A.N. at 4299) (emphasis added).  The Second

Circuit found the House of Representatives to have been "even more emphatic" on the limits of

the court's authority to control disclosure outside of the trial context:

> The Committee wishes to emphasize that neither the language of section 102(a)(1) concerning the prohibition on disclosure (nor the court order provisions of sections 102(d) and 105(a)) are in any way intended to be the basis for any proposed expansion or reinterpretation of the law of prior restraint, and section 102(a)(1) is not, in fact, intended to be a prior restraint provision at all.

> . . . The intent is to leave the law of prior restraint undisturbed. It has been held that *the trial court has broad discretion in prohibiting disclosure by the defendant of information obtained by the defendant through use of the court's processes, such as through discovery*. A prohibition in this area can extend to out-of-court disclosures and to post-trial disclosures. *The court's authority is narrowed where the information at issue was in the possession of the defendant before the trial began and was not obtained by the defendant with the aid of the court. In this area, the court's authority to prohibit disclosure extends only to a regulation of what may be said or introduced in the trial context.*

*Id*. at 800 (quoting from H.R. Rep. No. 96-831, 2d Sess. (1980) at 13-14.) (emphasis added by the

court).

The conference report further supports Congress's intent to limit the scope of CIPA § 3

protective orders to classified information disclosed by the government:

> The Senate bill contained a provision (sec. 3) which authorized the court to issue a protective order "to guard against the compromise in connection with a prosecution by the United Staters of any classified material."  The House bill had a similar provision (sec. 109(a)) which, however, *made clear that the court could issue such an order only "to protect against the disclosure of any classified information disclosed by the United States to any defendant*."

> The conferees agreed to the House provision.

H. R. Rep. No. 96-1436, 2d Session, (1980) (emphasis added).

This Court may only issue a CIPA protective order to cover materials underlined disclosed by the

Government—an event that (according to the Government) will not take place in this case.  Again,

Mr. Herrera maintains the Government is required to produce classified discovery materials and

will file a motion to compel seeking such production.

**B. *In any event, the Government's proposed Protective Order is overbroad and should not be issued as proposed.***

Even if this Court could issue a protective Order under CIPA (which it is not authorized to do under these circumstances), the proposed Protective Order is overbroad. Mr. Herrera opposes the following sections of the Government's proposed Protective Order, among others, and proposes the Court issue the Defendant's proposed Protective Order attached as Exhibit 1:

- Subparagraphs 2.c(ii) through (vi) and Paragraph 4 are overly broad and appear intended to have the proposed Protective Order apply to classified information expressly excluded by CIPA § 3 as well as in contexts having no connection to pretrial or trial proceedings in this case;

- Paragraph 6 is unnecessary because if the impetus of this proposed Protective Order is the Government's desire to limit the Defendants' ability to disclose classified information, then the Government should not be able to dictate the conversations between Defendant and his counsel;

- A Memorandum of Understanding is not necessary because the Court retains the authority to prosecute contempt of the Protective Order. Additionally, if the Government plans to produce classified information at a later date, the Defense will be required to sign nondisclosure agreements with the Government;

- Language in the Memorandum of Understanding is overbroad and seeks to impose requirements that the Protective Order itself may not impose;

- Language in paragraph 16 declaring agreements not before this Court as binding and enforceable and ordering compliance with those agreements is unenforceable; and

- Requirement in paragraph 21 that defendants go to a secured facility in Puerto Rico is

unduly burdensome.

    *1. The provisions cited by the Government likewise do not grant this Court the authority to issue the Government's proposed Protective Order at this Junction.*

        i. <u>CIPA</u>

That CIPA does not provide authority for the court to prohibit the disclosure of classified information known to a defendant independent of a criminal case other than in connection with the trial "in no way" means a "defendant, and defense counsel, are free to disclose to the public the [classified] information at issue." *Oakley*, 2008 U.S. Dist. LEXIS 78721, at *6. In addition to the Federal criminal statutes that may apply, some of which the Government lists in the first paragraph of the Memorandum of Understanding attached to the Proposed Protective Order, the *Pappas* holding does not "release a defendant from any contractual or other legal obligations imposed when he first acquired such information." *United States v. Chalmers*, No. S5 05 Cr. 59 (DC), 2007 U.S. DIST. LEXIS 13640, at *5, 2007 WL 591948 (S.D.N.Y. Feb. 27, 2007). CIPA does not allow the broad provisions the Government is requesting.

        ii. <u>Revised Security Procedures Established Pursuant to Pub. L. 96-456, 94 Stat. 2025, by the Chief Justice of the United States for the Protection of Classified Information ("Security Procedures")</u>

The Security Procedures do not provide authority for the proposed Protective Order. Section 9 directs the Chief Justice of the United States to "prescribe rules establishing procedures for the protection against unauthorized disclosure of any classified information *in the custody of the United States district courts, courts of appeal, or Supreme Court*." CIPA § 9 (emphasis added).

The Security Procedures themselves are silent with respect to classified information not in the possession of the court and silent with respect to classified information that is not filed with or reasonably expected to come within the custody of the Court. Nothing in the Security Procedures provides authority for the court to control the Defendant's or defense's disclosure of classified

information not disclosed to the Defendant by the government in this case or with respect to classified information outside the context of trial and pretrial proceedings in this case.

### iii.  Federal Rule of Criminal Procedure 16

Federal Rule of Criminal Procedure 16(d)(1) "authorizes the district court to limit or otherwise regulate discovery *had pursuant to the Rule*." *United States v. Delia*, 944 F.2d 1010, 1018 (2d Cir 1991) (emphasis added). "Both the language and history of Rule 16 indicate that it addresses only pretrial discovery." *United States v. Nobles*, 422 U.S. 225, 235 (1975). The language to which Mr. Herrera objects would extend the reach of this proposed Protective Order beyond discovery.

Rule 16(d)(1) provides that the court, "for good cause, [may] deny, restrict, or defer discovery or inspection, or grant other appropriate relief,' and Rule 16(d)(2) grants the court broad authority to enforce 'this rule,' including by any order 'that is just under the circumstances.'" *Id*. (quoting Fed. R. Crim. P. 16(d)(1) & (2)). This "broad authority," however, does not extend beyond discovery. *United States v. Hansen*, No. 4:18-cr-00346-DCN, 2019 US Dist LEXIS 96379, at *6–7 (D. Idaho June 6, 2019).

### iv.  Federal Rule of Criminal Procedure 57

Federal Rule of Criminal Procedure 57 does not authorize this Court to contravene the limitations in CIPA. Rule 57(b) is entitled, "Procedure When There Is No Controlling Law" and provides in relevant part that "[a] judge may regulate practice in any manner consistent with federal law, these rules, and the local rules of the district." There is controlling law here: CIPA § 3 which specifically limits the scope of a court's protective order "to protect against the disclosure of any classified information disclosed by the United States to any defendant in any criminal case in a district court of the United States." Thus, including language in the proposed Protective Order to protect against the disclosure of "any" classified information "now or formerly in the possession

of a private party," or "known to the Defendants or the defense team," or "regardless of its origin," specifically contravenes CIPA § 3.

Further, the language in the proposed Protective Order to which Mr. Herrera objects are neither procedural nor affect practice before this Court. The language amounts to a declaratory judgment on the enforceability of contracts unrelated to the criminal charges and an injunction against violating obligations in those contracts.

v.    The Court's Supervisory Authority

The Government asks the Court to use its supervisory power to disregard the words "any classified information disclosed by the United States to any defendant in any criminal case" in CIPA § 3. The Court's supervisory authority does not extend that far. "Whatever the scope of this 'inherent power,' however, it does not include the power to develop rules that circumvent or conflict with the Federal Rules of Criminal Procedure." *Carlisle v. United States*, 517 U.S. 416, 426 (1996). "In the exercise of its supervisory authority, a federal court may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress. Nevertheless, it is well established that even a sensible and efficient use of the Court's supervisory power is invalid if it conflicts with constitutional or statutory provisions. To allow otherwise would confer on the judiciary discretionary power to disregard the considered limitations of the law it is charged with enforcing." *Bank of N.S. v. United States*, 487 U.S. 250, 254 (1988) (cleaned up).

"When, as in this case, the Civil Rules limit the nature of the sanction that can be imposed, a court may not use its inherent powers to circumvent the Rules' specific provisions." *United States v. One 1987 BMW 325*, 985 F.2d 655, 661 (1st Cir 1993). So too, when a statute limits the scope of a protective order, a court may not use its inherent powers to circumvent the statute's specific provisions.

2.    *The Government Cannot Use a Protective Order in this Criminal Case to*

*Compel Compliance with Contractual Obligations Without Standing*

Mr. Herrera objects to language in paragraph 16 of the proposed Protective Order that would have the Court both (1) declare that agreements not before this Court and unrelated to this criminal case are "binding," and that "[t]he government is entitled to enforce" them; and (2) enjoin the Defendants to "fully comply with the nondisclosure agreements they have signed" punishable by the Court's contempt power even after the case has concluded. The defense objects to the Government using a protective order in this criminal case to obtain civil relief for harm it has neither suffered nor is about to suffer. There is no case or controversy with respect to these agreements.

In *Pappas*, both the government and the defendant alleged there had been a contractual arrangement between them and that Pappas had been told not to disclose his activities with the government to anyone. 94 F.3d at 802. Noting "[t]he Government is entitled to enforce its agreements to maintain the confidentiality of classified information," the Second Circuit stated "ordinary principles of contract law" may be the source of law that CIPA in not for the government to obtain a court order against the public disclosure of classified information outside the context of the criminal trial. *Id*. at 801.

What *Pappas* makes clear is the government's *entitlement* to enforce its agreements to maintain the confidentiality of classified information in general, does not *per se* entitle the government to enforce an agreement in a specific case. The Second Circuit remanded the matter to the District Court to hold "proceedings to determine what contractual restrictions bind Pappas and whether, in the circumstances of this case, those restrictions, if established, entitle the Government to an order prohibiting Pappas from disclosure outside the trial context." *Id*. at 802. In addition, the Second Circuit said the District Court must determine "whether a prohibition grounded on a contract claim may be entered within the pending criminal case or requires initiation

of a civil suit, referrable to the same district judge as a related case." *Id*. at 802 n.4.

That is, the government must prove it is entitled to the court order it seeks. To do so, it must first have standing to seek judicial enforcement of those agreements. "[F]ederal courts do not issue advisory opinions about the law—even when requested by the President." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 357, 368 (2024). "Article III of the Constitution confines the jurisdiction of federal courts to "Cases" and "Controversies." *Id.* at 378. This criminal case does not provide the government standing for all matters involving these defendants. The government "must demonstrate standing for each claim that [it] press[es]" against each defendant, "and for each form of relief that [it] seek[s]." *Murthy v. Missouri*, -- S.Ct. ---, 2024 WL 3165801, at *9 (June 26, 2024) (citation omitted).

The government, "as the party invoking federal jurisdiction, bears the burden of establishing" it has standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (cleaned up). "It is a long-settled principle that standing cannot be inferred argumentatively from averments in the pleadings, but rather must affirmatively appear in the record." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990) (cleaned up).

> The fundamentals of standing are well-known and firmly rooted in American constitutional law. To establish standing, as this Court has often stated, a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief. Those specific standing requirements constitute "an essential and unchanging part of the case-or-controversy requirement of Article III.

*FDA*, 602 U.S. at 380 (cleaned up). The Government cannot demonstrate it has suffered or likely will suffer an injury in fact. Unlike *Pappas*, in which there was evidence the defendant publicly disclosed information that may have been classified—the defendant himself "contend[ed] that it was his own disclosure that made the information public," *Pappas*, 94 F.3d at 802—there has been no public disclosure or threatened public disclosure of any classified information by a defendant

in this case.

> An injury, in fact, must be concrete, meaning that it must be real and not abstract. The injury also must be particularized; the injury must affect the plaintiff in a personal and individual way and not be a generalized grievance. [] Moreover, the injury must be actual or imminent, not speculative—meaning that the injury must have already occurred or be likely to occur soon. And when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of future injury.

FDA, 602 U.S. at 381 (cleaned up).

> Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes--that the injury is certainly impending. Thus, we have repeatedly reiterated that threatened injury must be certainly impending to constitute injury in fact, and that allegations of possible future injury are not sufficient.

*Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 409 (2013) (cleaned up).

Even had there been prior disclosures, they would not provide the Government standing to enjoin future disclosures.  "Because the plaintiffs are seeking only forward-looking relief, the past injuries are relevant only for their predictive value." *Murthy*, 2024 WL 3165801, at *8. "Past exposure to illegal conduct' can serve as evidence of threatened future injury but 'does not in itself show a present case or controversy regarding injunctive relief.'" *Id.* (quoting in part *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).

The Government seeks relief for a harm it has not suffered nor can demonstrate it is about to suffer.  In such a case, it may not call upon the Article III powers of this court.

> 3.  *Mandating the Defense Review, Store, and Prepare Classified Materials Solely in Puerto Rico and Refusing to Allow the Defense to Review, Store, and Prepare Classified Materials in Washington, DC, Imposes an Unreasonable Burden on the Preparation of the Defense*

While the proposed Protective Order does not specify the location for a Secure Area, the Government's motion states that the proposed Protective Order "would establish a Secure Area / Sensitive Compartmented Information Facility in the District of Puerto Rico where the defendants

could prepare" classified filings such as the written notice required by CIPA § 5. Defendant requested the ability to review classified material and prepare classified pleadings in the Washington, DC area where two counsel preparing to enter appearances for Mr. Herrera in this case are located, the Government is located, and any classified discovery is located.

The District of Puerto Rico makes sense for purposes of trial, but for pretrial proceedings where most of the time will be spent reviewing documents and preparing pleadings, the Secure Area should be near counsel. At this point in the proceedings, it is abusive for the Government to force the Defense to travel to Puerto Rico. The Government is not required to perform its classified trial preparation in Puerto Rico. Defense counsel are willing to work from a Secure Area in DC (i.e., in The Department of Justice Litigation Security Group's space in Washington, DC.) which will no doubt impose less cost and burden on the Litigation Security Group than establishing a Secure Area in Puerto Rico at this stage of the case.

    4. *The Memorandum of Understanding May Neither be Used to Limit a Defendant's Access to Classified Information in this Case*

Mr. Herrera objects to Paragraph 29 of the proposed Protective Order making "[t]he execution and filing of the Memorandum of Understanding is a condition precedent for the Defendants, counsel for the Defendants, and any other representative of the defense to have access to classified information." A criminal defendant's access to classified information is governed by the Constitution and the procedures in CIPA. "If the government refuses to produce the information at issue--as it may properly do--the result is ordinarily dismissal." *United States v. Moussaoui*, 382 F.3d 453, 474 (4th Cir. 2004). The Defendant's Constitutional rights cannot be conditioned on whether he signs a Memorandum.

There is no need for a Memorandum of Understanding to be issued when this Court retains authority to prosecute contempt of the Protective Order and the Government will have the Defense

sign nondisclosure agreements with the Government if the Government intends to produce discovery.

Further, with respect to requiring the Defense team to sign the Memorandum of Understanding, the Defense also objects to the language in the Memorandum that seeks to extend the Protective Order beyond that authorized in CIPA § 3. In addition, the Memorandum of Understanding does not state that it is being signed pursuant to a court order. If a Memorandum of Understanding is required, the Defense proposes the Memorandum to modified to read as follows:

> I have received, read, understand, and will comply with the Protective Order entered by the United States District Court on _____, 2024, in Wanda Vazquez Garced et al., 22-cr-342 (SCC), relating to classified information disclosed by the United States to a defendant in the criminal case United States v. Wanda Vazquez Garced et al., 22-cr-342 (SCC), in the District of Puerto Rico ("The Protective Order") and agree to be bound by the provisions thereof. The Protective Order requires counsel for the Defendants and any other representatives of the defense to sign this Memorandum of Understanding as a condition precedent to have access to classified information and documents disclosed by the United States to a defendant in the criminal case United States v. Wanda Vazquez Garced et al., 22-cr-342 (SCC), in the District of Puerto Rico.
>
> I understand the Protective Order neither supersedes any prior contractual obligations that may bind me to continue to protect classified information nor absolves me of any criminal or civil penalties that may otherwise be imposed upon me as a result of my unauthorized disclosure of classified information.

## **CONCLUSION**

This Court should deny the Government's motion because no Protective Order is required at this time. Alternatively, if this Court is inclined to issue a protective order at this juncture, it should enter the Protective Order proposed by Mr. Herrera.

Respectfully submitted in San Juan, Puerto Rico, on this 8th day of July 2024.

**DLA Piper (Puerto Rico) LLC**

/s/ *Sonia I. Torres-Pabón*
Sonia I. Torres-Pabón, Esq.
USDC-PR No. 209310
500 Calle de la Tanca, Ste. 401
Sonia.torres@us.dlapiper.com
San Juan, PR 00901-1969
Tel: 787-945-9101

**The LS Law Firm**

/s/ *Lilly Ann Sanchez*
Lilly Ann Sanchez, Esq.
Fla. Bar No. 195677
One Biscayne Tower, Suite 2530
2 South Biscayne Blvd.
Miami, Florida 33131
Email: lsanchez@thelsfirm.com
Telephone: (305) 503-5503
Facsimile: (305) 503-6801

## CERTIFICATE OF SERVICE

It is hereby certified that on this same date, the present motion was filed with the Clerk of the Court through the CM/ECF electronic system, which will notify and provide copies to the selected.

In San Juan, Puerto Rico, on this 8th day of July 2024.

/s/ Sonia I. Torres-Pabón
SONIA I. TORRES-PABÓN