UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>[2] JULIO HERRERA VELUTINI<br><br>Defendant. | CRIMINAL NO. 22-342 (SCC) |

**DEFENDANT JULIO HERRERA VELUTINI'S MOTION TO COMPEL THE
GOVERNMENT TO IDENTIFY *BRADY* MATERIAL**

Defendant Julio Herrera Velutini ("Mr. Herrera"), by and through his undersigned attorneys, respectfully requests that the Court order the Government to identify all *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) material it has produced, and will produce, and provide a sworn declaration confirming review of all discovery information and the production of all *Brady/Giglio* material. In support, the following is provided.[1]

## I. Introduction

Following nearly six years of extensive investigation, the Government indicted Mr. Herrera on August 3, 2022. Over the next two years, the Government then begrudgingly provided 35 separate productions totaling more than 61.5 million pages of discovery material. Yet nowhere in these massive productions did the Government identify any *Brady* material or direct the defense to locations where *Brady* material might be found. However, the Government cannot indiscriminately shower the defense with documents and then claim that all its discovery and *Brady* obligations have been satisfied. *Brady* requires more than simply dumping millions of pages

---

[1] Prior to the filing of this motion, Mr. Herrera's counsel conferred with the Government's counsel who informed they objected to this motion.

of information collected over a multi-year investigation. Moreover, the fact that defense counsel may have been able to identify some *Brady* material floating on a sea of discovery documents does not mean the Government has complied. Indeed, at this point, more than ***two years post-indictment***, and just months before trial, there is simply no credible basis to conclude the Government's *Brady* obligations have in fact been satisfied. Therefore, consistent with the practice in other similar document intensive cases, this Court should exercise its discretion and compel the Government to provide a specific identification of all *Brady* material and a sworn declaration representing that all available discovery information has been reviewed and that all *Brady* material has been identified and turned over to the defense.

## II.     Relevant Background

On August 3, 2022, the Government indicted Mr. Herrera alleging, *inter alia*, a conspiracy to provide things of value to then-Governor Vazquez, purportedly in exchange for the dismissal of George Joyner, the Commissioner of the Oficina del Comisionado de Instituciones Financieras (the "Office of the Commissioner of Financial Institutions" or "OCIF"). The investigation leading to the charges spanned from 2016 to 2022, during which time the Government obtained over 30 search warrants for the email accounts, cloud backups, and cellphones of several individuals alleged to be involved in purported illegal donations, bribery, honest services fraud, money laundering, and Bank Secrecy Act ("BSA") violations.

The Government has therefore had eight years -- six years ***prior to the indictment*** and two years ***since the indictment*** -- to review and provide the discovery to which Mr. Herrera is entitled. Even so, the Government has repeatedly blown through every promised date for the completion of discovery, including a self-imposed deadline of March 2024 and the Court's most recent July 31, 2024, deadline. These problems have been well-documented and articulated throughout this case,

most recently during the August 7, 2024, status conference. *See e.g.*, Transcript of Status Conference Held Before Honorable Judge Silvia L. Carreño-Coll on August 7, 2024, Dkt. No. 641 at pp. 22-29 .

The Government's 35 discovery productions have been voluminous, totaling more than 61.5 million pages of material (8.6 million pages and 882GB/52,920,126 page equivalents). *See* attached Exhibit A, Material Produced by Prosecution and Filter Teams, at 2. These productions have been spread out over a more than two-year period, with the vast majority of all information produced in 2024. *Id*. Yet, throughout the pendency of this case, and with substantial productions still rolling in during the past few weeks, the Government has claimed at every stage that it has somehow satisfied all of its discovery and *Brady* obligations.

For example, in September 2023, more than one year post-indictment, the Government rejected the notion its discovery and *Brady* obligations had not been met. (*See e.g.*, Dkt, 301 at pp. 4 and 31). Shortly thereafter, at the October 2, 2023, Status Conference, the Government asserted that the discovery "primarily ha[d] been produced, with one exception, and that's **the search warrant returns**." *See* Dkt. No. 333 at p. 4.[2] The Government further stated that "non-privileged material has been provided to all of the defendants, and the privileged – or potentially privileged material has been provided to counsel for Mr. Herrera and Mr. Rossini." *See id.* at p.5. After that, the Government stated that the Department of Justice's Fraud Section was running a filter review[3] on defendants' electronic accounts and, upon completing those, would move on to those of third-

---

[2] Transcript of Status Conference Held Before Honorable Judge Silvia L. Carreño-Coll on October 2, 2023. See Dkt. No. 333.

[3] The Government has claimed repeatedly that the filter review process is the cause for the discovery delays. However, the filter review process should have been conducted and completed at the time of the indictment but commenced only after defense discovery demands.

party witnesses. *See id.* The Government then stated that it needed four weeks to finalize this production.

Nonetheless, following the October 2, 2023, status conference, the Government continued its pattern of dilatory production practices. Indeed, despite the representations made to the Court, the Government subsequently provided a series of voluminous productions (October 20 = 319,773 pages; December 4 = 294,194 pages; December 19 = 1,517,177 pages; December 21 = 39,712 pages). Thus, discovery was quite obviously not "primarily" complete on October 2, 2023.

Defendants understandably continued to challenge the problematic nature of the Government's discovery productions. On December 27, 2023, Mr. Herrera filed a "Motion to Compel and Exclude Discovery." *See* Dkt. No. 438. There, Mr. Herrera made specific requests for exculpatory material and other information held by OCIF and the Financial Crimes Enforcement Network ("FinCEN"), which participated in the investigation and extensively assisted the Government with the investigation and prosecution of this case. *See* Dkt. No. 438 at p.10. Mr. Herrera also requested that the Government produce "filter logs" by January 16, 2024, as he had yet to receive any, as well as the entire informant file for 27 Confidential Human Sources ("CHSes") who had participated in the investigation of Mr. Herrera. *See id.* at pp.10-11. Mr. Herrera also identified categories of documents for which the Government had not raised objections but failed to produce in their entirety, including (1) communications between the FBI and OCIF, Bancrédito, and FinCEN; (2) returns from search warrants and consent searches; (3) George Joyner's hard drive (which had been provided to the FBI in March 2020); and (4) co-conspirator statements. *See. id.* at pp. 11-16.

Following Mr. Herrera's motion, the Government, at a Status Conference on January 16, 2024, made a ***new promise***, assuring the Court it would provide ***all pending discovery items***, which

4

included search warrant returns, privilege logs, and communications between OCIF and the FBI, ***by March 2024***. *See* Dkt. No. 476 at pp. 15, 35, and 37.**[4]** The Court noted that the issues with discovery, the amount of discovery being produced and still to be produced, and pending dispositive motions made the February 27th and March 11th trial dates unrealistic. *See id.* at p.49. Thereafter, the Court ordered a trial date of January 21, 2025. *See* Dkt. No. 502.

Between January 16 and March 31, 2024, the Government produced nearly 50 million pages of additional discovery, evidence that Mr. Herrera had been attempting to obtain for over a year. Exhibit A, at 2. Nonetheless, and notwithstanding this post-conference document dump and the Government's representation at the January 2024 conference, the Government's document production continued well past the promised March 31, 2024 date, with additional voluminous and disjointed document dumps. Indeed, over 3 million additional pages were produced just in May 2024. *Id*.

However, discovery was still not complete. Thus, at the June 3, 2024, Status Conference (*see* Dkt. No. 566), the Court ordered the Government to produce to the defendants all potentially privileged documents identified by the Filter Review Team by **June 30, 2024**. The Court further established **July 31, 2024**, as the discovery cutoff point, including for reciprocal discovery and documents that were initially flagged as potentially privileged by the Filter Team, that the defendants agree may be produced. *See id.* Thereafter, in June and July, the Government produced another more than 5 million pages of additional, relevant information that it had possessed since the inception of this case. Exhibit A, at 2.

---

[4] Transcript of Status Conference Held before Honorable Judge Silvia L. Carreño-Coll on January 16, 2024. See Dkt. No. 476.

Most recently, a Status Conference was held on August 7, 2024, where the Government again claimed productions were complete. *See* Dkt. No. 615.[5] Yet, just **two days** later, the Government produced another over one million pages of information, followed by additional productions on August 21, 29 and 30. Exhibit A, at 2. Thus, in sum, a total of over 61.5 million pages of discovery material have been produced in this case.

Notably however, to date, the Government has not specifically identified *any Brady* material in its production of a massive amount of evidence collected from multiple sources over the course of a multi-year investigation. The Government's strategy is apparent: hide *Brady* material in plain sight by drowning Mr. Herrera in documents in the months leading up to trial and forcing him to wade through haystacks looking for *Brady* needles.

The net effect of this discovery avalanche has been to deny Mr. Herrera his right to fundamental due process. The Government's conduct has flipped the obligations of *Brady*, putting the onus on the defense when it is the prosecution's duty to identify and produce all *Brady* material.

### III.    Argument

#### A. The Government Must *Review* All Discovery and *Disclose* All *Brady* Material

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "the government has a duty to disclose evidence in its possession that is favorable to the accused and material to guilt or punishment." *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011) (citing *Brady*, 373 U.S. at 87). *See also Giglio*, 405 U.S. at 154 (extending *Brady* to include impeachment evidence); Fed. R. Civ. P. 16(a)(1)(E)(i) ("Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the

---

[5] The Court also heard argument from counsel pertaining to Mr. Herrera's renewed request for a continuance and agreed to take the matter under advisement until the September 26, 2024, Status Conference. *See* Dkt. No. 615.

government's possession, custody, or control and . . .the item is material to preparing the defense."). Documents are considered "favorable" if they are either exculpatory or impeaching in nature. *Prochilo*, 629 F.3d at 268. They are considered "material" if there is a reasonable probability that, if the documents were disclosed, the result of the proceeding would have been different. *Id.* "The *Brady* rule is based on the requirement of due process. Its purpose is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur. "*United States v. Bagley,* 473 U.S. 667, 675 (1985).

The Justice Manual, which sets forth internal Department of Justice policies and procedures, imposes additional duties on the Government with respect to *Brady* evidence, requiring prosecutors to "take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence" if a close question is presented. JM 9-5.001(B)(A). It further explains that "[d]ue process requires that disclosure of" *Brady* material "be made in sufficient time to permit the defendant to make effective use of that information at trial." *Id.* at 9-5.001(D). Exculpatory evidence "must be disclosed reasonably promptly after it is discovered." *Id.* at 9-5.001 (D)(A). "Providing broad and early disclosure often promotes the truth-seeking mission of the Department." *Id.*

Moreover, the Justice Manual imposes an affirmative duty on the Government to actually *review* all the material gathered and produced. *Id.* at 9-5.002 ("To ensure that all discovery is disclosed on a timely basis, ***generally all potentially discoverable material within the custody or control of the prosecution team should be reviewed.***") (emphasis added); *see also id. at 9-5.002* (having gathered the possible discovery, the prosecutors "must ensure that the material is reviewed to identify discoverable information."*).* Thus, the Justice Manual and courts construing same

7

expect the Government to conduct an ***actual review***, not just a document dump. *See* Justice Manual § 9-5.002.

This requirement is not a mere "best practice" but rather a constitutional requirement enforced by the courts. *See e.g.*, *United States v. Salyer*, 2010 WL 3036444, at *3 (E.D. Cal. 2010) (citing *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[I]n referencing the DOJ *Brady/Giglio* guidelines, and as well established by case law, the *prosecution* has the duty to *affirmatively* scour those records of the agencies considered the "government" for purposes of the criminal case in order to determine and acquire those materials which would be considered *Brady* exculpatory and *Giglio* impeaching." (emphasis in original)). The court in *Salyer* noted that "Department of Justice guidelines, fashioned after some embarrassing non-disclosures in other cases, command an *actual review* of the materials acquired during investigation of a criminal case for the purpose of disclosing *Brady/Giglio* materials." *Id.* (emphasis in original).[6]

### B. Open-file Discovery Does Not Satisfy *Brady* in the "Big Documents" Case.

Additionally, mere production of everything collected does not satisfy the Government's obligations. "[O]pen-file discovery does not relieve the government of its *Brady* obligations." *United States v. Hsia*, 24 F. Supp 2d 14, 29 (D.D.C. 1998). Nor may "the prosecutorial duty to produce exculpatory evidence imposed by *Brady*. . . be discharged by 'dumping' (even in good

---

[6] This includes ***actual review*** of the investigative agency's case files - Justice Manual § 9-5.002(B)(1); the agency file for each testifying confidential informant, witness, human source or source - Justice Manual § 9-5.002(B)(2); all information gathered during the investigation, including documents and information obtained via search warrant and grand jury subpoena - Justice Manual § 9-5.002(B)(3); all information obtained from regulatory agencies involving the same subject matter as the Indictment - Justice Manual § 9-5.002(B)(4); all communications among prosecutors and/or agents, between prosecutors and/or agents and witnesses and/or victims, and between victim-witness coordinators and witnesses and/or victims - Justice Manual § 9-5.002(B)(5); all potential *Giglio* information relating to law enforcement and non-law enforcement witnesses - Justice Manual § 9-5.002(B)(6) & (7); and all memorialized witness interview statements - Justice Manual § 9-5.002(B)(8).

faith) a voluminous mass of files, tapes and documentary evidence." *Emmet v. Ricketts*, 397 F. Supp. 1025, 1043 (N.D. Ga. 1975). Indeed, as is the case herein, a massive discovery production without specific identification of the *Brady* material risks that such material will be functionally suppressed, threatens a defendant's ability to mount a meaningful and substantial defense and undermines the considerations of fairness and due process that animated the *Brady* decision.[7]

Thus, in cases such as this, courts have ordered the Government to identify *Brady* material produced in discovery as a matter of "fundamental fairness" and "case management." *See, e.g.*, *United States v. Saffarinia*, 424 F. Supp. 3d 46, 85, 90–91 (D.D.C. 2020) (ordering specific identification of *Brady* material in case involving 3.5 million pages of documents); *United States v. Sheppard*, 2022 WL 17978837, at *14 (D.D.C. Dec. 28, 2022) ("[T]o the extent that the government knows of any [*Brady*] material in its production, the Court will require [the government] to identify it." (internal quotations and citation omitted)); *United States v. Cutting*, 2017 WL 132403, at *10 (N.D. Cal. 2017) (ordering identification by Bates number the *Brady/Giglio* material in the discovery that has been produced); *United States v. Blankenship*, 2015 WL 3687864, at *6 (S.D. W. Va. 2015) (ordering specific identification of *Brady* material in case involving over four million pages of discovery); *Salyer*, 2010 WL 3036444 (finding government has specific duty to review all discovery information and ordering specific identification of *Brady* material in a "big documents" case); *Hsia*, 24 F. Supp. 2d at 29 (ordering specific identification of Brady material so defendant does not have "to find the exculpatory information in the haystack."). In evaluating whether to order the identification of *Brady* material, courts generally analyze two factors: the volume of discovery produced and the length of the Government's investigation.

---

[7] As noted, the fact that defense counsel may have identified some *Brady* material during its review of a massive amount of information does not relieve the Government of its discovery and *Brady* obligations.

*First*, courts look to how much material the government has produced. For instance, in *Hsia*, the court ordered the government to identify *Brady* material because "[t]he government [could not] meet its *Brady* obligations by providing [the defendant] with access to 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information in the haystack." 24 F. Supp. 2d at 29. Likewise, the court in *Blankenship* ordered specific designation because "the United States does not comply with the requirement of *Brady* by merely including all known *Brady* material within the four million plus pages of discovery." 2015 WL 3687864, at *6; *see also Saffarinia*, 424 F. Supp. 3d at 91 (granting defendant's request to identify any known *Brady* material contained in production of approximately 3.5 million pages of documents).

*Second*, courts consider the length of the Government's investigation. In *Salyer*, the court ordered the Government to identify *Brady* materials in a "big documents case" where its investigation spanned a five-year period. 2010 WL 3036444, at *1, *3 (E.D. Cal. Aug. 2, 2010). Likewise, in *Saffarinia* the court noted the Government had the "luxury of reviewing [discovery] material on a rolling basis over the course of its three-year investigation." 424 F. Supp. 3d at 88.

### C. Specific Identification of Brady Material and a Declaration of Compliance is Warranted.

The facts presented here support entry of an order compelling the Government to identify all *Brady* material in its prior and future productions. There is no doubt the Government's productions are voluminous and the product of a multi-year investigation.

What's more, the circumstances surrounding the Government's recent productions should give the Court considerable pause in accepting—without inquiry—the Government's oft-repeated assertion that it has complied with its *Brady* obligations. Given the massive volume of just the recent productions, it is unlikely the Government has undertaken a true Justice Manual-compliant

10

*review* of the discovery it has produced—and any other material it will produce—to identify and disclose all *Brady* material.  The Government's pattern of dubious representations about the conclusion of discovery and the timing of these disclosures certainly indicate the requisite review has not taken place.

Indeed, the Court need look no further than the Government's recent "Designation of Evidence" wherein 27 separate categories of documents are listed without any even attempt at specificity. See Dkt. No. 637, Government's Designation of Evidence. The only specific items in the "designation" are those 150 documents identified at the end.  Otherwise, the Government simply refers, for example, to "all content" and "records obtained" that "support" the indictment's allegations. See Dkt. No. 637. This "catch-all" approach indicates the Government has not likely reviewed any of this material in contravention of its clear duties and responsibilities under *Brady* and otherwise.[8]

Thus, although the Government appears to have conducted an "open-file" document dump, as noted, such "open-file discovery does not relieve the government of its *Brady* obligations." *Hsia*, 24 F. Supp. 2d at 29.  *See also*, *Blankenship*, 2015 WL 3687864 at *6 ("[T]he United States does not comply with the requirement of *Brady* by merely including all known *Brady* material

---

[8] Although the Government's inappropriate "catch-all" Designation makes clear the requisite review has not been completed, that did not preclude the advancement of a disingenuous argument during the August 7, status conference:

"I think one point to be made to your honor, the defense always described in terms of page numbers, like, "it's banker boxes." . . . they have a road map as to who the important individuals are, individuals in the indictment, people that were involved in Ms. Vazquez's inner circle, the people that were involved with bank fraud, if they decide they want to take every picture of a person's phone, every text that sent thousands of threats, people have nothing to do with the case, that's their prerogative. There is a much more efficient way to do that, and that's to go to the experts, the people involved, and then also do key word searches. We understand there is a lot of material. it is a phone. it's given to them in a searchable form." Transcript of Status Conference Held Before Honorable Judge Silvia L. Carreño-Coll on August 7, 2024, Dkt. No. 641 at 39-40.

Yet as noted the Designation contains sweeping references to "all content" and "records obtained", revealing the Government has certainly not engaged in any "searches" or other review and intends to rely on every document on the collected cellphones and every other record obtained from numerous sources.

within the four million plus pages of discovery."). Certainly defense counsel is not here in a better position to seek out exculpatory material contained in a multi-million page document dump in a few months than the Government which has had many years to amass and review the discovery. "[A] duty to disclose may be unfulfilled by disclosing too much; at some point, disclosure, in order to be meaningful, requires identification as well." *Salyer*, 2010 WL 3036444, at *6.

To put in context the significance of the volume of information produced in this case, the 61.5 million plus pages at issue here dwarf the 600,000 documents in *Hsia*, 24 F. Supp. 2d at 29; and the 4 million plus pages in *Blankenship*, 2015 WL 3687864, at *6. Moreover, the Government here has enjoyed a nearly six-year head-start in its investigation, during which time it had the luxury to scour the information for evidence supporting the indictment. But during that same time, the Government also had the ability (indeed the obligation) to assess whether any of the information it procured significantly detracts from the factual elements it must prove in this case. *See Salyer*, 2010 WL 3036444, at *5 ("Indeed, one cannot prepare a case without thinking about how to counteract, i.e., explain away, evidence inconsistent with providing the elements of the charged crime. That determination is made from *the prosecution's vantage point,* not a speculative insight into defense counsel's theory of the defense." (emphasis in original)). *See also Blankenship*, 2015 WL 3687864 at *7 ("[T]he United States, having determined the nature of the charges and having knowledge of the evidence and witnesses it intends to produce to prove those charges, is in a far better position than the Defendant to know what evidence might be exculpatory and/or impeachment material under *Brady*."); *Salyer*, 2010 WL 3036444, at *4 ("During the course of the years long investigation in this case, the government personnel seemed to be able to segregate the evidence which would be useful in the prosecution in terms of guilt, but apparently made no efforts to segregate that evidence which runs counter to the charges.").

Case 3:22-cr-00342-SCC-HRV    Document 662    Filed 09/17/24    Page 13 of 14

Therefore, given the voluminous discovery, most of which has been produced just months before the current trial date, given the Government's apparent failure to as yet conduct the requisite review of that voluminous discovery, and consistent with the case law cited herein, this Court should order the Government to identify all *Brady* material and provide a sworn declaration that (1) all of the available discovery materials have actually been reviewed and (2) all *Brady* material has in fact been provided to the defense. Otherwise, the Government's conduct significantly compromises Mr. Herrera's defense and his ability to utilize the disclosed evidence effectively, undermines the considerations of fairness and due process that underpin *Brady*, and threatens Mr. Herrera's Sixth Amendment right to effective counsel. Indeed, a massive discovery production without specific identification of *Brady* material risks that such material will be functionally suppressed.

### IV.    Conclusion

For the reasons herein stated, Mr. Herrera respectfully requests that the Court enter an order (1) compelling the Government to identify all *Brady* material in its past and future discovery productions and to provide a sworn declaration that (a) all of the available discovery materials have actually been reviewed and (b) all *Brady* material has in fact been provided to the defense, and (2) granting such other and further relief the Court deems necessary and appropriate.

13

RESPECTFULLY SUBMITTED.

In San Juan, Puerto Rico, this 17th day of September 2024.

| | |
|---|---|
| **CONTINENTAL PLLC** | **DLA Piper (Puerto Rico) LLC** |
| */s/ Christopher M. Kise* | */s/ Sonia I. Torres-Pabón* |
| Christopher M. Kise (FBN 855545) | Sonia I. Torres-Pabón (USDC-PR No. 209310) |
| Admitted *Pro Hac Vice* | sonia.torres@us.dlapiper.com |
| Primary Email: ckise@continentalpllc.com | 500 Calle de la Tanca, Ste. 401 |
| Secondary Email: cforjet@continentalpllc.com | San Juan, PR 00901-1969 |
| 101 North Monroe Street, Suite 750 | Tel: 787-281-8100 |
| Tallahassee, FL 32301 | |
| Telephone: (850) 332-0702 | **The LS Law Firm** |
| | */s/ Lilly Ann Sanchez* |
| | Lilly Ann Sanchez, Esq. |
| | Fla. Bar No. 195677 |
| | One Biscayne Tower, Suite 2530 |
| | 2 South Biscayne Blvd. |
| | Miami, Florida 33131 |
| | Email: lsanchez@thelsfirm.com |
| | Telephone: (305) 503-5503 |
| | Facsimile: (305) 503-6801 |

## **CERTIFICATION**

**IT IS HEREBY CERTIFIED** that on this same date I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Sonia I. Torres-Pabón*
Sonia I. Torres-Pabón