IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA**,

   Plaintiff,

v.                                        Case No. 22-CR-182 (JL)

**JOSEPH FUENTES-FERNANDEZ**

   Defendant.

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE

For three years—between 2020 and 2022—Defendant Joseph Fuentes-Fernandez piled lies upon lies upon lies. First, he engaged in a brazen scheme to conceal major donors to a Super PAC supporting a candidate for high executive office in Puerto Rico, depriving the public of their right to know the true identities of individuals and entities funding such a significant political committee. Second, after Defendant admitted to this scheme and agreed to cooperate in an ongoing investigation, he leaked information to at least one subject and effectively functioned as a double agent for the better part of a year. Finally, he repeatedly lied to government agents about these obstructive efforts and destroyed evidence.

Now, having served approximately nine months in prison (less than half of the low end of the Guidelines he agreed to in his plea) and barely one year of his three-year supervised release term, Defendant seeks early termination of this supervision to engage in out-of-state activities—chiefly visiting family and pursuing work opportunities—that would generally require nothing more than a phone call to his probation officer. Defendant should instead be obligated to complete his supervised release term and the Court should deny his request.

## BACKGROUND

I.  The Offense Conduct

A detailed recitation of the factual background of this matter is contained in the government's sentencing memorandum in this matter. *See* ECF No. 39 at 3-8. The facts below are accordingly provided in summary fashion. Beginning in or about spring 2020, shortly before the 2020 primary election season, Defendant and others sought to facilitate outside funding in support of Public Official-1, then a candidate for executive office in the government of the Commonwealth of Puerto Rico. *See* ECF No. 6 (Fuentes Plea Agreement), Stipulation of Facts at ¶¶ 1, 10. Defendant and others formed two shell nonprofit social welfare organizations and used those nonprofits as conduits to accept contributions that were ultimately transferred to Super PAC Salvemos a Puerto Rico. *See id.* at ¶¶ 1-3, 9. Defendant explained the scheme in simple terms to a potential donor: "You can use a third party to not disclose the true donor." *Id.* at ¶ 22. The illegality of the scheme was apparent at the outset: for example, while the scheme was underway, Defendant sent a text message stating, "I haven't wanted to have any type of communication because you don't know if the feds have the lines intercepted. You have to handle this very carefully." *Id.* at ¶ 20.

Confronted with evidence of the scheme and related evidence of his personal use of Super PAC funds, Defendant agreed to cooperate with the investigation. But Defendant's cooperation proved to be as fictional as the nonprofits at the center of his campaign finance scheme. During his "cooperation," he was secretly leaking information about the investigation to a subject and secretly meeting with the subject to tip him off about planned recordings.

2

Confronted for a second time, now with evidence of his obstruction, Defendant admitted to one of the disclosures but denied another and denied that he had destroyed evidence of the disclosures on his cell phone. But investigators soon learned that he had not been forthcoming.

Confronted for a third time, now with evidence that he had *obstructed* the government's efforts to investigate his *obstruction*, Defendant ultimately admitted he had not been candid with investigators; that he had in fact made an additional disclosure and thereby further contaminated the government's investigation of the underlying campaign finance scheme; and that he had destroyed text messages that contained evidence of his disclosures. *See id.* at ¶ 32.

II. The Plea Agreement and Sentencing

Defendant agreed to plead guilty to a single false statement scheme in violation of 18 U.S.C. § 1001(a)(1). He agreed to jointly propose the below recommendation regarding the applicable U.S. Sentencing Guidelines:

| SENTENCING GUIDELINES CALCULATIONS COUNT ONE 18 U.S.C. § 1001 | |
|---|---|
| **False Statement Scheme Involving False Statements to the Federal Election Commission:** | |
| Base Offense Level pursuant to U.S.S.G. § 2C1.8(a) | 8 |
| Illegal Transaction Enhancement pursuant to U.S.S.G. §§ 2C1.8(b)(1), 2B1.1(b)(1)(F) (more than $150,000) | +10 |
| Obstruction of Justice pursuant to U.S.S.G. § 3C1.1 | +2 |
| Acceptance of Responsibility pursuant to U.S.S.G. § 3E1.1 | -3 |
| **TOTAL ADJUSTED OFFENSE LEVEL** | **17** |

The probation officer agreed that these Guidelines were accurate, and determined that Defendant was in Criminal History Category I. *See* ECF No. 42 (Presentence Investigation Report) at ¶¶ 58-68, 72. At sentencing, the Court issued a downward variance, sentencing Defendant to 14 months of imprisonment and three years of supervised release. *See* ECF No. 44 (minute entry for sentencing proceedings); ECF No. 57 at 2-3 (second amended judgment).

The Court ordered Defendant to self-surrender on October 26, 2022. ECF No. 44. On July 10, 2023, after serving fewer than nine months, Defendant was released from prison and commenced his three-year supervised release term. ECF No. 55 at ¶ 2. He has now served approximately 13 months on supervised release.

III.     The Motion

Defendant now seeks early termination of supervised release under 18 U.S.C. § 3583(e), contending principally that the conditions of his release "hinder him from visiting his family and pursuing work opportunities." ECF No. 70 (the "Motion") at 3.

## LEGAL STANDARD

Section 3583(e)(1) provides that the "court may, after considering the factors set forth in section 3553(a)(1) [the nature and circumstances of the offense and the history and characteristics of the defendant], (a)(2)(B) [the need to afford adequate deterrence to criminal conduct], (a)(2)(C) [the need to protect the public from further crimes of the defendant], (a)(2)(D) [the need to provide the defendant with training, medical care, or correctional treatment], (a)(4) [the applicable category of offense committed by the applicable category of defendant], (a)(5) [pertinent policy statements issued by the U.S. Sentencing Commission], (a)(6) [the need to avoid unwarranted sentence disparities], and (a)(7) [the need to provide restitution to victims] . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1). A defendant bears the burden of establishing an entitlement to early termination of supervised release, *see United States v. Weber*, 451 F.3d 552, 559 n.9 (9th Cir. 2006), and "whether to terminate a period of supervised

4

release is subject to the discretion of the trial judge." *United States v. Miles*, No. 05-CR-6, 2014 WL 2048206, at *1 (D. Me. May 19, 2014).

"Supervised release is a punishment in addition to incarceration, served after completion of a prison term." *United States v. Martin*, 363 F.3d 25, 36 n.17 (1st Cir. 2004). "[C]ompliance with the terms and conditions of . . . supervised release, though laudable, is generally not grounds for early termination." *United States v. Pelletier*, No. 06-CR-58, 2022 WL 3682941, at *3 (D. Me. Aug. 25, 2022); *see also United States v. Seger*, No. 98-CR-65, 2014 WL 5473020, at *7 (D. Me. Oct. 27, 2014) (recognizing that compliance with supervised release terms is "ultimately what is expected" of a defendant) (internal quotation marks and citation omitted).

## DISCUSSION

The Court should deny the Motion. First, Defendant has not established that the conditions of his release genuinely prohibit him from visiting his family or pursuing work opportunities, and has thereby failed to meet his burden under § 3583(e). Second, allowing early termination of supervised release here would ignore the nature and circumstances of the offense and fail to afford adequate deterrence to criminal conduct, and is accordingly not in the interests of justice. Finally, the cases upon which he relies involve considerably distinguishable circumstances.

I. Defendant Has Not Shown That the Current Supervisory Framework Prevents Him from Visiting Family or Pursuing Work Opportunities

Defendant has failed to meet his burden of establishing an entitlement to prematurely terminate a supervision regime—one that, moreover, does not appear to be particularly onerous—two years early.

Defendant first contends that supervision must be terminated early so that he can visit his relatives who live out of state. Mot. at 3-4. As he correctly notes, though, he need only obtain permission from his probation officer in order to engage in such travel. ECF No. 57 (second

5

amended judgment) at 4 (standard condition three). Early termination of supervised release should not be authorized merely because Defendant would prefer not to make a brief phone call to his probation officer and he provides no reason to believe that such permission has *ever* been denied or that the approval requirement has proven in any way burdensome for him. Accordingly, his accurate perspective that the Court should "protect[] strong family relationships," Mot. at 4, has no genuine bearing on the Motion. And although he argues that the Court should protect the probation officer's resources, he provides no reason to believe that mere telephonic approval of his occasional out-of-state travel requests has required the investment of significant resources from the probation officer.

Defendant next contends that supervision must be terminated early so that he can apply to reinstate his certified public accountant licenses in Puerto Rico and Virginia and so that he can travel to re-establish his professional network. Mot. at 4-5. But none of these arguments justify the relief he seeks here. Although Defendant notes that the Puerto Rico licensing board will not consider reinstatement until his supervised release term has concluded, *id.*, he makes no such argument regarding his Virginia license. And Defendant does not explain why the temporary suspension of his Puerto Rico license presents a barrier to his pursuit of professional opportunities, particularly given that he resides in Virginia and that supervision does not appear to be an obstacle to reinstatement of his Virginia license. Moreover, as noted above, there do not appear to be material barriers to interstate travel here; again, Defendant need only contact his probation officer to seek approval. Perhaps more fundamentally, the Court should recognize the need for continued judicial supervision of Defendant as he re-engages with the professional community, given his pattern of lies and deceit. *See, e.g.*, ECF No. 42 (Presentence Investigation Report) at ¶¶ 139

(noting that an enhancement under U.S. Sentencing Guideline § 3B1.3 for abuse of a position of trust "might have been applied" in this case).

II.   Early Termination of Supervised Release Would Be Inconsistent With the § 3553(a) Factors and is Not in the Interests of Justice

Early termination here would also be inconsistent with the nature and circumstances of Defendant's offense and would fail to afford adequate specific and general deterrence to criminal conduct. As noted above, the offense here involved layers upon layers of lies to Defendant's professional acquaintances about the permissibility of his scheme, to the Puerto Rican public, to the Federal Election Commission, and—repeatedly—to federal investigators. Yet Defendant now asks the Court to take a leap of faith and believe that, based on his completion of the statutory minimum term of supervision, he can be trusted. But there are far more reasons to believe that Defendant cannot be trusted than to believe that he can. Additionally, both specific deterrence (for the reasons described immediately above) and general deterrence are at play here. Permitting other would-be campaign finance criminals to believe that they can serve nine months in prison, with a statutory minimum one-year supervised release term, could wrongly incentivize criminal activity.

Finally, early termination is ultimately not in the interests of justice here. Defendant served a term of imprisonment that was approximately one-third of the lower end of the Sentencing Guideline range he agreed to. The three-year supervised release term that this Court imposed at sentencing is a "punishment in addition to incarceration," *Martin*, 363 F.3d at 36 n.17. Defendant's compliance with the terms of his release, "though laudable, is generally not grounds for early termination." *Pelletier*, 2022 WL 3682941, at *3. And although the government has no interest in standing in the way of Defendant's efforts to maintain close family ties and develop professionally, he simply has not shown that ongoing supervision materially interferes with those efforts.

7

III.    <u>Defendant's Cited Cases Involve Materially Different Circumstances</u>

Ultimately, because of the discretionary nature of relief under § 3583(e), *Miles*, 2014 WL 2048206, at *1, no particular case can control the outcome here. But Defendant's cited cases, for various reasons, are simply inapplicable. Many of the defendants in those cases served significant terms of incarceration as well as lengthy terms of supervised release before obtaining generally more modest supervised release term reductions than the one sought here. *See, e.g.*, *United States v. Tarboro*, No. CR 08-323, 2023 WL 3821812, at *1 (E.D. Pa. June 5, 2023) (defendant served approximately 10 years in prison; court reduced supervised release term from 60 months to 50 months); *United States v. Kahn*, No. 08-CR-271, 2022 WL 17155836, at *4 (D.D.C. Nov. 22, 2022) (defendant sentenced to 15 years in prison, and was released at approximately 78 years old; court reduced supervised release term from three years to eighteen months); *United States v. Sainz*, No. 11-CR-640, 2022 U.S. Dist. LEXIS 146447, *2, 7 (N.D. Cal. Aug. 16, 2022) (defendant sentenced to 120 months of incarceration; court reduced supervised release term from five to three years); *United States v. Andrews*, No. 15-CR-2, 2022 WL 21295450, at *2 (S.D. Miss. Feb. 11, 2022) (defendant sentenced to 87 months of incarceration; court denied initial motion for early termination of supervised release filed after one year on supervised release, then granted a subsequent motion seeking a reduction from four years of supervised release to two-and-a-half years); *United States v. Fairchild*, No. 16-CR-268, 2021 WL 831011, at *1 (D. Idaho Mar. 4, 2021) (defendant sentenced to ten years in prison; court reduced supervised release term from eight years to seven years); *United States v. Harris*, 258 F. Supp. 3d 137, 138, 151 (D.D.C. 2017) (defendant sentenced to 23 years of incarceration; court reduced supervised release term from 10 to five years); *United States v. Seger*, No. 98-CR-65, 2014 WL 5473020, at *2 (D. Me. Oct. 27, 2014) (defendant sentenced to 10 years of imprisonment, served even longer because of civil

8

commitment proceedings, and would continue serving on state probation after early termination of supervised release); *United States v. Harris*, 689 F. Supp. 2d 692, 692 (S.D.N.Y. 2010) (defendant sentenced to 188 months of incarceration; court reduced supervised release term from five to three years).

Other cases cited by Defendant similarly involved facially distinguishable circumstances. *See, e.g.*, *United States v. Lopez-Correa*, 164 F. Supp. 3d 266, 267 (D.P.R. 2016) (expressing an intention to reduce defendant's supervised release term from 30 years to six years because she had suffered a lengthy history of extreme physical and sexual abuse from her co-defendant, including repeated beatings and rapes); *United States v. Powell*, No. 06-CR-197, 2011 WL 2964006, at *2 (N.D. Ind. July 20, 2011) (reducing supervised release term where it was "undisputed that [the defendant] is in the final stages of his life" based on his serious health problems); *United States v. Chapman*, 827 F. Supp. 369, 371 (E.D. Va. 1993) (reducing supervised release term where defendant was "disabled by a back injury").

These cases do not favor early termination of supervised release here.

## **CONCLUSION**

The Court should accordingly deny the Motion.

Respectfully Submitted,

W. STEPHEN MULDROW
United States Attorney

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S. Department of Justice

/s/ Seth A. Erbe
Seth A. Erbe
Assistant United States Attorney
Chief, Financial Fraud and Public Corruption Section
Torre Chardón, Suite 1201
350 Chardón Avenue
San Juan, Puerto Rico 00918
Tel: (787) 766-5656
Email: seth.a.erbe@usdoj.gov

/s/ Jonathan E. Jacobson
Jonathan E. Jacobson
Trial Attorney, Public Integrity Section
U.S.D.C. No. G02706
1301 New York Ave. NW, 10th Fl.
Washington, DC 20005
Tel: 202-514-1412
Email: jonathan.jacobson@usdoj.gov

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties in this case.

      s/ Jonathan E. Jacobson
      Jonathan E. Jacobson
      Trial Attorney