## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL NO. 22-342 (SCC) |
| [2] JULIO HERRERA VELUTINI | |
| Defendant. | |

### DEFENDANT JULIO HERRERA VELUTINI'S REPLY IN SUPPORT OF MOTION TO COMPEL THE GOVERNMENT TO IDENTIFY *BRADY* MATERIAL AND REQUEST FOR ORAL ARGUMENT

Defendant Julio Herrera Velutini ("Mr. Herrera"), by and through his undersigned attorneys, hereby files his reply in support of his Motion (Dkt. 662) requesting that the Government identify all known *Brady v. Maryland*, 373 U.S. 83 (1963) material it has produced, and will produce, and requests that the Court schedule oral argument on the issues herein presented.

### Argument

The Government misapplies and misapprehends the governing case law in an effort to shift the focus away from its own exceedingly inappropriate conduct and to convince the Court that granting the requested relief will somehow open the floodgates for all other cases in this District. However, the Government's *Brady* obligation cannot be met simply by dumping 60-plus million pages of discovery on a defendant, because the outcome of "open file" discovery cases "turn[s] on what the [G]overnment does in addition to allowing access to a voluminous open file." *United States v. Skilling*, 554 F.3d 529, 577 (5th Cir. 2009), *aff'd in part and vacated in part on other grounds*, 561 U.S. 358 (2010); *United States v. Hsia*, 24 F. Supp. 2d 14, 29-30 (D.D.C. 1998) ("The Government cannot meet its *Brady* obligations by providing . . . 600,000 documents and then claiming that [the defendant] should have been able to find the exculpatory information[.]").

While the quintessential *Brady* violation occurs when the Government actually suppresses evidence favorable to an accused by withholding it, courts recognize that the Government constructively suppresses evidence by producing an exorbitant number of documents and expecting the defendant to find the exculpatory material. *See, e.g.*, *United States v. Thomas*, 981 F. Supp. 2d 229, 239 (S.D.N.Y. 2013) ("[T]he Government cannot hide *Brady* material as an exculpatory needle in a haystack of discovery materials."). Nor may "the prosecutorial duty to produce exculpatory evidence imposed by *Brady*. . . be discharged by 'dumping' (even in good faith) a voluminous mass of files, tapes and documentary evidence." *Emmet v. Ricketts*, 397 F. Supp. 1025, 1043 (N.D. Ga. 1975). This is precisely the point made by those courts confronted, as here, with the exceptional circumstances presented by a massive volume of discovery.[1]  *See, e.g.*, *United States v. Saffarinia*, 424 F. Supp. 3d 46, 85, 90–91 (D.D.C. 2020); *United States v. Sheppard*, 2022 WL 17978837, at *14 (D.D.C. Dec. 28, 2022); *United States v. Cutting*, 2017 WL 132403, at *10 (N.D. Cal. 2017); *United States v. Blankenship*, 2015 WL 3687864, at *6 (S.D. W. Va. 2015); *United States v. Salyer*, 2010 WL 3036444, at *3 (E.D. Cal. 2010).

None of the cases cited by the Government hold to the contrary. Indeed, the Government's conclusion that "[e]very circuit that has addressed the argument that the United States must specifically identify all exculpatory information within its discovery productions has flatly rejected it," overstates the case law and misapprehends that Mr. Herrera's case stands alone. For example, the Government cites *United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018), which held that "[t]he government's duty to disclose **generally** does not include a duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." (Emphasis added). However,

---

[1] Notably, the Government never once confirms it has in fact reviewed all the produced discovery and identified the *Brady* material contained therein. There is not even any description of the review process undertaken by the Government. These glaring omissions reveal the Government simply has no good faith basis to contend its *Brady* obligations have been satisfied as it has no way of knowing if that is in fact true.

2

by using the term "***generally***," the Second Circuit left open the possibility that—in an extraordinary case such as the one *sub judice*—the general rule must give way to a defendant's due process rights. What's more, the sentence immediately following the one cited by the Government states: "***Some courts have reasonably suggested that burying exculpatory material within a production of a voluminous, undifferentiated open case file might violate the government's obligations***." *Id.* at 86 (emphasis added). Moreover, the issue in *Kirk Tang Yuk* did not concern a voluminous discovery production—rather, it involved images and the defendant's failure to preserve his *Brady* argument in the district court—much less one surpassing 60 million pages. The same is true for *United States v. Rodriguez-Marrero*, involving a one-page police report defense counsel did not review. 390 F.3d 1, 29 (1st Cir. 2004).

Likewise, the Government claims *United States v. Morales-Rodriguez*, 467 F.3d 1 (1st Cir. 2006), forecloses the relief Mr. Herrera seeks. But Morales-*Rodriguez* was an embezzlement prosecution in which the defendant argued the Government violated *Brady* by not allowing him to keep two FBI reports and two checks that he claimed were exculpatory (the Government required the defense to return them). *Id.* at 14-15. The Government argues that in *Morales-Rodriguez* the court rejected the defendant's claim that the government failed "to identify two allegedly exculpatory FBI reports in open-file discovery production." Dkt. 687 at 7. The case, however, did not involve the "identification" of *Brady* material, it involved the defendant's ability to maintain two FBI reports and two checks that he was aware of. *Morales-Rodriguez*, 467 F.3d at 15 ("[T]he district judge found unpersuasive Morales's claim that the government requested the return of the documents before the defense had an opportunity to read all of them."). To be sure, the terms "identify" and "identification" do not even appear in the opinion. In sum, none of the

3

Government's cited cases hold that the Government *per se* satisfies its *Brady* obligations where, as here, it indiscriminately dumps more than 60 million pages of discovery on the defendant.

The Government also misconstrues the Justice Manual ("JM"), claiming inaccurately that it expressly permits a massive document dump in lieu of actual *Brady* compliance. Considerable tension exists between the Supreme Court's admonition that prosecutors have "a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case," *Kyles v. Whitley*, 514 U.S. 419, 437 (1995), and the Government's reliance on § 9-5.002 of the Justice Manual which, in its view, stands for the proposition that "prosecutors may discharge their disclosure obligations by choosing to make the voluminous information available to the defense." Dkt. 687 at 12. However, § 9-5.002 does not—and cannot—supersede a prosecutor's "duty to learn of any favorable evidence." *Kyles*, 514 U.S. at 437. If a prosecutor's duty is satisfied—as the Government suggests—by simply dumping 60-plus million pages of discovery on a defendant and not actually reviewing that evidence or "learn[ing] of any favorable evidence," *id*., *Brady's* protections would be toothless.

Thus, the only lawful, and rational, interpretation of § 9-5.002 is that it advances a "belt and suspenders" approach in voluminous discovery cases. That is, § 9-5.002 simply encourages prosecutors to over-produce to "avoid the possibility that a **well-intentioned review process** nonetheless fails to identify material discovery evidence." JM § 9-5.002 (emphasis added). But nothing in § 9-5.002 authorizes or even remotely permits the Government to simply dispense with the "**well intentioned review process**" or the corresponding *Brady* obligations. Rather, consistent with that provision, the Government may learn of favorable evidence by "involv[ing] agents, paralegals, agency counsel, and computerized searches." JM § 9-5.002. But the Government cannot simply absolve itself of engaging in that review process or its *Brady* obligations by dumping

4

60-plus million pages and effectively wishing Mr. Herrera luck in finding the exculpatory needle in the haystack.[2]

Next, while the Government conjures a parade of horribles and summons "Pandora's box" to dissuade the Court from safeguarding Mr. Herrera's due process rights, granting the relief requested in *this* case, based on the extraordinary and peculiar discovery facts herein presented, simply does not somehow then open the floodgates in *all* cases. Indeed, *Saffarinia*, *Sheppard*, *Cutting*, *Blankenship*, *Salyer*, and *Hsia* all involved exceptional circumstances and thus acknowledged exceptions to the general procedure. None have resulted in any widescale departure from established norms. Nothing about applying the logic of these decisions to the highly similar and even more compelling facts of this case suggests this Court is somehow adopting a new general rule to be applied in all cases. To the contrary, the Government simply lacks any substantive response to these well-reasoned decisions and their application in this case and has thus conjured up a "sky is falling" scenario. But Mr. Herrera's case undeniably presents an exceptional set of circumstances warranting the implementation of necessary and constitutionally requisite procedures to ensure *Brady* compliance and accord full and fair due process protections.

Finally, effectively acknowledging the desperation of and inherent weakness in its legal position, the Government then resorts to wholly inappropriate and unconstitutional *ad-hominem* attacks on Mr. Herrera. The Government's disgraceful references to wealth and "Wikipedia"

---

[2] As a corollary, the Government suggests that its 60-plus million-page productions are, in reality, not that significant, because they are "electronic and searchable, not paper in bankers boxes." Dkt. 687 at 10. But the Government should not be commended for simply producing discovery in a format that, since at least 2012, has been expected Department of Justice practice. *Recommendations for Electronically Stored Information (ESI) Discovery Production in Federal Criminal Cases*, Department of Justice (DOJ) and Administrative Office of the U.S. Courts (AO) Joint Working Group on Electronic Technology in the Criminal Justice System (JETWG), available at www.justice.gov/archives/dag/page/file/913236/dl. The *Brady* inquiry does not end by producing "searchable discovery," because counsel must still scour through the 60-plus million-page morass to find the needle in the haystack that the Government should know exists if it complied with its obligations. *See* JM § 9-5.002 ("To ensure that all discovery is disclosed on a timely basis, **generally all potentially discoverable material within the custody or control of the prosecution team should be reviewed.**") (emphasis added).

5

pages seek to induce this Court to condition application of constitutional due process protections based upon a criminal defendant's socio-economic status. The Government brazenly distinguishes occasions where it was ordered to identify known *Brady* material by invoking Mr. Herrera's wealth to support its argument that Mr. Herrera is not entitled to know where exculpatory information known to the Government may be in a vault of over 60-plus million pages. Dkt. 687 at 9 (citing *United States v. Salyer*, 2010 WL 3036444, *7 (E.D. Cal. 2010); *United States v. Saffarina*, 424 F. Supp. 3d 46, 85 n.15 (D.D.C. 2020)). However, neither the equal protection clause of the United States Constitution nor any decision by any court in America has ever condoned such a depraved and socialistic interpretation of our basic freedoms. Mr. Herrera is not and should not be treated differently under the law than those defendants in *Saffarina* and *Salyer*. For the Government to contend otherwise is both shameful and shocking and demonstrates fully the overreach exemplified by this political, and baseless, prosecution.

The Government also cites Mr. Herrera's "extremely aggressive litigation strategy," as if this somehow warrants disparate constitutional treatment.[3] However, a criminal defendant facing the full power of the United States government being wielded irresponsibly and posing an imminent threat to liberty is not only entitled to an aggressive defense, but should be commended, not criticized, for advancing same. Thus, the Government's tyrannical maligning of Mr. Herrera based on his desire to defend himself fully reveals its disdain for the freedoms and protections guaranteed in the Constitution and the need for this Court to step in and mandate procedures to ensure *Brady* compliance.

---

[3] The Government also attempts to sidestep its obligations by pointing to an absurd, inaccurate and uncorroborated claim by Frances Diaz, which is itself the subject of a restricted filing. This improper reference to Diaz (an embezzler who abused her position at Bancrédito and lied repeatedly to Mr. Herrera and the Government) has only one possible intention: to prejudice the potential jury pool. Such obvious misconduct should not be condoned by this Court.

**Conclusion & Request for Oral Argument**

By producing 60-plus million pages of material that it appears was not likely even reviewed in compliance with § 9-5.002 of the Justice Manual, the Government has, in effect, buried the *Brady* material within the discovery haystack. This deluge has the effect—whether intentionally or otherwise—of constructively suppressing *Brady* material, which has the same practical outcome as if the material was withheld in the first place. Therefore, for the reasons stated herein and in Mr. Herrera's Motion to Compel, Mr. Herrera respectfully requests that the Court enter an order (1) compelling the Government to identify all *Brady* material in its past and future discovery productions and to provide a sworn declaration that (a) all of the available discovery materials have actually been reviewed, and (b) all *Brady* material has in fact been provided to the defense, and (2) granting such other and further relief the Court deems necessary and appropriate.

Mr. Herrera also respectfully requests the Court schedule oral argument on the issues presented for decision by the Motion as such argument will enhance the Court's understanding of the unique facts relative to the long discovery and production history at the core of this dispute, and how those facts and the law intersect to warrant the requested relief.

RESPECTFULLY SUBMITTED,

In San Juan, Puerto Rico, this 8th day of October 2024.

| | |
|---|---|
| **CONTINENTAL PLLC** | **DLA Piper (Puerto Rico) LLC** |
| */s/ Christopher M. Kise* | */s/ Sonia I. Torres-Pabón* |
| Christopher M. Kise (FBN 855545) | Sonia I. Torres-Pabón (USDC-PR No. 209310) |
| Admitted *Pro Hac Vice* | sonia.torres@us.dlapiper.com |
| Primary Email: ckise@continentalpllc.com | 500 Calle de la Tanca, Ste. 401 |
| Secondary Email: cforjet@continentalpllc.com | San Juan, PR 00901-1969 |
| 101 North Monroe Street, Suite 750 | Tel: 787-281-8100 |
| Tallahassee, FL 32301 | |
| Telephone: (850) 332-0702 | **The LS Law Firm** |
| | */s/ Lilly Ann Sanchez* |
| | Lilly Ann Sanchez, Esq. |
| | Fla. Bar No. 195677 |
| | One Biscayne Tower, Suite 2530 |
| | 2 South Biscayne Blvd. |
| | Miami, Florida 33131 |
| | Email: lsanchez@thelsfirm.com |
| | Telephone: (305) 503-5503 |
| | Facsimile: (305) 503-6801 |

## **CERTIFICATION**

**IT IS HEREBY CERTIFIED** that on this same date I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Sonia I. Torres-Pabón*
Sonia I. Torres-Pabón