IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

     v.

[1] WANDA VÁZQUEZ GARCED,
[2] JULIO M. HERRERA VELUTINI,
[3] MARK T. ROSSINI,
Defendants.

CRIMINAL NO. 22-342 (SCC)

**THE UNITED STATES' RESPONSE TO DEFENDANT JULIO HERRERA'S MOTION TO DISMISS (ECF NO. 688)[1]**

## I.    **INTRODUCTION**

Herrera moves to dismiss the Indictment, arguing that it fails to state a claim against him because the alleged bribe payments were not in connection with "official acts." (ECF No. 688, "Herrera's Mot.," 1). His motion should be denied.

First, as a threshold matter, the case on which he relies, *McDonnell v. United States*, 579 U.S. 550 (2016), does not address or impose pleading requirements. Even if the Indictment did not sufficiently allege official acts, Herrera offers no authority to support dismissal on that basis.

Second, the Indictment does sufficiently allege "official acts." The termination and replacement of the Commissioner of OCIF, as well as the exertion of pressure on the Commissioner to resolve an OCIF examination in a manner favorable to Herrera and his bank, all constituted official acts. Herrera's motion overstates the Supreme Court's holding in *McDonnell v. United States*, 579 U.S. 550 (2016), understates the Indictment's allegations, and asks the Court to resolve questions of fact.

---

[1] Defendant Wanda Vazquez moved for joinder (ECF No. 705), and the Court granted her motion. (ECF No. 710).

Third, regarding the § 666 charges, the United States is not required to prove official acts. No court has held otherwise. Herrera mischaracterizes the Supreme Court's decision in *Snyder v. United States*, 144 S. Ct. 1947 (2024), which did not purport to address whether *McDonnell's* official act requirement applied to § 666.

Finally, regarding the 18 U.S.C. § 1346 counts, *Percoco* v. *United States*, 598 U.S. 319 (2023), is inapposite, because Herrera sought to bribe the governor, not the intermediary through whom he and his co-conspirators were arranging the bribe.

For these reasons and those stated below, Herrera's motion to dismiss should be denied.

## II.  LEGAL STANDARD

An indictment need only contain a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is legally sufficient if it contains the elements of the charged offense, fairly informs the defendant of the charges he faces, and enables him to invoke double jeopardy to bar future prosecutions for the same offense. *United States v. Guerrier*, 669 F.3d 1, 3 (1st Cir. 2011). "Setting forth the words of the statute itself is generally sufficient if those words set forth all the elements of the offense without any uncertainty or ambiguity." *United States v. Berk*, 652 F.3d 132, 138 (1st Cir. 2011) (internal quotation marks omitted).

A motion to dismiss is not an "occasion to force the government to defend the sufficiency of its evidence." *United States v. Rodríguez-Rivera*, 918 F.3d 32, 35 (1st Cir. 2019). "When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the

defendant of the charged offense." *United States v. Ngige*, 780 F.3d 497, 502 (1st Cir. 2015) (internal quotation omitted).

### III.  ARGUMENT

Herrera's motion to dismiss should be denied because the Indictment sufficiently alleges official acts where required. Additionally, although the Court need not decide the issue, the law does not require the United States to prove "official acts" for the 18 U.S.C. § 666 charges.  And the 18 U.S.C. § 1346 charges are unaffected by *Percoco v. United States*, 598 U.S. 319 (2023).

**A.      Herrera's motion fails because *McDonnell* does not concern pleading standards.**

As an initial matter, Herrera's motion fails to sufficiently allege any failure by the United States in its charges under Fed. R. Crim. P. 7(c)(1).  Importantly, *McDonnell* concerns jury instructions, not pleading standards.  *See McDonnell*, 579 U.S. at 577 ("Governor McDonnell argues that his convictions must be vacated because the jury was improperly instructed on the meaning of 'official act' under [18 U.S.C.] § 201(a)(3) . . . . We agree.").  Rather than cite any legal standard under which dismissal might be required in this case, Herrerra's entire argument focuses on a legal standard that addressed jury instructions, not whether a case was sufficiently pleaded.  Although the Indictment sufficiently does, in fact, plead official acts as defined by *McDonnell* (addressed below), nothing in *McDonnell* demands such pleading precision.

Although Herrera is not the first defendant to raise such arguments at this inappropriate procedural stage, courts have consistently rejected these types of motions to dismiss made pursuant to *McDonnell*.  *See, e.g.*, *United States v. Lee*, 919 F.3d 340, 353, 354-55 (6th Cir. 2019), *cert. denied*, 140 S. Ct. 895 (2020); *United States v. Menendez*, No. 23 Cr. 490 (SHS), Dkt. 344 at 50-52 (S.D.N.Y. Apr. 11, 2024) (referring to the official acts question, "this issue may not be decided by the Court now, but is more properly determined by the jury at the end of the case."); *United*

*States v. Keleher*, 505 F. Supp. 3d 41, 48 (D.P.R. 2020) ("The indictment's allegations satisfy the government's burden at this stage . . . A jury, not this Court, must determine whether [the charged] actions . . . constitute an official act or evidence an agreement to take an official act.'"); *United States v. Oaks*, 302 F. Supp. 3d 716, 726 (D. Md. 2018) ("[T]he Defendant argued at the hearing that an honest services indictment must allege everything *McDonnell* requires in jury instructions. . . . This Court finds no basis to extend the full breadth of *McDonnell* to indictments . . . .").

Herrera offers no authority to the contrary.  On this basis alone, his motion should be denied.

**B.    The Indictment sufficiently alleges official acts.**

Even if the Court disagrees with the United States that *McDonnell* does not set forth a pleading standard, the Indictment sets forth the essential facts and elements of the §§ 666 and 1346 charges Herrera faces, including official acts.  Additionally, although this Court need not decide the issue because the Indictment sufficiently alleges them, § 666 charges do not require official acts.

**1.    The "Official Act" requirement.**

Herrera's motion centers on the scope of what constitutes "official acts" as defined in *McDonnell v. United States*, 579 U.S. 550 (2016), but he premises all of his arguments on a far more narrow portrayal of that definition than *McDonnell* or its progeny require.

*McDonnell* was a bribery prosecution of a state governor under 18 U.S.C. § 1346, the honest services wire fraud statute. *Id.* at 562. Because the parties so stipulated, and because the wire fraud statute does not define the required *quid pro quo*, the Court adopted the "official act" requirement from 18 U.S.C. § 201, the federal bribery statute. *Id.*; *see also* 18 U.S.C.

4

§ 201(b)(1)(A) (criminalizing "corruptly giv[ing], offer[ing] or promis[ing] anything of value to any public official…with intent to influence any official act").[2]  The Supreme Court explained that an official act is "a decision or action on a 'question, matter, cause, suit, proceeding or controversy.'"  *Id.* at 574 (quoting 18 U.S.C. § 201(a)(3)).  *McDonnell* established a two-part test for determining whether a public official's conduct qualifies as an official act, the conduct which may constitute the *quo* for a § 201 (bribery) or § 1346 (honest services fraud) *quid pro quo* bribery charge. *Id.* at 574.  First, the "official act" must be on a "question, matter, cause, suit, proceeding or controversy" involving a formal exercise of governmental power resembling a lawsuit, an agency determination, or a committee hearing.  *Id.*  Second, the official must "make a decision or take an action," or pressure or advise another official to do so, on the question, matter, cause, suit, proceeding, or controversy.  *Id.*  The Supreme Court in *McDonnell* stated that "a decision or action on a qualifying step, such as narrowing down [a] list of potential research topics—would qualify as an 'official act.'"  *Id.* at 572.

Although *McDonnell* held that an official act must entail more than merely hosting an event, meeting with other officials, or speaking with interested parties about a matter, most actions that constituted official acts before *McDonnell* continue to be official acts after *McDonnell*.  As the Third Circuit explained, "[o]fficial acts need not be momentous decisions—or even notable ones."  *United States v. Fattah*, 914 F.3d 112, 157 (3rd Cir. 2019); *see also, e.g.*, *United States v. Mayweather*, No. 17-13547, 2021 WL 1017106, at *16 (11th Cir. Mar. 17, 2021) ("[A] police officer's determination whether to search a suspect" is an official act because it "involves 'a formal action of the same gravity as a lawsuit, hearing, or administrative determination.'" (quoting *United States v. Van Buren*, 940 F.3d 1192, 1203 (11th Cir. 2019)); *Evans v. United States*, 504 U.S. 255,

---

[2] As addressed further below, Section 666 was not at issue in *McDonnell*.

270 (1992) (citing with approval a decision upholding conviction of police officer who received $1000 for "not arresting someone"); *United States v. Jones*, 207 F. Supp. 3d 576, 582 (E.D.N.C. 2016) (finding that an FBI agent's use of his authority to obtain and disclose text messages to a bribe-payor would be an official act); *United States v. Greenhut*, No. 2:15-cr-00477-CAS-1, 2016 WL 6652681, at *5 (C.D. Cal. Nov. 8, 2016) (ruling that rational trier of fact could have found that small purchases of office supplies by low-level government employees constituted official acts).

And, pertinent to this case, a public official need not have direct authority or unilateral control over a matter to qualify their action on it as "official." The Supreme Court in *McDonnell* explicitly stated that public officials engage in official acts when they "provide advice to another official, knowing or intending that such advice will form the basis for an 'official act' by another official." 579 U.S. at 572 (citing *United States v. Birdsall*, 233 U.S. 223, 234 (1914) (finding "official action" on the part of subordinates where their superiors would rely on their "reports and advice")). It further stated that public officials take an action on a "question, matter, cause, suit, proceeding or controversy" by "using [their] official position to exert pressure on *another* official to perform an 'official act.'" *Id.* Further, it is not even necessary for the act itself to qualify under *McDonnell*'s standard that the public official follow through and perform the act, or even intend to follow through, on the official act that forms the object of the bribe. *Id.*

## 2. The Indictment Sufficiently Alleges Official Acts for Counts 1-4.

### a. *Terminating OCIF Commissioner A, or pressuring him to resign, was an official act*.

The Indictment alleges that Vazquez forced OCIF Commissioner A to resign as the Commissioner of OCIF in exchange for political funding. *See, e.g.*, Indictment (ECF No. 3), ¶¶ 11, 29, 31, 128). Unquestionably, a governor's appointment or removal of the head of a regulatory

body constitutes a decision on a question or matter requiring formal exercise of governmental power. It therefore constitutes an official act.

Courts have found to be official acts conduct of far less significance by far less powerful individuals than the termination (or forced resignation) of the head of a regulatory body by a governor. *See, e.g.*, *United States v. Falcón-Nieves*, 79 F.4th 116, 129 (1st Cir. 2023) (holding official at Puerto Rico Aqueduct and Sewer authority engaged in official acts by helping a business develop a business proposal and providing access to information it otherwise would have lacked); *United States v. Henderson*, 2 F.4th 593, 600 (6th Cir. 2021) (guard's decision not to report that inmate possessed contraband was "official act" because "decision not to act remains a decision"); *United States v. Lee*, 919 F.3d 340, 352 (6th Cir. 2019) (affirming § 1951 conviction and finding that councilperson who tried to influence prosecutor's charging decision and wrote favorable letter on behalf of briber's friend engaged in official acts). And in *United States v. Allinson*, a mayor accepted a bribe in exchange for hiring the payor's law firm to act as city Parking Authority Solicitor, which required first firing the current solicitor. 27 F.4th 913, 917 (3d Cir. 2022). The Third Circuit found sufficient evidence of the official act required by *McDonnell*, citing in support the mayor's "explain[ing] that he has 'gotta get rid' of the then-current Parking Authority Solicitor…and strategiz[ing] ways of getting the Solicitor to resign." *Id.* at 920.

Here, much of the same conduct underlies the § 666 (Count 2) and § 1346 (Count 4) charges against Herrera. *See* Indictment (ECF No. 3), ¶¶ 126, 132. The Indictment alleges, among other things, that Vazquez accepted campaign funding from Herrera "intending to be influenced and rewarded in connection with . . . the termination of OCIF Commissioner[3] A and the

---

[3] As alleged in the Indictment, the Office of the Commissioner of Financial Institutions ("OCIF") supervises and regulates the banking system in Puerto Rico," and its Commissioner "oversees all of its operations, including the examinations of Puerto Rico's financial institutions." Indictment, ¶ 1.

appointment of OCIF Commissioner B" (*id.* at ¶ 29(b)); that "at Vazquez's direction, Vazquez's Chief of Staff told OCIF Commissioner A that he had to resign." (*id.* at ¶ 72); that Vazquez instructed her staff to terminate OCIF Commissioner A  (*see id.* at ¶¶ 58, 60); and that Vazquez's Chief of Staff summoned OCIF Commissioner A to Fortaleza and told him he must resign, which he did (*see id.* at ¶¶ 72, 75, 76).  Firing OCIF Commissioner A or forcing him to resign—analogous to strategizing ways to oust a Parking Authority Solicitor—qualifies as an "official act."

Herrera's argument relies entirely on the Court accepting his version of a disputed question of fact.  Herrera argues that "the 'termination' allegations contradict the Government's own discovery" because the OCIF commissioner ultimately resigned rather than being terminated (Herrera's Mot. 12), a decision that "was within his sole discretion."  As alleged in the Indictment, Vazquez, acting through her Chief of Staff, terminated OCIF Commissioner A by forcing his resignation.  The forced resignation was the functional equivalent of termination, because OCIF Commissioner A had no choice.  Herrera may parse words between "termination" and "resignation" or claim it was OCIF Commissioner A's decision, but he must do so to the jury.  Even if Vazquez had merely pressured or advised OCIF Commissioner A to resign—which is less than what the Indictment alleges—this would constitute an official act.  *See McDonnell*, 579 U.S. at 572 (concluding that official action includes "using [one's] official position to *exert pressure* on another official to perform an 'official act'") (emphasis added); *cf. Falcón-Nieves*, 79 F.4th at 129 (using official position to provide substantial assistance to company submitting contract proposal).

None of the cases cited by Herrera (Herrera's Mot. 15) support his argument that the removal of OCIF Commissioner A does not qualify as an official act.  The Fourth Circuit in *United States v. Lindberg* vacated a § 1346 conviction because the district court instructed the jury that, as a matter of law, removal or replacement of a deputy insurance commissioner would constitute

an official act. 39 F.4th 151, 157 (4th Cir. 2022). Far from foreclosing the possibility that removing or replacing government personnel could be an official act, the court simply held that the question was one for the jury under a proper *McDonnell* instruction. *Id.* at 161. Herrera's citations of other types of official acts—namely, entering government contracts, *Cordaro v. United States*, 933 F.3d 232, 242 (3d Cir. 2019); issuing government licenses or permits, *United States v. Boyland*, 862 F.3d 279, 291 (2d Cir. 2017); and pressuring a local prosecutor to make a criminal charging decision, *United States v. Lee*, 919 F.3d 340, 357-58 (6th Cir. 2019)—is hardly an exhaustive list. The fact that those acts satisfy the *McDonnell* "official acts" standard does not imply that other types of acts, such as government hiring and firing decisions, cannot.

### b. *Appointing OCIF Commissioner B was an official act*.

The Indictment alleges that Vazquez appointed OCIF Commissioner B as the Commissioner of OCIF in exchange for political funding. (Indictment (ECF No. 3), ¶¶ 11, 29, 31, 128). She did so in May 2020, after the termination of OCIF Commissioner A's successor at Herrera's behest. (*Id.*, ¶¶ 85, 118). This, too, easily satisfies *McDonnell* because a governor using the authority vested in her as governor to appoint OCIF's Commissioner has taken action on a matter requiring a formal exercise of governmental power.

As with firing, hiring constitutes an "official act" for *McDonnell* purposes. *See Fattah*, 914 F.3d at 157 ("When a public official hires an employee to work in his government office, he has engaged in an official act."); *United States v. Williams*, Crim. No. 17-137, 2017 WL 2713404, at *5 (E.D. Pa. June 13, 2017) (denying motion to dismiss honest services fraud charges because defendant district attorney's appointment of bribe-payor to Special Assistant position was an official act); *Dimora v. United States*, No. 1:17-cv-1288, 2022 WL 767849, at *10 (N.D. Ohio Mar.

9

14, 2022) (ruling that county official's arranging a county job for bribe-payor's daughter was an official act).

Nominating a person for appointment to an official position is also an official act because, as the Court in *McDonnell* specified, a "decision or action on a *qualifying step*" of an official matter meets the definition of "official act."  579 U.S. at 572 (emphasis added).  As an example, the *McDonnell* Court said that when the matter in question is initiating a public research study, a qualifying step would be narrowing the list of potential topics.  *Id.*  And in *Fattah*, the Third Circuit found that selecting staff was a matter pending before the defendant public official and that hiring a particular person qualified as a decision or action on that matter, thus constituting an "official act."  *Fattah*, 914 F.3d at 157.  Additionally, because Fattah separately attempted to assist a donor to receive a presidential nomination for an ambassadorship, the court had occasion to address whether an executive's nomination, pending a legislature's confirmation, constitutes a "question, matter, cause, suit, proceeding or controversy" pending before a public official.  *See id.* at 155-56. It found it did: "The formal appointment of an ambassador is a matter that is 'pending' before the President . . . as well Senators, who are charged with confirming the President's ambassadorial nominations."  *Id.* at 155; *cf. United States v. López-Martínez*, Crim. No. 15-739 (PAD) 2020 WL 5629787, at *18 (D.P.R. Sept. 21, 2020) (finding "[i]ntermediate steps such as proposal reviews and recommendations suffice" meet the "official act" standard), *vacated on other grounds sub nom. United States v. Falcón-Nieves*, 79 F.4th 116, 130 (1st Cir. 2023).

The Indictment alleges, among other things, that Vazquez's responsibilities as Governor included "selecting, nominating, and appointing heads of agencies, including OCIF" (Indictment, ¶ 7); that she "needed to appoint OCIF Commissioner B before Herrera would begin funding SuperPAC 1" (*id.* at ¶ 107); and as a result, "Vazquez appointed OCIF Commissioner B as the new

Commissioner of OCIF" (*id.* at ¶118). Because official acts include intermediate and qualifying steps, Vazquez's appointment of OCIF Commissioner B is an official act irrespective of confirmation by Puerto Rico's Senate.

Herrera notes that "[u]nder Puerto Rican law, a governor of Puerto Rico may nominate, but cannot unilaterally appoint, a Commissioner of OCIF" (Herrera's Mot. 13), and "commissioners lack authority until they are confirmed by the Puerto Rico Senate." (Herrera's Mot. 15). On this basis, he states, without supporting authority, that OCIF Commissioner B's nomination cannot be an official act. (Herrera's Mot. 15). But the Supreme Court held that matters at issue in *McDonnell* over which the Virginia's governor had no direct control—including whether researchers at one of the state's universities would initiate a study and whether a state-created commission would allocate money for a study—qualified as "questions or matters" over which a governor could perform "a decision or action." *Id.* at 571. And in *United States v. Carrasco*, the First Circuit found that a lawyer advising mayors in three municipalities engaged in official acts by providing advice that would form the basis of those municipalities awarding contracts to a bribe payer, which was also not a matter over which the advising lawyer had direct control. 79 F. 4th 153, 161 (1st Cir. 2023).

As in the case of the governor in *McDonnell* and the lawyer in *Carrasco*, Public Official A's inability as governor of Puerto Rico to "unilaterally" appoint an OCIF Commissioner does not disqualify the alleged actions as qualifying official acts. The nomination of OCIF Commissioner B itself was a "qualifying step" that constituted an official act. *See McDonnell*, 579 U.S. at 572; *Fattah*, 914 F.3d at 155. As the Third Circuit noted in addressing presidential nominations to ambassadorships—which, like Vazquez's nomination of OCIF Commissioner B, also requires a senate's approval—"it is beyond cavil that the formal appointment of an ambassador satisfies both

sub-components of *McDonnell's* Step 1." *Fattah*, 914 F.3d at 156. The Third Circuit, in vacating Fattah's conviction, acknowledged that a properly instructed jury could find that, as a U.S. Congressman, he engaged in "impermissible attempts 'to pressure or advise another official on a pending matter,'" despite his having no role in the presidential nomination *or* the Senatorial confirmation of an ambassador. *Id.* at 156. Vazquez, on the other hand, did have a direct role as Puerto Rico's chief executive when she nominated OCIF Commissioner B.

Herrera also suggests that the First Circuit disallows nominations and appointments as a basis for a § 666, citing *United States v. Tavares*, 844 F.3d 46, 49 (1st Cir. 2016). *Tavares* dealt with state bribery and gratuity statutes, violations of which were predicate acts for federal RICO charges. *Id.* at 54; *cf. also id.* at 53 n.2 (noting that § 666 is irrelevant because that charge was dismissed). The court held only that the evidence was insufficient to support the predicate state law violations, *id.* at 55, not that corrupting state and local hiring practices is always outside the reach of federal prosecution.

Finally, Herrera argues in passing that Puerto Rico's status as a U.S. territory alters the official acts analysis. (*See* Herrera's Mot. 16 n.4 ("[T]he conduct at issue here relates to the internal structure and personnel decisions of a territorial government that *McDonnell*, *Tavares*, and other cases say should not be regulated through federal criminal prosecution.")). None of the cases he cites, though, remotely circumscribe the effect of any federal bribery statute in the territories. And while 18 U.S.C. § 666 does not even mention or require "official acts" (as described below), it explicitly extends its reach to territories. *See* 18 U.S.C. § 666(d)(4) ("[T]he term 'State' includes . . . any commonwealth, territory, or possession of the United States.").

### 3.    The Indictment Sufficiently Alleges Official Acts for Counts 5-7.

Finally, the Indictment alleges that Herrera offered a bribe to Public Official A in exchange for his "directing and exerting influence on public officials to resolve the OCIF examination of The Bank on terms favorable to The Bank." (Indictment, ¶ 138). It specifically alleges that Herrera intended for Public Official A to use his influence to convince OCIF to ensure that his bank would not have to sign a Memorandum of Understanding or file Suspicious Activity Reports for certain banking transactions, and that it would end OCIF's examination of his bank. (Indictment, ¶ 148). Because any one of these actions would form the basis for an official act by OCIF's Commissioner, a governor's pressuring the Commissioner of OCIF to take these actions satisfies *McDonnell*.

"[I]f the official agreed to exert that pressure or give that advice in exchange for a thing of value, that would be illegal." *McDonnell*, 579 U.S. at 573; *see also United States v. Lee*, 919 F.3d 340, 352 (6th Cir. 2019) (rejecting defendant's claim that public official can only "exert pressure" over another, for purposes of a *McDonnell* official act, if he has "leverage or power" over the subordinate; *United States v. Holzer*, 816 F.2d 304, 309 (7th Cir. 1987) ("The fact that the defendant did not control the award of contracts should not be decisive if his position as a state legislator gives his recommendations a weight independent of their intrinsic merit."), *vacated on other grounds*, 484 U.S. 807 (1987)). Following *McDonnell*'s guidance, courts have found official acts repeatedly in cases where public officials have provided advice or exerted pressure. *See, e.g.*, *United States v. Chastain*, 979 F.3d 586, 592 (8th Cir. 2020) (holding auxiliary sheriff's deputy engaged in official acts by convincing police to let bribe payor off and by making recommendations to the prosecutor in bribe payor's case); *Lee*, 919 F.3d at 352 (finding that councilperson who tried to influence prosecutor's charging decision and wrote favorable letter on behalf of briber's friend engaged in official acts).

Much of the same conduct underlies the § 666 (Count 6) and § 1346 (Count 7) charges against Herrera.  (*See* Indictment, ¶¶ 175, 178).  The Indictment alleges, in the second scheme, among other things, that 1) Herrera sought to bribe Public Official A to "direct[] and exert[] influence on public officials to resolve the OCIF examination," and to allow The Bank to avoid its obligation to file Suspicious Activity Reports related to Herrera's banking transactions (Indictment ¶¶ 138, 152); 2) that Witness 1, who was running Public Official A's SuperPAC and working at the direction of law enforcement, told co-conspirator John Blakeman that Public Official A could fulfill Herrera's and The Bank's needs with "a single phone call" (*id.* at ¶ 151); and 3) that to further the ruse, at the direction of law enforcement, an OCIF official called Herrera's intermediary, John Blakeman, to tell him that she was directly addressing The Bank's concerns in response to Blakeman's request to Witness 1 that "they need a light from the commissioner that says 'we are working on it'" (*id.* at 163).  This is exactly the type of exertion of pressure contemplated by *McDonnell* and its progeny.

The Indictment does not allege, contrary to Herrera's contention, that the object of the attempted bribe was securing Public Official A's *personal* resolution of the OCIF examination. (Herrera's Mot. 18).  Rather, Herrera attempted to bribe Puerto Rico's chief executive to pressure other public officials to take an action (resolving the examination) on a pending matter (the examination itself).  It was the status of the governor's office that gave Public Official A the ability to successfully exert such pressure.  Because exerting pressure, firmly within *McDonnell*'s definition of an "official act," necessarily assumes a lack direct authority over a matter by a public official, it is irrelevant that "the resolution of Bancrédito's OCIF examination was under the exclusive statutory authority of the OCIF Commissioner and Secretary of the Treasury." (Herrera's Mot. 18).

**C.    Section 666 does not require proof of an official act.**

Herrera's motion also fails with regard to the § 666 charges because neither *McDonnell* nor the Supreme Court's recent decision in *Snyder v. United States* imported the "official act" requirement into § 666.

**1.    *McDonnell* did not import the official acts requirement into 18 U.S.C. § 666.**

In *McDonnell*,  the government prosecuted a former governor for honest-services fraud and Hobbs Act extortion based on his acceptance of things of value in exchange for setting up meetings with other public officials.  579 U.S. at 555-61.  The parties in that case agreed that honest services fraud and Hobbs Act extortion should be defined by reference to the federal official bribery statute, 18 U.S.C. § 201.  *Id.* at 562.  That statute makes it a crime for a person to pay a public official to accept anything of value in return for being "influenced in the performance of any official act." 18 U.S.C. § 201(b)(2)(A).  It also explicitly defines an official act as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity."  18 U.S.C. § 201(a)(3).

Unlike § 201, § 666 does not specifically reference or require an "official act."  Instead, § 666 prohibits a government agent from corruptly soliciting or accepting a bribe "in connection with any business, transaction, or series of transactions." 18 U.S.C. § 666(a)(1)(B).  Courts of appeals have uniformly concluded that the Supreme Court's decision in *McDonnell* did not import an "official act" requirement into § 666 and have declined to find that it did.  *United States v. Carrasco*, 79 F.4th 153, 161 (1st Cir. 2023) ("We…have not held that § 666 does have an 'official act' element."); *United States v. Seng*, 934 F.3d 110, 133 (2d Cir. 2019) (holding that the *McDonnell* "official act" standard "does not necessarily delimit" § 666); *United States v. Lindberg*,

39 F.4th 151, 166 (4th Cir. 2022) ("[G]iven the absence of any reference to the term 'official act' in 18 U.S.C. § 666, we…declin[e] to import *McDonnell*'s interpretation of a term found in a separate statute."); *United States v. Hills*, 27 F.4th 1155, 1180 n.11 (6th Cir. 2022) ("*McDonnell*'s 'official act' requirement does not apply to the federal-program bribery offenses."); *United States v. Porter*, 886 F.3d 562, 565 (6th Cir. 2018) (declining to upset pre-*McDonnell* circuit precedent that § 666 has no "official act" requirement); *United States v. Roberson*, 998 F.3d 1237, 1247 (11th Cir. 2021) (same).

Herrera concedes that courts have been "reluctant to import the 'official act' requirement from § 201 and *McDonnell* to § 666." (Herrera's Mot. 19). But what Herrera characterizes as "reluctan[ce]" is better described as a refusal by numerous circuit courts to do so given the plain language of § 666. *See Carrasco*, 79 F.4th at 161 (declining to decide whether § 666 requires "official acts" because the evidence was sufficient to prove official acts, anyway, and citing Second, Fourth, Sixth, and Eleventh Circuit cases holding that § 666 has no "official act" requirement). As the Eighth Circuit stated, *McDonnell* "had nothing to do" with § 666. *United States v. Maggio*, 862 F.3d 642, 646 n.8 (8th Cir. 2017). And while Herrera correctly notes that *McDonnell* did import the "official acts" requirement into proving honest services wire fraud under § 1346, unlike the honest services statute (which requires a *quid pro quo* but does not explicitly define the *quid* or the *quo*, *see* 18 U.S.C. §§ 1343, 1346), § 666(a)(2) explicitly defines both the required *quid* and the required *quo*, obviating any need to refer to other statutes. *Lindberg*, 39 F.4th at 167-68. Further, Congress was aware of § 201's "official act" language when it drafted § 666, for it did so to address a circuit split over the reach of § 201. *Id.* Yet, Congress elected to use different language—"any business, transaction, or series of transactions," not "official act"— in the federal programs bribery statute. *Id.*

**2.    *Snyder v. United States* also did not import the official act requirement into 18 U.S.C. § 666.**

The Supreme Court's decision in *Snyder v. United States* did not consider and did not alter the definition of official acts, as Herrera contends.  The *Snyder* Court held *only* that § 666 does not criminalize state and local gratuities.  *Snyder*, 144 S. Ct. at 1959–60.  The Court framed the question presented as "whether [§ 666] makes it a federal crime for state and local officials to accept gratuities for their past official acts."  *Id.* at 1954.  Though the shorthand "official acts" appears in the question presented, the Court's immediate answer—"§ 666 is a bribery statute and not a gratuities statute," *id.*—makes clear that the scope of its analysis was limited to the bribery/gratuity distinction.  Repeated use of the phrase "official act" can properly be read only as a convenient shorthand for the more verbose statutory language, "any business, transaction, or series of transactions," that the Court quotes in a footnote.  *Id.* at 1954 n.1 (quoting 18 U.S.C. § 666(a)(1)(B)).  Indeed, five days after deciding *Snyder*, the Supreme Court again employed the shorthand "official acts" for conduct far shy of "a question, matter, cause, suit, proceeding or controversy" when opining on the scope of presidential immunity.  *See Trump v. United States*, 144 S. Ct. 2312, 2326-35 (2024) (holding "Trump is therefore absolutely immune from prosecution for the alleged conduct involving his discussions with Justice Department officials" because this fell within the protected "official acts" of the president).  Under Herrera's rationale, the Supreme Court's shorthand use of the term "official acts" in *Trump* would, by its definition, include mere conversations with other executive officials.

Moreover, if the Supreme Court's use of the term "official acts" alone in *Snyder* could graft the official acts requirement on to § 666, that would have been the case after *McDonnell*.  After all, unlike *Snyder*, the *McDonnell* decision actually *did* pertain to official acts.  Yet every court to address the question of whether § 666 requires official acts has either found it does not, or has

refused to find it does.[4]  Because the Government was not required to prove an official act in prosecutions after *McDonnell*, that remains the case after *Snyder*.  And because the First Circuit declined to add the official acts requirement after *McDonnell*, Herrera is asking for something unprecedented.  This Court should decline the invitation.

Nor do the Supreme Court's federalism concerns—expressed in *Snyder* only to explain why § 666 does not criminalize state and local gratuities—imply that *McDonnell*'s narrow definition of § 201's *quo* element must also apply to § 666's *quo*.  The *Snyder* Court reasoned that because "Congress does not lightly override state and local governments on such core matters" as determining which gratuities are criminal, "[w]e should hesitate" before applying § 666 to gratuities as well as bribes.  144 S. Ct. at 1957.  On its own terms, the Supreme Court's reasoning is again limited to the bribery–gratuity distinction.  *See id.*  Moreover, when it came to defining the required *quo* element for § 666 bribery, Congress did not act "lightly."  Rather, it explicitly elected "any business, transaction, or series of transactions" instead of "official act," though it was surely aware of the latter term, having "model[ed]" § 666 on § 201(b). *Id.* at 1955.  The Supreme Court would not effect a "seismic shift in the application of § 666," as Herrera puts it (Herrera's Mot. 20), without flagging the shift for lower courts.

**D.  Section 666 is not unconstitutionally vague as applied.**

Finally, Herrera further overstretches *Snyder* by arguing that prior to that decision, § 666 "was unconstitutionally vague because it did not put Mr. Herrera on fair notice that his conduct

---

[4] Herrera also states that "at least one post-*Snyder* decision acknowledged *Snyder*'s pronouncement that § 666 requires proof of an 'official act,'" citing *United States v. Macrina*, 109 F.4th 1341, 1347 (11th Cir. 2024).  (Herrera's Mot. 11).  Just as he does with *Snyder*, he mischaracterizes *Macrina* as deciding an issue never presented.  The issue actually before the Macrina court was whether, post-Snyder, § 666 criminalizes corrupt payments not completed until after an official's bid-rigging. 109 F.4th 1341, 1351 (11th Cir. 2024). Though, in its discussion, the Eleventh Circuit borrowed the Supreme Court's "official act" shorthand for § 666's lengthier *quo* definition, its holding related only to the timing of payment, not to a supposed "official act" requirement. *See id.*

was proscribed . . ."  (Herrera's Mot. 21).  But § 666 is not vague. As the First Circuit has noted in describing § 666, "[g]iven the *clear meaning of the language chosen by Congress*, arguments about the meaning of 'bribe'  and 'bribery' or the generalized purposes of 'bribery' laws are beside the point."  *United States v. Abdelaziz*, 68 F.4th 1, 24 (1st Cir. 2023) (emphasis added); *cf. Skilling v. United States*, 561 U.S. 358, 412 (2010) (finding no vagueness problem where it was "as plain as a pikestaff that" the conduct at issue would violate a statute).

Herrera argues that, at the time of his alleged conduct, he lacked fair notice of § 666's requirements: not until *Snyder* in 2024, he asserts, was it clear that § 666 required official acts. (Herrera's Mot. 18-21). Even if *Snyder* had imposed *McDonnell*'s "official act" requirement, it would have *narrowed* the scope of § 666's prohibition, not expanded it. *Cf. McDonnell*, 579 U.S. at 567 (adopting "a more bounded interpretation of 'official act'"). In other words, accepting Herrera's reading of *Snyder* as correct, he was on notice that pre-*Snyder* § 666 prohibited more conduct than it does now. He cannot claim now that he would have refrained, under a narrowed construction of § 666, from conduct he allegedly performed when a broader reading of the statute was the law.

Again, *Snyder* held that § 666 does not criminalize the payment of gratuities.  The Indictment does not charge Herrera with the payment of a gratuity; it charges him with the payment of a bribe.  Herrera's argument that the statute is vague as applied to him is predicated on the Court's acceptance of his portrayal of a factual dispute: that he was merely "exercising the constitutional right to petition government" (Herrera's Mot. 21). The Indictment alleges he paid a bribe, which, as *Snyder* reaffirmed, § 666 proscribes.

**E.**     **With regard to the 18 U.S.C. § 1346 charges, *Percoco* is inapposite.**

Herrera relies on *Percoco v. United States*, 598 U.S. 319 (2023) to argue that Counts 5-7 are invalid because Witness 1 was a private citizen who could not have performed official acts. But the honest services and official acts at issue in the Indictment are Public Official A's, not Witness 1's.

The defendant in *Percoco* was a nominally private citizen who, between stints in government, accepted payments in exchange for using his influence to manipulate government contracting requirements. 598 U.S. at 323. The Court reversed his conviction, limiting the prosecutorial theories under which a private citizen may owe a fiduciary duty of honest services to the public. *Id.* at 331. Crucially, in *Percoco*, the defendant private citizen himself was alleged to have owed and violated a duty of honest services.

This Indictment presents a manifestly different situation: Herrera is charged with devising a scheme to deprive the public of a public official's honest services, acting through a private-citizen intermediary, Witness 1. (Indictment ¶¶ 139–40, 179). The Indictment alleges that Herrera or his associates communicated their objectives through Witness 1 (Indictment ¶¶ 145–59) and wired a bribe payment through Witness 1's intermediation to a SuperPAC benefitting Public Official A. (Indictment ¶¶ 160–74). In contrast to *Percoco*, where the private citizen was alleged to himself owe a duty of honest services, the Indictment here is clear: the person who Herrera sought to bribe, and the person whose honest services Herrera sought to corrupt, were those of a public official, the governor. (Indictment ¶ 179). *Percoco*, therefore, presents no obstacle to these charges.

## IV.   <u>CONCLUSION</u>

Herrera misstates the law when he asserts that *McDonnell* and *Snyder* impose an "official acts" pleading requirement on an indictment, and he misstates the facts when he asserts that the

Indictment in this case does not plead official acts. The United States respectfully requests that his Motion to Dismiss be denied.

### Certificate of Service

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will notify all counsel of record.

**RESPECTFULLY SUBMITTED**, this 24th day of October, 2024.

COREY R. AMUNDSON
Chief, Public Integrity Section
U.S Department of Justice

*/s/ Ryan R. Crosswell*
Ryan R. Crosswell (G03502)
Nicholas W. Cannon
Trial Attorneys
Department of Justice
Public Integrity Section
1301 New York Ave., NW - 10th Floor
Washington, D.C. 20530
(202) 616-5699
ryan.r.crosswell@usdoj.gov

W. STEPHEN MULDROW
United States Attorney

*s/Myriam Y. Fernandez-Gonzalez*
Myriam Y. Fernandez-Gonzalez - 218011
Assistant U.S. Attorney
Torre Chardón, Suite 1201,
350 Carlos Chardón Street
San Juan, Puerto Rico 00918
Office: 787-766-5656
myriam.y.fernandez@usdoj.gov