# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

Plaintiff,

v.

[2] JULIO M. HERRERA-VELUTINI,
[3] MARK T. ROSSINI,

Defendants.

CRIMINAL NO. 22-342 (SCC)(HRV)

## MEMORANDUM AND ORDER

### INTRODUCTION

Pending before the Court are the motions filed by Defendants Julio M. Herrera-Velutini ("Herrera") and Mark T. Rossini ("Rossini") to compel the Government to specifically identify Brady/Giglio/Jencks material. (Docket Nos. 662 and 755). The United States filed oppositions to both motions (Docket Nos. 687 and 767), to which Herrera and Rossini replied. (Docket Nos. 718 and 777). The presiding District Judge referred this matter to the undersigned magistrate judge for disposition. (Docket Nos. 674 and 757). After careful consideration, and for the reasons set forth below, the defendants' motions are DENIED.

### BACKGROUND

On August 3, 2022, a grand jury sitting in this district returned an indictment against the herein defendants and others consisting of multiple counts for their alleged

1

participation in two bribery schemes. (Docket No. 3). With respect to the first bribery scheme, the Government alleges in general that Herrera and his co-conspirators, including Rossini, offered then governor and co-defendant Wanda Vazquez-Garced a thing of value (campaign funding) in exchange for the dismissal of the OCIF [1] Commissioner. Herrera, who was the owner of an international bank located in Puerto Rico, allegedly wanted to replace the Commissioner to influence the outcome of an examination of his bank by OCIF. Trial in this case is currently set to begin on August 25, 2025. (Docket No. 701).

The defendants aver, and the Government does not seem to dispute, that the discovery that has been produced in the case is massive. In fact, Herrera and Rossini suggest in their filings that the discovery productions are the equivalent of more than 60 million pages of material. They also protest, particularly Rossini, that the disorganized, scattered, unstructured, and chaotic nature of the discovery productions—at times referred to by them as "document dumps"—as well as the lack of adequate searchability, have hindered their ability to find exculpatory and impeachment material to properly prepare their defense. For that reason, these defendants request that, consistent with its constitutional obligations as well as its internal policies and procedures, the Government be compelled to conduct "an actual review" of its discovery disclosures and specifically identify any *Brady*, *Giglio*, and *Jencks* material.

---

[1] Spanish acronym for the Office of the Commissioner of Financial Institutions.

The United States for its part opposes the defendants' request on the grounds that the case law cited does not support the notion that the Government must specifically identify *Brady* material in the disclosures already produced. According to the United States, the defendants' argument is directly refuted by the Justice Manual and the vast majority of cases addressing the issue. It highlights that the materials, voluminous as they are, have been provided in a searchable format.[2] The Government also advances an argument about the potential ramifications that granting the defendants' motion will have in this district. The bottom line for the United States is that rather than suppressing exculpatory evidence, "[a]ny potential *Brady* material in the prosecution team's possession is now in the defendants' possession." (Docket No. 687 at 3).

## APPLICABLE LAW AND DISCUSSION

The Government has a duty to produce evidence favorable to the accused when "the evidence is material to either guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *United States v. Prochilo*, 629 F.3d 264, 268 (1st Cir. 2011). The obligation includes disclosing impeachment evidence, that is, "evidence affecting credibility." *Giglio v. United States*, 405 U.S. 150, 154, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972).

---

[2] The Government specifically submits that it has "produced nearly all of its discovery in load-ready files capable of importation to searchable electronic databases . . . [and that the] method of production in this case allows for, among other things, efficient review using keyword searches, relevancy 'tagging' by attorneys, investigators, and paralegals as defendants wish to utilize, filtering by date, file type, and source, and de-deduplication." (Docket No. 687 at 3-4).

A handful of out-of-Circuit district court decisions cited by Herrera and Rossini, stand for the proposition that the court has discretion in a large documents case such as this one, to order the government to specifically identify any *Brady* material it is aware of. *See, e.g., United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020); *United States v. Hsia*, 24 F. Supp. 2d 14 (D.D.C. 1998); *United States v. Blankenship*, No. 5:14-CR-00244, 2015 U.S. Dist. LEXIS 76287, 2015 WL 3687864, *3 (S.D. W. Va. June 12, 2015); *United States v. Salyer*, No. CR. S-10-0061, 2010 WL 3036444, 2010 U.S. Dist. LEXIS 77617 (E.D. Cal. Aug. 2, 2010). But, by and large, the case law, including several appellate decisions, have rejected the contention that the Government is under an obligation to do so.

For instance, the Seventh Circuit has held that the Government "is 'under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence.'" *United states v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) (*quoting United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), *vacated in part on other grounds by*, 561 U.S. 358, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010)). *Brady* does not impose an obligation on the prosecution to "ferret out" information potentially favorable to the defense from materials already disclosed. *See United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005*); see also United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010) (rejecting the defendant's contention that the government was "obliged to sift fastidiously through the evidence . . . to locate anything favorable to the defense."); *United States v. Yi.*, 791 Fed. Appx. 437, 338 (4th Cir. 2020) (rejecting as without merit the defendant's argument that to fulfill its obligation under *Brady*, the government must identify exculpatory material in a voluminous discovery production.).

Moreover, absent prosecutorial misconduct, that is, bad faith or deliberate efforts by the Government to hide the favorable evidence, the use of an "open file" discovery approach does not run afoul of *Brady*, even when the materials disclosed are voluminous. *United States v. Rubin/Chambers, Dunhill Ins. Servs.*, 825 F. Supp. 2d 451, 454-55 (S.D.N.Y. 2011); *see also United States v. Morales-Rodriguez*, 467 F.3d 1, 14 (1st Cir. 2006) (finding no *Brady* violation, assuming the evidence was exculpatory, because the Government did not suppress the purported favorable evidence when it allowed the defense to conduct open-file discovery but requested return of the two documents at issue after the defense had an opportunity to read them).

In this case, there is no evidence of bad faith. In other words, despite implying that the Government has attempted to bury exculpatory evidence in what they characterized as a chaotic and unorganized document dump, Herrera and Rossini offer nothing more than speculation. *See* Docket No. 662 at 10-11 ("Given the massive volume of just the recent productions, it is unlikely the Government has undertaken a true Justice Manual-compliant review of the discovery it has produced—and any other material it will produce—to identify and disclose all Brady material."). If anything, the record here reveals that the Government has erred on the side of over producing rather than suppressing.

Further, despite protestations by the defendants about the production not being "searchable", it does not appear that the defense is being given a disclosure different in terms of format, searchability, and indexing than what the Government itself has. The United States outlined the characteristics of the materials produced as follows:

5

> All of the discovery produced in this case has been produced in load-ready files capable of importation to searchable electronic databases. The production in this case allows for keyword search reviews, relevancy "tagging" by the defense teams, filtering by date, file type, and source, and de-deduplication. For example, when loaded on to Relativity, a search platform commonly used by prosecutors and defense attorneys alike, users can see, among other things, the discovery production number, the evidence's source, and the Bates number.

(Docket No. 767 at 2). That Rossini would have preferred a production better organized, indexed, and with a better format for accessing and searching is understandable. But I have no reason to doubt the Government's representation that it has given the discovery "broad treatment . . . to put the defendants on the same footing as the Government . . . [and] that the format provided to the defense is the same format possessed by the United States." (*Id.* at 11). *See United States v. Satary*, No. CRIMINAL ACTION NO: 19-197 SECTION: "D" (4), 2020 U.S. Dist. LEXIS 181982, at *21 (E.D. La. Oct. 1, 2020) (the Government's production was found to be accessible and searchable even if not to the extent that the defendant preferred); *see also United States v. Meredith*, No. 3:12-CR-00143-CRS, 2015 WL 5570033, 2015 U.S. Dist. LEXIS 126487, at *8 (W.D. Ky. Sept. 22, 2015)(no *Brady* violation found where the Government produced voluminous discovery that was not unduly onerous to access in searchable format via common applications). The only apparent difference between the parties in terms of the discovery in their possession is that the Government has had a head start of several years, which is not an insignificant fact. Notwithstanding, I find that Herrera and Rossini have in their possession accessible information that allows them to properly prepare a defense and find favorable evidence, if any, in furtherance of their defense theory.

To be sure, there may be cases in which the Government may violate its *Brady* obligations by "burying exculpatory material within a production of a voluminous, undifferentiated open case file" also known as a "document dump." *United States v. Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (*citing United States v. Ferguson*, 478 F. Supp. 2d 220, 241 (D. Conn. 2007)). But no evidence exists to support the contention that the Government is deliberately concealing *Brady* material within the discovery productions made in this case.

Denial of the defendants' motions is also warranted due the relief requested being unworkable and impractical. Aside from requesting identification of *Brady* material that the government **is aware of**, which is what the few cases cited by the defense discretionally allow, Herrera and Rossini request that the government conduct "an actual review" of all the materials gathered and produced for identification of *Brady* evidence.[3] First, I agree with the Government that the defendants' reference to the Justice Manual does not move the needle toward supporting their position since it does not create substantive or procedural rights. U.S. Dept. Justice, Justice Manual, § 1-1.200. Second, and most importantly, as part of the litigation of pretrial motions in this case the Government could be said to perhaps be able to anticipate in part Herrera's and Rossini's defense theories. But to charge the Government with full knowledge and understanding

---

[3] While Rossini contends that the issue in this case boils down to asking the government the "simple" question: "Have you found any *Brady* material within your production?" (Docket No. 755 at 5), the defendants' filings appear to take it a step further and impose on the Government not only the obligation to identify *Brady* material "already found" within the discovery produced, but to actively search for it, something that inevitably involves conducting an assessment that the information meets the definition of favorable evidence (material to guilt or punishment) or constitutes impeachment evidence.

of the defendants' strategy would be a stretch. Thus, ordering the government to review the productions to identify favorable evidence that is material to either guilt or punishment within a voluminous discovery and without a full understanding of the theory of defense, puts the United States "in the untenable position of having to prepare both sides of the case at once." *United States v. Ohle*, No. S3 08 CR 1109 (JSR), 2011 WL 651849, 2011 U.S. Dist. LEXIS 12581, at *13 (S.D.N.Y. Feb. 7, 2011). This, in my view, extends *Brady* too far.

In reaching my conclusion as to the *Brady* issue, I do not consider as a factor, as urged by the Government, Herrera's wealth. But I must note that some of the decisions that have departed from the general rule, and that Herrera and Rossini rely on, took into consideration factors such as the limited financial resources and the size of the defense team, the defendant's detained status, and not having the benefit of a parallel civil litigation, among others. *Saffarinia*, 424 F. Supp. 3d at 88; *Salyer*, No. CR. S-10-0061, 2010 U.S. Dist. LEXIS 77617, at *21. Here, both Rossini and Herrera are sophisticated individuals that are on pre-trial release and who are represented by a team of experienced and talented attorneys from notable law firms that have vigorously litigated the present case. Those factors weigh significantly in favor of not using my discretion to deviate from the general rule. *United States v. Meek*, No. 1:19-cr-00378-JMS-MJD, 2021 U.S. Dist. LEXIS 52121, at *17-18 (S.D. Ind. March 19, 2021).

I did not give weight either to the Government's argument regarding the ramifications that a ruling in favor of the defendants would have for future cases in this district. If, in my view, the law as applied to the facts of the instant controversy had supported the position of the defense, it would not have mattered at all to me that the

Government had to work more. That is not a consideration courts should be guided by, let alone when important constitutional rights are involved.

For much the same reasons outlined above, Rossini's arguments about *Jencks* and *Giglio* material are unavailing. For instance, the Government agreed to produce early *Jencks*, something that is not statutorily required to do. It has identified the *Jencks* material in its discovery log and has produced it in a format capable for being imported into applications that would make it searchable. What's more, the *Jencks* production is not as voluminous as the general discovery (1,472 files), and the Government has offered to assist counsel to facilitate the use of the Relativity application. Short of ordering the Government to organize the production to Rossini's liking, I am at a loss on how to grant any relief anent the *Jencks* material. Because no authority has been cited in support of the request, and because I am not persuaded that the *Giglio* or early *Jencks* productions are, as claimed by Rossini, inadequate, this aspect of the defendants' motions must also be denied.

## CONCLUSION

In view of the forgoing, the motions filed by Herrera and Rossini at Docket Nos. 662 and 755 are hereby DENIED.

**SO ORDERED**

In San Juan, Puerto Rico this 12th day of March, 2025.

S/Héctor L. Ramos-Vega
HÉCTOR L. RAMOS-VEGA
UNITED STATES MAGISTRATE JUDGE
